DREW FINDLING (GA. BAR NO. 260425)
MARISSA GOLDBERG (GA. BAR NO. 672798)
THE FINDLING LAW FIRM PC
3575 PIEDMONT ROAD
NE TOWER 15, SUITE 1010
ATLANTA, GA 30305
TELEPHONE: (404) 460-4500
EMAIL: DREW@FINDLINGLAWFIRM.COM; MARISSA@FINDLINGLAWFIRM.COM

JONATHAN M. BRAYMAN (IL. BAR NO. 6302461)
BREEN & PUGH
53 W. JACKSON BLVD., SUITE 1550
CHICAGO, IL 60604
TELEPHONE: (312) 360-1001
EMAIL: JBRAYMAN@BREENPUGHLAW.COM

CHRISTY O'CONNOR (BAR NO. 250350)
THE LAW OFFICE OF CHRISTY O'CONNOR
360 EAST 2ND STREET, SUITE 800
LOS ANGELES, CALIFORNIA 90012
TELEPHONE: (323) 716-5959
EMAIL: CHRISTY@CHRISTYOCONNORLAW.COM

ATTORNEYS FOR DEFENDANT
DURK BANKS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, <br><br> v. <br><br> DURK BANKS, *Defendant*. | No. 2:24-cr-621-MWF <br><br> DEFENDANT DURK BANKS' MOTION TO DISMISS SUPERSEDING INDICTMENT BASED ON FALSE AND/OR MISLEADING GRAND JURY EVIDENCE <br><br> JUNE 2, 2025 AT 1:30 PM <br><br> The Honorable Michael W. Fitzgerald |

Defendant Durk Banks, through his counsel of record, moves the Court to dismiss the Superseding Indictment against him in this matter. In the alternative, he moves to compel disclosure of the grand jury minutes and evidence the government presented to the grand jury.

This motion is based on the attached Memorandum of Points and Authorities, all files and records in this case, and such evidence and argument as may be presented at the hearing.

The undersigned and the assigned Assistant United States Attorneys in this matter had a meet and confer regarding this matter via email correspondence on April 17, 2025, as required by the Court's Criminal Standing Order and the Local Rules reflected therein. The parties did not reach an agreement on the issues presented herein.

Respectfully submitted,

DATED:  April 18, 2025        /s/ Drew Findling
                              DREW FINDLING
                              MARISSA GOLDBERG
                              JONATHAN M. BRAYMAN
                              CHRISTY O'CONNOR
                              Attorneys for Durk Banks

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES..................................................1

I.    INTRODUCTION...........................................................................................1

II.   BACKGROUND.............................................................................................1

   A.  The Original Indictment…………………............................................3

   B.  The Superseding Indictment…………………….....................4

   C.  The Underlying Falsehood…………………….........................5

III.  ARGUMENT..................................................................................................6

   A.  The Court Has the Power to Dismiss an Indictment that the
       Grand Jury Returned Based on Information that the Government
       Knew at the Time to be, or Later Learned to Have Been, False............7

   B.  The False Information Presented to the Grand Jury Here
       Compels the Superseding Indictment's Dismissal................................9

      1.  The false information prejudiced Mr. Banks in the
          grand jury proceedings..............................................................10

      2.  The Court should dismiss the indictment because the government
          presented false evidence to the grand jury................................11

   C.  If the Court is Uncertain Whether the False Information that
       the Government Presented to the Grand Jury Requires Dismissal,
       the Court Should Order the Government to Produce the
       Transcripts and Evidence from the Grand Jury Proceedings............14

IV.   CONCLUSION................................................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)....................................9, 10

*Branzburg v. Hayes*, 408 U.S. 665 (1972)................................................................8

*Costello v. United States*, 350 U.S. 359 (1956)....................................................8, 9

*Glossip v. Oklahoma*, No. 22-7466 (U.S. Feb. 25, 2025)......................................6, 11

*Lawn v. United States*, 355 U.S. 339 (1958).............................................................8

*Napue v. Illinois*, 360 U.S. 264 (1959)..............................................................6, 11

*United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974)..............................7, 9, 12, 13

*United States v. Blue*, 384 U.S. 251 (1966)............................................................7

*United States v. Calandra*, 414 U.S. 338 (1986).....................................................8

*United States v. Chanen*, 549 F.2d 1306 (9th Cir. 1977)...........................................7

*United States v. Claiborne*, 765 F.2d 784 (9th Cir. 1985)......................................5, 9

*United States v. Fuchs*, 218 F.3d 957 (9th Cir. 2000)...............................................8

*United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977)..........................................6

*United States v. Mechanik*, 475 U.S. 66 (1986)..................................................8, 9, 10

*United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991).......................................7

*United States v. Rogers*, 751 F.2d 1074 (9th Cir. 1985)............................................7

*United States v. Samango*, 607 F.2d 877 (9th Cir. 1979)..............................7, 9, 12-13

*United States v. Spillone*, 879 F.2d 514 (9th Cir. 1989)............................................8

*United States v. Stirone*, 361 U.S. 212 (1960).........................................................9

*United States v. Thompson*, 576 F.2d 784 (9th Cir. 1978)........................................11

Def. Durk Banks' Mot. to Dism.

*United States v. Williams*, 504 U.S. 36 (1992)..........................................................7, 8

*Wood v. Georgia*, 370 U.S. 375 (1962).........................................................................8


**Statutes**

18 U.S.C. § 924…………….....................................................................................3

18 U.S.C. § 1958…………….....................................................................................3


**Rules**

Fed. R. Crim. P. 6.......................................................................................................14


**Other Authorities**

Stuart P. Fischoff, *Gangsta' Rap and a Murder in Bakersfield*,
29 J. APPLIED SOC. PSYCH. 795 (1999)…………………………………………..10, 11

### **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION.

The government presented false evidence to the grand jury that indicted Mr. Banks on November 7, 2024. (Doc. 27). The plain language of the Superseding Indictment makes it apparent that the government told the grand jury that Mr. Banks, through specific lyrics in his music, celebrated and profited from a revenge murder that he had ordered, namely, that of S.R. in August of 2022. That claim is demonstrably false. The song the government relied upon as evidence against Mr. Banks, "*Wonderful Wayne & Jackie Boy*," a song that was recorded by another artist, Babyface Ray, and on which Mr. Banks recorded a feature for, could not have been a commercialization of Mr. Banks' alleged murder for hire of S.R., as the government represented to the grand jury. That is because Mr. Banks recorded the lyrics for "*Wonderful Wayne*" **seven months before** the incident even happened. The government's misrepresentation in the Superseding Indictment, whether knowing or reckless, undermines the integrity of the grand jury's true bill against Mr. Banks. The Court should dismiss the Superseding Indictment against him as a result.

## II.    BACKGROUND.

Mr. Banks is a highly successful and internationally renowned recording artist and performer who is known professionally by the name "Lil Durk". His music and the resulting public acclaim have been reaching wide audiences since the release of his debut album in 2015—although he built his professional reputation and profile as a dedicated, hardworking, and deeply talented artist beginning around 2012 through mixtapes and public performances in and around Chicago. Since that initial album, Mr. Banks has released a total of eight solo studio albums (not including his mixtapes or collaborative projects he has done with other artists). Mr. Banks has been nominated for a Grammy on four occasions, winning one just last year.

In keeping with common industry practice, Mr. Banks has been signed to music labels (currently Alamo Records) who have helped facilitate his musical growth and

have spearheaded the efforts surrounding the production, release, and distribution of
his music. Also, in keeping with common industry practice, hip-hop artists not only
release their own music, but also frequently lend their musical talents to other artists'
songs through "features" which are often a verse or two contained within the song. The
addition of a feature from a more popular artist can help boost the visibility and ultimate
success of a song, especially for newer or emerging talent.

Relevant to the matter at hand, Mr. Banks had recorded a feature for Babyface
Ray on "*Wonderful Wayne*" upon Babyface Ray's request. The song in question was
ultimately attributed to Babyface Ray with a feature credit to Mr. Banks. Mr. Banks
recorded his portion of the song in January of 2022, that being his last involvement in
this song—further production was done by producers and other industry
professionals, but no changes to content or lyrics were ever made by Mr. Banks or
anyone else associated with Mr. Banks. All this information was readily available to
the government.

Outside of the four corners of the Superseding Indictment, but important to this
Court's consideration of the egregiousness of the government's conduct and necessity
of the relief contained in this motion, the issue of the timing of these lyrics was
addressed by undersigned defense counsel at Mr. Banks' detention hearing on
December 12, 2024. To counter this argument, counsel for the government posited to
the Court that even if the lyrics themselves were written seven months prior to the
charged conduct, a version of this song was modified that added audio from a news
clip of T.B. on top of the original song. Following this assertion at the detention
hearing and unaware of any such modification attributable to Mr. Banks, undersigned
counsel asked the government to provide what they were referring to in an email
correspondence. The government replied with videos that appeared to be taken from
recent open-source YouTube searches that were in no way connected to Mr. Banks.
This further complicates what evidence, argument, and instructions the government
presented to the grand jury and will be addressed in more specificity below.

Def. Durk Banks' Mot. to Dism.

The issue over the timing of Mr. Banks' recording of the lyrical verse in question is not one of frivolous or inconsequential value. It is quite the opposite: the government's misrepresentations about the creation and meaning of "*Wonderful Wayne*" are the linchpin of the Superseding Indictment's theory of Mr. Banks' guilt. Indeed, the Superseding Indictment features it prominently:

> Following the attempted murder of T.B. and the murder of S.R., defendant Banks sought to commercialize S.R.'s death by rapping about his revenge on T.B. with music that explicitly references audio from a news clip taken shortly after S.R.'s murder where T.B. screamed 'no, no!' after seeing S.R.'s dead body. . .

(Superseding Indictment ¶ 6, Doc. 27, at 3:11-19). It is, in fact, the only material allegation that does not appear in the original Indictment, which does not charge Mr. Banks, but appears in the Superseding Indictment, which does charge him.

**A.     The Original Indictment.**

Mr. Banks was not charged in the original Indictment. Instead, that Indictment charged five other individuals—Kavon Grant, Deandre Wilson, Keith Jones, David Lindsey, and Asa Houston—as principals in an alleged murder-for-hire scheme, in violation of 18 U.S.C. §§ 1958(a) and 924(c)(1)(A)(iii), (B)(ii), and (j)(1). At the core of the charges is the August 19, 2022 shooting death of S.R. (Doc. 1 at 4.)

According to the grand jury, S.R. was not the men's intended victim. T.B. was. (Doc. 1 at 2.) Their purported motive: a "bounty" placed on T.B. to answer for his involvement with the murder of another man, D.B. [Dayvon Bennett, p/k/a "King Von"], nearly two years prior, outside of an Atlanta nightclub. (*Id*. at 2, 4, 5.) The Indictment alleges that King Von was a high-ranking member of Only the Family, or "OTF," an organization that produced and sold hip hop music from artists primarily from Chicago. (*Id*. at 2.) It avers that Grant, Wilson, Houston, and unnamed Co-Conspirators 1-5 were also members or associates of OTF. (*Id*.) It alleges that OTF associates used credit cards "associated with OTF" to purchase the defendants' plane

tickets and to rent their Los Angeles hotel room. It also alleges that the bounty consisted of money and lucrative music opportunities with OTF. (*Id*. at 3, 4, 6, 7, 11.)

The person who is alleged to have offered the bounty, Co-Conspirator 1, goes unnamed and uncharged: "After [King Von's] murder, Co-Conspirator 1 made clear, in coded language, that Co-Conspirator 1 would pay a bounty or monetary reward, and/or make payment to anyone who took part in killing T.B. for his role in [King Von's] murder." (Doc. 1 at 2.) *See also id.* at 4, 5. That same unnamed individual, Co-conspirator 1, is alleged to have texted Co-Conspirator 3 the day before the murder: "Don't book no flights under no names involved wit me." (*Id*. at 6.)

According to the original Indictment, the day before S.R.'s death, the five named co-defendants, along with an unnamed Co-Conspirator, flew from other states to California; convened in a Los Angeles, California hotel room; purchased ski masks and secured two sedans; and armed themselves with guns, including one modified to operate as a fully automatic machine gun. (Doc. 1 at 6–8.) The next day, on August 19, 2022, the six men tailed the Escalade in which both T.B. and S.R. were passengers through the streets of Los Angeles, until it ultimately stopped at a Beverly Boulevard gas station. (*Id*. at 9-11.) There, three of the men fired their guns in the Escalade's direction, ultimately killing S.R.

## B.    The Superseding Indictment.

The Superseding Indictment does charge Mr. Banks in the alleged murder-for-hire. (Doc. 27.) It names him as the individual referred to as Co-Conspirator 1 in the original Indictment. It calls him the head of OTF, as having directed the attempted murder of T.B. that resulted in S.R.'s death, as the person who placed the alleged bounty on T.B., and as the person who texted the instructions not to "put no flights under no names involved wit me." *(Id*. at 2, 5-7.)

In addition to naming Mr. Banks, importantly, the Superseding Indictment contains only one new material alleged fact that the original Indictment does not. It

avers that, after the shooting, Mr. Banks celebrated his successful revenge through his music:

> Following the attempted murder of T.B. and the murder of S.R., defendant Banks sought to commercialize S.R.'s death by rapping about his revenge on T.B with music that explicitly references audio from a news clip taken shortly after S.R.'s murder where T.B. screamed "no, no!" after seeing S.R.'s dead body:
>
> > Told me they got an addy (go, go)
> > Got location (go, go)
> > Green light (go, go, go, go, go)
> > Look on the news and see your son,
> > You screamin', "No, no" (pussy)

(Doc. 27, at 3:11–19 (quoting "*Wonderful Wayne & Jackie Boy*," on *Mob* (Babyface Ray ft. Lil Durk, Wavy Gang Ent. & Empire Dist. 2022)).

## C.    The Underlying Falsehood.

For the Superseding Indictment's allegations about the meaning of Banks' lyrics— that they described S.R.'s killing and referenced media about it— Banks would need to have penned them *after* the August 19, 2022 shooting. Mr. Banks did not, however, write those lines after the shooting. He wrote them seven months beforehand.

Attached as Exhibit 1 to this motion is the Declaration of Justin Gibson, the producer and sound engineer who recorded "*Wonderful Wayne & Jackie Boy*," the song where the cited lyrics originally appeared. (Exh. 1 at 1.) Gibson recorded Banks' verse, which Banks wrote and recorded simultaneously during his recording session, on January 25, 2022. *Id.* Gibson uploaded the track at 5:39 PM that evening, saved it at 6:33 PM, and finalized it at 7:21 PM. *Id.* Mr. Banks' January 2022 lyrics, therefore, could not have been about S.R.'s homicide in August 2022. And unless the government is prosecuting Banks on a theory of extra-sensory prescience, the lyrics could not have soundly informed the grand jury's finding of probable cause.

Attached as Exhibit 2 is the Declaration of Ahmad Sharif, the founder and CEO of Ur World Music, Inc. (Exh. 2 at 1.) Mr. Sharif works as a music producer and audio engineer for artists including Babyface Ray and Mr. Banks. *Id.* Mr. Sharif attests that he received Mr. Banks' verse and lyrics for "*Wonderful Wayne & Jackie Boy*" from Mr. Gibson on July 22, 2022. *Id.* After that date, he received no additional lyrics or modifications to the original lyrics from Mr. Banks or anyone else in his camp. Thereafter, on August 23, 2022, Mr. Sharif incorporated Mr. Banks' verse into the track and finalized the track on his end. *Id.*

Additionally, Mr. Sharif has reviewed the open-source YouTube links (that were provided through e-mail correspondence by the government as examples of videos they referenced in the detention hearing), and can confirm that the audio and video clips featuring audio of an individual yelling "no," reportedly from a news clip, are not from the original recording. *Id.* at 2. He identifies those clips to be "fan edits" for social media platforms, and are altered, fabricated, and inauthentic versions of the original song. *Id.* The original, authentic version of the song, Mr. Sharif confirms, does not contain these manipulated elements. *Id.* He attests that creating altered audio edits is easy to do through social media platforms, and such practices often result in misinformation and misrepresentation of original pieces of music and art. *Id.*

## III.    ARGUMENT.

The Superseding Indictment is not sustainable against Mr. Banks in the face of the fundamental factual error upon which the grand jury relied. Such an error requires dismissal of the indictment under the following circumstances: first, where the grand jury returned an indictment based on the government's knowing presentation of a falsehood, *see United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977); *see also Napue v. Illinois*, 360 U.S. 264 (1959); *Glossip v. Oklahoma*, 145 S.Ct. 612 (2025), or second, where the falsehood, if unwittingly presented to the grand jury, is of such character that its later discovery demands redress, *see United States v.*

*Samango*, 607 F.2d 877, 882-85 (9th Cir. 1979); *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974).

**A.    The Court Has the Power to Dismiss an Indictment that the Grand Jury Returned Based on Information that the Government Knew at the Time to be, or Later Learned to Have Been, False.**

Mr. Banks does not take lightly the request that he is making of this Court. Dismissal is in all cases a "drastic step," and thus "generally disfavored." *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985) (citing *United States v. Blue*, 384 U.S. 251, 255 (1966)). That is especially so when a defendant challenges the nature of the evidence that the government presented to induce an indictment. *United States v. Claiborne*, 765 F.2d 784, 791 (9th Cir. 1985), *abrogated on other grounds by United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993). However, court intervention is necessary in cases like this to ensure that a charging decision is the product of the grand jury's own unbiased and untainted judgment.

The grand jury's independence and integrity are deeply rooted in our Constitution. It is an institution of constitutional dignity, U.S. Const., Amend. V, and it does not belong to any branch of government. *United States v. Williams*, 504 U.S. 36, 47 (1992) (quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977)). The grand jury is, in many ways, an entity unto itself:

> The grand jury's functional independence from the Judicial Branch is evident both in the scope of its power to investigate criminal wrongdoing and in the manner in which that power is exercised. "Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury 'can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not.'"

*Williams*, 504 U.S. at 48 (punctuation modified) (quoting *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991)).

The grand jury's independence is essential to its twin functions: determining whether probable cause exists to charge a crime and "standing between the accuser

1  and the accused . . . [when] a charge is . . . dictated by an intimidating power or by

2  malice and personal ill will." *United States v. Mechanik*, 475 U.S. 66, 74 (1986)

3  (O'Connor, J., concurring) (first citing *United States v. Calandra*, 414 U.S. 338, 343

4  (1986); and then quoting *Wood v. Georgia*, 370 U.S. 375, 390 (1962)); *accord*

5  *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972) ("[T]he grand jury . . . has the dual

6  function of determining if there is probable cause to believe that a crime has been

7  committed and of protecting citizens against unfounded criminal prosecutions.") To

8  that end, courts generally take a *laissez faire* approach to grand jury proceedings. *See,*

9  *e.g.*, *Calandra*, 414 U.S. at 349-52 (declining to apply the exclusionary rule in grand

10  jury proceedings); *Costello v. United States*, 350 U.S. 359, 361-64 (1956) (holding

11  that a district court may not dismiss an indictment on the basis that it was returned on

12  hearsay evidence); *Lawn v. United States*, 355 U.S. 339, 348-50 (1958) (disallowing

13  defendants' challenge that an indictment had been returned on evidence obtained in

14  violation of the privilege against self-incrimination).

15      Courts are likewise generally hands-off with the prosecutors who present the

16  government's cases to grand juries. *See, e.g.*, *United States v. Williams*, 504 U.S. 36,

17  50-56 (1992) (holding that a prosecutor has no duty to present exculpatory evidence

18  to the grand jury); *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) (holding

19  that a prosecutor cannot be compelled to explain the circumstances surrounding a

20  defendant's invoking the right to counsel); *United States v. Spillone*, 879 F.2d 514,

21  523 (9th Cir. 1989) ("A prosecutor has no duty to present evidence bearing on

22  witness credibility to the grand jury."); *see also Williams*, 504 U.S. at 46-47 ("We did

23  not hold in *Bank of Nova Scotia* [*v. United States*, 487 U.S. 250 (1988)], however,

24  that the courts' supervisory power could be used, not merely as a means of enforcing

25  or vindicating legally compelled standards of prosecutorial conduct before the grand

26  jury, but as a means of *prescribing* those standards of prosecutorial conduct in the

27  first instance—just as it may be used as a means of establishing standards of

28  prosecutorial conduct before the courts themselves." (emphasis original)).

However, courts can and do step in when the grand jury's functions may be compromised, *e.g.*, when proceedings are conducted in a manner that violates "few, clear rules which … ensure the integrity of the grand jury's functions," *id.* at 46 (quoting *Mechanik*, 478 U.S. at 75 (O'Connor, J. concurring)); when an indictment is returned on evidence that a prosecutor knows at the time, or discovers before trial, to be false, *Basurto*, 497 F.2d at 785-87; *see Bank of Nova Scotia*, 487 U.S. at 261; or when an indictment is obtained in a manner that "represent[s] a serious threat to the integrity of the judicial process," *Samango*, 607 F.2d at 885. Court intervention is necessary in such cases to ensure that a charging decision is the product of the grand jury's own unbiased judgment. *See Stirone v. United States*, 361 U.S. 212, 218-19 (1960) ("The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment."); *Costello*, 350 U.S. at 363 ("An indictment returned by a legally constituted and *unbiased* grand jury . . . is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." (emphasis added)).

### B.    The False Information Presented to the Grand Jury Here Compels the Superseding Indictment's Dismissal.

The indictment's assertion about Mr. Banks' lyrics—their timing and their meaning—is false. When Banks wrote the cited lyrics, S.R.'s killing was still seven months in the future. For Banks to have been writing about S.R. would thus have been impossible. The only open question is how such patently false information came to be within the grand jury's purview to begin with. One answer is that the prosecutors who prepared and presented the government's evidence knew that the evidence was false. Another is that the prosecutor who presented the evidence did not know it to be false, but the witness who conveyed it did. And the third answer is that the evidence was obtained and presented with reckless disregard for patent falsity. As explained further below, regardless of the answer, dismissal is warranted.

9

### 1. The false information prejudiced Mr. Banks in the grand jury's proceedings.

Mr. Banks pauses here to address a threshold issue: materiality. Although a defendant is not usually entitled to relief from an irregularity in the grand jury's proceedings, he is where the irregularity resulted in sufficient prejudice. *See Bank of Nova Scotia*, 487 U.S. at 254-56. Prejudice is sufficient to require dismissal "'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (quoting *Mechanik*, 478 U.S at 78). The false information here easily clears that threshold.

As described above, the lyrics were one of only two pieces of evidence that the Superseding Indictment cited against Banks. (The other was a text message that discussed the names under which flights should be booked. (Doc. 27 at 7.)) And it was the only piece of evidence, that, as the Superseding Indictment portrays it at least, directly linked Banks to S.R.'s homicide. More to the point, the lyrics are one of the only two differences between the Superseding Indictment, which *charged* Banks, and the original indictment (Doc. 1), which identified him only as Co-Conspirator 1. For the grand jury not to have been substantially influenced by that evidence in its decision to indict is inconceivable.[1]

---

[1] It also must be noted, as stated above, that Mr. Banks is an internationally known recording artist in the genre of rap/hip-hop. The question of the materiality of this evidence must also consider the unknown nature of how his status as a celebrity, his particular genre of music, and the worldwide breadth of his audience was presented to the grand jury by the government. The answer to this question would be highly relevant to how the grand jury might have viewed the inclusion of these lyrics as evidence against him. In fact, research shows that rap lyrics face genre-specific bias, with identical violent content judged more threatening when labeled as rap music. *See generally* Briefs of Amici Curiae in Support of Petitioner, *Knox v. Penn.*, No. 18-949 (U.S. Mar. 6, 2019), available at: https://www.scotusblog .com/case-files/cases/knox-v-pennsylvania/ (last visited Apr. 18, 2025). Participants in studies by Fried (1999/2016) and Fischoff (1999) demonstrated stronger negative reactions to rap lyrics than to equivalent content in other genres, and even showed more negative reactions to the lyrics than to being told the artist faced murder charges. *See* Brief of Amici Curiae Render, Nielson, and Other Artists and Scholars in Support of Petitioner, *Knox v. Penn.*, No. 18-949 (U.S. Mar. 6, 2019), at 19-24, available at: https://www.supremecourt.gov/DocketPDF/18/18-949/90947/20190306152355894_11%20AM%20Final%20Knox%20Amicus%20Brief.pdf. This suggests that everyday citizens, like those who sat on the grand jury in this case, would be more

### 2.    The Court should dismiss the indictment because the government presented false evidence to the grand jury.

Returning to the matter at hand, the Court must determine whether the government knew that the assertion regarding Banks' lyrics was false at the time it presented the case or whether the government subsequently discovered it to be so. If the government knew the evidence to have been false when it was adduced, it had a duty to correct it. *United States v. Claiborne*, 765 F.2d 784, 791 (9th Cir. 1985) ("Defendants may establish such grand jury abuse by demonstrating that the prosecutor obtained an indictment by knowingly submitting perjured testimony to the grand jury." (citations omitted); *see United States v. Thompson*, 576 F.2d 784, 786 (9th Cir. 1978) ("Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented."); *see also Glossip v. Oklahoma*, 145 S.Ct. 612 (2025) ("In *Napue v. Illinois*, [360 U.S. 264 (1959),] this Court held that a conviction knowingly 'obtained through use of false evidence' violates the Fourteenth Amendment's Due Process Clause. To establish a *Napue* violation, a defendant must show that the prosecution knowingly solicited false testimony or knowingly allowed it 'to go uncorrected when it appear[ed].'" (internal citation omitted)). So too, in this Circuit at least, is a prosecutor obliged to correct false testimony in grand jury proceedings, even if it became apparent after the fact. *Basurto*, 497 F.2d at 785-86 ("We hold that the Due Process Clause of the Fifth

---

inclined to interpret rap lyrics as literal threats rather than artistic expression. *Id.* (compiling academic research and scholarship including Stuart P. Fischoff, *Gangsta' Rap and a Murder in Bakersfield*, 29 J. APPLIED SOC. PSYCH. 795, 803 (1999)) (finding that exposure to selected rap lyrics caused "a significant prejudicial impact" on his test subjects, who were significantly more likely to think the rapper was capable of committing murder, and actually that "exposure to the lyrics evoked a negative reaction in participants that was more intense than the reaction to being told that the young man was on trial for murder."); *see also* Brief of Amicus Curiae Nat'l Ass'n of Criminal Defense Lawyers in Support of Petitioner, *Knox v. Penn.*, No. 18-949 (U.S. Mar. 6, 2019), at 6-14, available at: https://www.supremecourt.gov/DocketPDF/18/18-949/90839/2019030610 2350805_2019-03-06%20No.%2018-949%20NACDL%20Mot%20and%20Amicus%20Brief.pdf (the widespread prosecution of rap lyrics allows for the overcriminalization of speech that is objectively non-threatening).

Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached. Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel—and, if the perjury may be material, also the grand jury—in order that appropriate action may be taken.")

Were the Court to determine, however, that the prosecutor's duty to correct the false assertion regarding Banks' lyrics is not implicated here, it should still dismiss the indictment. The only way for the Court to hold that the prosecutor has no duty to correct the factual error before the grand jury would be for it to find that neither the prosecutor nor the witnesses had no cause to know that they were travelling on a patently wrong inference. But that would mean that neither the prosecution nor any witness took the time to determine whether Banks wrote the lyrics and *when* he wrote them. Rather, the prosecution appears to have assumed a connection between the lyrics and the homicide and presented that assumption to the grand jurors having never investigated whether it was plausible. If that is the case, dismissal is proper under the holding in *Samango*.

In *Samango*, the Ninth Circuit affirmed a district court's dismissal of an indictment because the government had secured it in a manner that seriously threatened the judicial process, even if prosecutors had not relied on perjury. There, the government secured an indictment based on a prosecutor's presenting hearing transcripts, which concealed that most of the "testimony" that the grand jury was to consider came from the prosecutor himself, along with the prosecutor's own "impressive repertory of insults and insinuations" against the defendant, which were unnecessary to the proceedings. *Id.*, 607 F.2d at 881-83. Further, the prosecutor apparently concealed from the grand jury that it could have subpoenaed testimony from a witness whom the prosecutor knew, but did not reveal, was of questionable credibility. *Id.* at 881-82. The district court dismissed the indictment as an exercise of

its supervisory powers, and the Ninth Circuit affirmed, cautioning that, despite there having been no claim of false testimony, "prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role." *Id.* at 882. And in that case, the district court was within its discretion to conclude that the prosecutor had overstepped. *Id.* at 884-85.

At minimum, the government here likewise overstepped, even if unintentionally. To see why, consider the lyrics' inclusion in the Superseding Indictment. The problem there is not the lyrics themselves, but the inference that the Superseding Indictment expressly drew from them. Such inferences are more often a matter of argument than they are of percipient testimony, or even witness opinion. And so was more likely to have been urged by a prosecutor.

Next, recall that the original indictment, which issued on October 17, 2024 neither mentioned the lyrics nor charged Banks. (Doc. 1.) The lyrics appeared in the November 7, 2024, Superseding Indictment, which the government certainly prepared: "[t]oday, the grand jury relies upon the prosecutor to initiate and prepare criminal cases and investigate which come before it. The prosecutor is present while the grand jury hears testimony; he calls and questions the witnesses *and draws the indictment*." *Basurto*, 497 F.2d at 785 (emphasis added).

It stands to reason, moreover, that given the tight turnaround—21 days between the original Indictment and the Superseding Indictment—a prosecutor here, as in *Samango*, would have introduced transcripts from the proceedings on the first indictment. Or since the same grand jury returned both indictments, a prosecutor could simply have asked the grand jurors to recall the evidence from the earlier proceeding to which the lyrics could have been added and emphasized.

Of course, none of that would be problematic except the lyrics—whose inclusion in the Superseding Indictment and presentation to the grand jury appear to have been a purely prosecutorial invention—indisputably cannot stand for the proposition that the prosecutor would have urged. Rather than allowing the grand jury to make an

1   independent judgment based on a fair presentation of the government's evidence, all

2   signs here point to the prosecution usurping the grand jury's independence with a

3   theory of culpability that could not have been well-investigated in the first place. Had

4   it been so, the lyrics would simply not appear in the Superseding Indictment.

5       Further adding color to the government's position regarding these lyrics was the

6   government both changing course and doubling-down on their argument regarding

7   the meaning of these lyrics even when confronted at the detention hearing with

8   evidence that proved what is contained in the indictment is factually impossible.

9   Counsel for the government could, at that point, have made efforts to correct this

10  wrong as is their duty, but instead, chose to posit a new argument about an

11  "overlayed" audio clip that was also factually incorrect—again, easily made clear

12  with just a modicum of investigation. Given this window into how quickly the

13  government could change course with a new incorrect factual assertion, Mr. Banks'

14  concern as to what was presented to the grand jury is only further heightened. This

15  sort of egregious conduct by the government is what is appropriately considered

16  when determining that dismissal of an indictment is appropriate, as it is in this case.

17  **C.    If the Court is Uncertain Whether the False Information that the**
18  **Government Presented to the Grand Jury Requires Dismissal, the**
        **Court Should Order the Government to Produce the Transcripts and**
19      **Evidence from the Grand Jury Proceedings.**

20      Should the Court not yet be convinced that dismissal is appropriate, it can take

21  the middle ground and compel disclosure of the grand jury proceedings that

22  ultimately resulted in the return of the Superseding Indictment under FED. R. CRIM. P.

23  6(e)(3)(E)(ii).[2] That Rule permits the Court to "authorize disclosure … of a grand-

24  jury matter … at the request of a defendant who shows that a ground may exist to

25

26  _____

27  [2] On December 27, 2024, defense counsel sought the government's voluntary disclosure of the grand jury minutes and accompanying materials through written correspondence. The government declined

28  this request on January 14, 2025. Relying on grand jury secrecy, the government stated, in an e-mail to defense counsel, "[w]e will not be producing the requested grand jury materials at this time."

14

dismiss the indictment because of a matter that occurred before the grand jury." *Id.* Given the timing and patent falsity of the challenged assertion in the Superseding Indictment, Banks has surely met the Rule 6(e)(3)(E)(ii) threshold. He urges the Court, therefore, to order the government to disclose the transcripts and the evidence that led to both the original and Superseding Indictments. That way, the Court can compare the prosecutor's presentations in each and discern when and how the factual error arose.

Mr. Banks has already made this request of the government, but it refused him. And defense counsel's other efforts to elucidate the issue have not succeeded. On January 28, 2025, the defense sought clarification by email about exactly what video the government was referencing that featured both the TMZ news footage and the "*Wonderful Wayne*" lyrics. The government responded that additional discovery would be forthcoming, but it provided two links to "examples" of the referenced video. The first was posted by a user with the handle @otf_edit.[3] The second was posted by a user with the handle @mymixtapez.[4] These videos do, in fact, contain audio and video from news coverage of the shooting, in which T.B. can be heard screaming, superimposed over the "*Wonderful Wayne*" lyrics. The government made a discovery production to the defense on February 7, 2025, that contains these and

---

[3] @otf_edit, YOUTUBE (Aug. 14, 2023), https://www.youtube.com/shorts/AOwEMNg1v2s (last visited Apr. 16, 2025). The YouTube profile page associated with @otf_edit contains a "Description" for the profile that states, "Follow my insta dee_oblock300." *See* @otf_edit, YOUTUBE, https://www.youtube.com/@otf_edit (last visited Apr. 16, 2025). The corresponding Instagram account for @dee_oblock300 identifies the account as a "Fan page for @kingvonfrmdao [the Instagram handle for Dayvon "King Von" Bennett]. @dee_oblock300, INSTAGRAM, https://www.instagram.com/dee_oblock300/ (last visited Apr. 16, 2025).

[4] @mymixtapez, YOUTUBE (Aug. 14, 2023), https://www.youtube.com/shorts/rVCdjb5Vk_Zo (last visited Apr. 16, 2025). This YouTube "Short" appears to blend at least two videos together, including the TMZ video clip of T.B. screaming and video/audio from the song "Same Side" by Lil Durk featuring Rob49. *Id.*

1  similar videos, along with "screenshots" of the videos.[5]

2      The problem with these productions, however, is that Mr. Banks did not *create*

3  these videos, and the government has failed to show any nexus between these

4  manufactured video clips and Mr. Banks. These videos were not created nor posted at

5  Mr. Banks's direction. The internet users who posted the videos, including @otf_edit

6  and @mymixtapez, are apparent "fan pages" maintained by people with no affiliation

7  to Mr. Banks or Only the Family, Inc. The Court should order production of the grand

8  jury transcripts to clarify whether, in charging Mr. Banks, the grand jury erroneously

9  attributed these or other "fan page edits" to Mr. Banks, as the government has clearly

10  done.

11  **IV.    CONCLUSION.**

12      A prosecutor who knowingly secures an indictment based upon false information,

13  or who allows a falsely obtained indictment to persist, routs the grand jury from its

14  central protective function. That is clearly what happened here. For the foregoing

15  reasons, the Court should dismiss the Superseding Indictment against Mr. Banks. In

16  the alternative, the Court should compel disclosure of the relevant underlying grand

17  jury proceedings.

18

19

20

21

22

23

24

25

26

27  _____

[5] The date and time stamps on some of the produced materials reveal that the government captured
28  them from the internet on January 28, 2025, the same day that defense counsel raised the issue via
email, and just minutes before the government responded with the above-referenced YouTube links.

16

Def. Durk Banks' Mot. to Dism.