BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/3535/0813
     Facsimile: (213) 894-0142
     E-mail:    ian.yanniello@usdoj.gov
                greg.staples@usdoj.gov
                daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 24-621(B)-MWF-6 |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT BANKS' APPLICATION FOR REVIEW OF DETENTION ORDER |
| v. | |
| DURK BANKS,<br>  aka "Lil Durk,"<br>  aka "Mustafa Abdul Malak,"<br>  aka "Blood," | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello, Gregory W. Staples, and Daniel H. Weiner, hereby files its opposition to defendant's Application for Review of the Detention Order.

//

//

1    This filing is based upon the attached memorandum of points and
2 authorities, the previously filed Exhibit 1 and Exhibit 2 (under
3 seal) at Dkt. 105, the files and records in this case, and such
4 further evidence and argument as the Court may permit.

5  Dated: May 27, 2025                Respectfully submitted,

6                                     BILAL A. ESSAYLI
                                      United States Attorney
7
                                      CHRISTINA T. SHAY
8                                     Assistant United States Attorney
                                      Chief, Criminal Division
9

10                                       /s/
                                      _____
                                      IAN V. YANNIELLO
11                                    GREGORY W. STAPLES
                                      DANIEL H. WEINER
12                                    Assistant United States Attorneys

13                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant is charged with directing six hitmen to travel across the country to hunt and kill his rival, T.B.  Defendant allegedly orchestrated and financed the murder plot that culminated with shooters opening fire --- including with a machinegun --- at T.B.'s vehicle while it was parked at a busy gas station in broad daylight. The co-conspirators missed T.B., but struck and killed S.R.

In an attempt to secure pretrial release, defendant has offered a small portion of his wealth, claiming that his money and a private security company hired and controlled *by defendant* will somehow ensure his compliance with the law and his bond conditions.  The proposed terms are woefully inadequate to protect the community from harm and to mitigate defendant's risk of flight.  Indeed, within hours of law enforcement arresting his co-conspirators, defendant booked multiple international flights in an apparent attempt to flee prosecution.  (Dkt. 1 [Complaint] at 9-10.)  Defendant has also repeatedly violated MDC rules, further showing he will not follow the rules set by this Court should it grant his release.

In short, defendant's proposed bond package makes clear defendant has access to vast resources, but his conduct in this case and others shows that he has and will use those resources to endanger the community, influence witnesses, and wield his power for violence. For example, an affidavit from a separate federal case in the Northern District of Illinois likewise alleged that defendant "offer[ed] money for people to kill those responsible for his brother's murder, and more specifically, offering to pay money for

1

any Gangster Disciple that is killed." (Ex. 1 at 12.)[1] Evidence collected in this case also shows defendant has allegedly placed monetary bounties to solicit other murders, including a family member of a witness. (See Ex. 2 [Under Seal] at 18-19.)

Defendant's modus operandi is clear: he will use his power, his money, his influence, and any pretrial release to endanger anyone who he perceives as a threat, including witnesses in this case. Defendant should remain detained pending trial.

## II. BACKGROUND

### A. Defendant Is Charged With Directing and Financing S.R.'s Murder

The Second Superseding Indictment ("SSI") charges defendant and five co-conspirators with crimes arising from S.R.'s murder, including Conspiracy to Commit Murder-for-Hire Resulting in Death, in violation of 18 U.S.C. § 1958(a) (Count One); Murder-for-Hire Resulting in Death, in violation of 18 U.S.C. § 1958(a) (Count Two); Stalking Resulting in Death, in violation of 18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(1) (Count Three), and Use, Carry, and Discharge of Firearms and a Machinegun in Furtherance of a Crimes of Violence (Count Four).

#### 1. Defendant's Control and Leadership of OTF

Defendant is the leader of a Chicago-based organization called "Only the Family," or OTF. (Dkt. 147 [SSI] at Introductory Allegation ¶ 1.) The SSI alleges that in addition to producing hip hop music, OTF is comprised of individuals who engaged in violence,

---

[1] Exhibit 1 and Exhibit 2 [filed under seal] were filed as attachments to the government's brief in support of detention filed in December 2024. (See Dkt. 105.)

2

including murder and assault, at defendant's direction.  (Id.)  In furtherance of his control of OTF and to exact revenge on his rivals, defendant is alleged to have placed "bounties on individuals that he and other OTF members wanted to kill, including T.B."  (Id. at Count One, ¶ B.1; see also Dkt. 105, Ex. 2 [Under Seal] at 12-13, 18-19 (describing bounties).)

### 2. Defendant's Deadly Rivalry with T.B.

As alleged in the SSI, in November 2020, D.B., a high-ranking OTF member and close friend of defendant, was murdered following a physical altercation with T.B. at a nightclub in Atlanta, Georgia.  (SSI at Introductory Allegation ¶ 3.)  After the murder, defendant made clear, in coded language, that he would pay a bounty to anyone who took part in killing T.B. for his role in D.B.'s murder.  (Id.)

On August 18, 2022, defendant and his co-conspirators learned that T.B. was in Los Angeles.  (Id. at Count One, Overt Act 2.)  In response, defendant allegedly orchestrated and financed his co-conspirators' travel to Los Angeles to kill T.B.  (Id. at Overt Acts 3-7).  Indeed, around the time that a Chicago-based co-conspirator booked flights for five of the hitmen to travel from Chicago to California for the murder, defendant attempted to conceal his involvement by telling the co-conspirator, "Don't book no flights under no names involved wit me."  (Id. at Overt Act 6.)  As those five co-conspirators traveled to Los Angeles, defendant and another co-conspirator traveled on a private jet to the Los Angeles area.  (Id. at Overt Act 3.)

After arriving in Los Angeles, defendant's co-conspirators used two cars to track, stalk, and kill T.B., as T.B. drove around Los Angeles with his entourage, including S.R.  (Id. at Overt Acts 15-

3

22). After hours of stalking T.B. and his companions, three of defendant's co-conspirators cornered T.B. at a crowded gas station on the afternoon of August 19. (Id. at Overt Act 23). There, the co-conspirators ambushed T.B.'s vehicle and fired multiple rounds towards T.B.'s car, striking and killing S.R. (Id.) Later that afternoon, five of defendant's co-conspirators flew back to Chicago. (Id. at Overt Act 27.)

### 3. Defendant's Attempt to Flee the Country After His Co-Conspirators Were Arrested

In the early hours of October 24, 2024, federal and local law enforcement executed multiple search warrants at locations associated with members of OTF in the Chicago area and arrested five charged co-conspirators. (See Criminal Complaint[2] at 4.) Soon after law enforcement executed the warrants, the FBI learned that defendant had been booked on three international flights, including at least one to a non-extradition country. Defendant skipped the first two flights, and was arrested when he showed up to board a private jet scheduled to leave the United States a short time later. (Id. at 9-10.)

**B. Defendant is Twice Ordered Detained Pending Trial**

Following a detention hearing in December 2024, the Hon. Patricia Donahue, United States Magistrate Judge, ordered defendant detained based on flight risk and ongoing danger. The court reasoned that no conditions of release would reasonably assure the safety of the community, finding that defendant "uses his money, influence and power to endanger individuals whom he perceives as a threat." (Dkt.

---

[2] At the time, defendant was not yet charged in this case. The Criminal Complaint charging defendant Banks was subsequently filed in Case No. 2:24-MJ-065, which has since been merged into the criminal case.

4

116 at 4.)  The court also found that defendant was a flight risk based on his attempt to flee the country immediately after learning of his co-conspirators' arrests.  (Id.; see also Dkt. 1 [Complaint] at 9-10 (describing that, within hours of law enforcement arresting his co-conspirators, defendant was booked on three international flights, including at least one destined to a non-extradition country).)

Following a hearing in May 2025 on defendant's application for reconsideration of the order, Judge Donahue denied defendant's application and maintained the court's order of detention.  (Dkt. 163.)  The court reaffirmed its reasoning that the allegations against defendant "continue to support the conclusion that Defendant uses his money, influence and power to endanger individuals whom he perceives as a threat."  (Id. at 4.)

The court also rejected defendant's proposed bond package --- including supervision by a third-party security company funded by defendant --- reasoning that defendant remains a danger and a flight risk.  (Id. at 4-5.)  As the court explained, defendant "attempted to leave the United States upon learning of the arrest of his co-conspirators in this case," and "has the means and influence to circumvent private security and not appear in court as required." (Id. at 5.)  Indeed, the court found that defendant has already demonstrated he cannot abide by even the most-basic conditions imposed upon him, as he has "repeatedly used at least 13 other inmate phone accounts to make phone calls from MDC and continues to violate BOP's prohibition of engaging in three-way calls."  (Id.)

5

## III. ARGUMENT

### A. Defendant is Presumed to Be a Flight Risk and Danger

Although review of the magistrate court's detention order is de novo, this Court "is not required to start over . . . and proceed as if the magistrate's decision and findings did not exist." United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990). Here, Judge Donahue's thorough detention orders provide a straightforward roadmap and analysis why defendant should be detained pending trial.

A defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is thus appropriate for a defendant who is either a danger to the community or a flight risk. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence;
>
> (2) the weight of the evidence against the defendant;
>
> (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history; and
>
> (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986) (per curiam) (citation omitted).

In cases involving certain violent offenses, including the firearms count set forth in Count Four, the Bail Reform Act established a presumption that a defendant is both a flight risk and a danger to the community.  18 U.S.C. § 3142(e)(3)(B).  Once the presumption is triggered, the defendant has the burden of producing or proffering evidence to rebut the presumption.  United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989); United States v. King, 849 F.2d 485, 488 (11th Cir. 1988).  Congress intended that the statutory presumptions would have a practical effect.  United States v. Jessup, 757 F.2d 378, 382 (1st Cir. 1985), abrogated on other grounds, United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990).  The presumptions do not disappear when a defendant meets his or her burden of producing rebuttal evidence.  United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1986); United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986); United States v. Ward, 63 F.Supp.2d 1203, 1209 (C.D. Cal. 1999); United States v. Clark, 791 F. Supp. 259, 260 (E.D.W.A. 1992). The presumptions remain in the case as evidentiary findings militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g).  Dominguez, 783 F.2d at 707.

**B.    Defendant's Murder and Firearms Charges Justify Pretrial Detention**

Defendant's offenses are calculated, brazen, and deadly.  He caused six hitmen to travel to Los Angeles to commit an execution-style murder in broad daylight.  Defendant allegedly financed the murder plot and offered to reward the killers by paying

7

a bounty for the murder of his rival.  As discussed above, this bounty was not an aberration or isolated event; it was defendant's modus operandi.  (See, e.g., SSI at Count One, ¶ B.1; Ex. 1 at 12 (defendant "offer[ed] money for people to kill those responsible for his brother's murder, and more specifically, offering to pay money for any Gangster Disciple that is killed."); Ex. 2 [Under Seal] at 12-13 (describing bounties).)

As Judge Donahue reasoned in finding defendant a danger to the community, defendant used his power, influence, and vast resources to promote and perpetuate violence.  The SSI's allegations, taken together with defendant's conduct in this case and in others, warrant his continued detention in this case.  See United States v. Liebowitz, 669 F. App'x 603, 604 (2d Cir. 2016) (affirming detention order even though murder-for-hire defendant "had never previously been charged with a violent crime" because the "record contains compelling evidence of [defendant]'s participation in the charged crimes and his knowledge and acquiescence in the use of violence to commit them" which "admits a clear and compelling finding that he posed a threat of future harm"); United States v. Barone, 387 F. App'x 88, 89-90 (2d Cir. 2010) (affirming detention order for defendant whose danger to the community "was clearly and convincingly evidenced by . . . his readiness to commit the charged murder-for-hire").

Moreover, defendant faces a lengthy prison sentence --- mandatory life imprisonment.  The severity of the potential penalty underscores his risk of non-appearance and the threat of danger he poses to those persons involved in his prosecution.  See Liebowitz, 669 F. App'x at 605 ("The lengthy jail sentence that could be imposed

8

for the charged crimes provides an incentive to flee."); see also United States v. Brennerman, 705 F. App'x 13, 15 (2d Cir. 2017) (affirming denial of bail based on risk of non-appearance where defendant facing fraud charges that exposed him to a "range of 57 to 71 months' imprisonment").  As noted above, even before defendant was charged in this case, he booked international flights and attempted to leave the country on the same day that his co-conspirators were arrested.  See Liebowitz, 669 F. App'x at 605 (affirming risk of flight finding where "the record shows [defendant's] access to substantial resources to finance flight").  No amount of money --- or conditions of release --- will adequately protect the community or prevent the defendant from fleeing prosecution.

### C. Defendant's Proposed Bond Package Does Not Mitigate His Flight Risk or the Danger to the Community

Defendant's proposed bail resources do not mitigate his danger to the community or sufficiently reduce his risk of flight.  His funding and orchestration of the murder conspiracy shows that his proposed bail resources are woefully inadequate to mitigate the danger he poses.  See United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008) (affirming district court's denial of proposed $600,000 secured bail package based on risk defendant posed to the community). This is especially true given defendant's proposal to entrust a private security company, *funded by defendant*, to supervise him outside of custody.  (See Dkt. 163 at 5 ("The Court is not persuaded that supervision by a third party security company paid by Defendant addressed either the dangerousness or the serious risk of flight.") These proposed restrictions all suffer from the "critical flaw" in

that "they depend on [defendant]'s good faith compliance" in order to be effective. Hir, 517 F.3d at 1092.

The allegations against defendant and his conduct to date demonstrate that the safety risk to the community and witnesses is too palpable to justify defendant's release. Indeed, defendant has already shown he will not abide by even simple conditions imposed upon him in custody, as he has "repeatedly used at least 13 other inmate phone accounts to make phone calls from MDC and continues to violate BOP's prohibition of engaging in three-way calls." (See Dkt. 163 at 5.) His actions in an already-restrictive condition of confinement show that there is a potent risk that he cannot and will not abide by bond conditions on his own accord, outside the purview of the USMS and BOP.

**IV. CONCLUSION**

Defendant's release would pose a grave risk to the safety of the public, and witnesses and potential witnesses in this case. Defendant has already shown he is willing to use his power and resources to pursue violence. No condition or combination of conditions can ensure defendant's appearance or mitigate his danger to the community. The Court should order defendant detained.