UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEONDRE DONTRELL WILSON,<br>DAVID BRIAN LINDSEY,<br>ASA HOUSTON,<br>DURK BANKS,<br><br>Defendants. | 2:24-CR-621-MWF |

REPORTER'S TRANSCRIPT OF HEARING

Los Angeles, California

Monday, February 23, 2026

AMY DIAZ, RPR, CRR, FCRR
Federal Official Reporter
350 West 1st Street, #4455
Los Angeles, CA 90012

*Please order court transcripts here: www.amydiazfedreporter.com*

APPEARANCES OF COUNSEL:

For the Plaintiff:

Office of the United States Attorney
By: Ian Yanniello
Assistant United States Attorney
Daniel Weiner
Assistant United States Attorney
312 North Spring Street
Los Angeles, California 90012

For the Defendants:

Defendant Wilson:

HARBAUGH LAW, PC
By: Craig Harbaugh, Attorney at Law
360 E. 2nd Street, Suite 800
Los Angeles, California 90012

Defendant Lindsey:

LAW OFFICE OF TILLET J. MILLS, II PLLC
By: Tillet Mills, Attorney at Law
4101 Greenbriar, Suite 210
Houston, Texas 77098

Defendant Houston:

MOEEL LAH FAKHOURY LLP
By: Shaffy Moeel, Attorney at Law
2006 Kala Bagai Way
Berkeley, California 94704

Defendant Banks:

LAW OFFICE OF CHRISTY O'CONNOR
By: Christy O'Connor, Attorney at Law
360 E. 2nd Street, Suite 800
Los Angeles, California 90012

THE CLERK: Calling item number 7, case number CR-24-621B, MWF, United States of America vs. Deondre Dontrell Wilson, David Brian Lindsey, Asa Houston, and Durk Banks.

MR. YANIELLO: Ian Yanniello and Danny Weiner on behalf the United States, and with us is Special Agent Farmby.

THE COURT: Good afternoon, counsel, special agent.

MS. O'CONNOR: Good afternoon, Your Honor. Christy O'Connor on behalf of Mr. Banks, who is present in custody.

MS. MOEEL: Good afternoon, Your Honor. Shaffy Moeel for Asa Houston, who is present in custody.

THE COURT: Good afternoon, Mr. Houston, counsel.

MR. HARBAUGH: Good afternoon, Your Honor. Craig Harbaugh on behalf of Mr. Wilson, who is present in custody.

THE COURT: Good afternoon, Mr. Wilson, counsel

MR. MILLS: Good afternoon, Your Honor. Tillet Mills on behalf of Mr. Lindsey.

THE COURT: Mr. Lindsey, counsel.

We are here in the aftermath of our hearings on the Rule 404(b) evidence and the Rule 403 objections.

So now that the parties understand more or less what the trial would look like, although we have still got a lot of work ahead of us, I will -- I want to discuss some housekeeping matters, and then something obviously more than

that, which is allow the defendants to -- Wilson, Lindsey and Houston, to discuss the severance motion, which Mr. Wilson brought, and in which Messrs. Lindsey and Houston joined.

First, let me ask the Government now, especially with the exclusion of the Chicago evidence, what is your best estimate as to how long the Government's case in chief would take?

MR. YANIELLO: Your Honor, we were discussing this issue with counsel before the hearing. The Government estimates two to three weeks would be the length of the trial.

THE COURT: Okay. Thank you.

The circumstances we have here are obviously complicated. There is the issue with Mr. Mills in Texas, and then of course Mr. Harbaugh here in early May with a case which will take a while, similar gravity to this case, and in which that date was set first. And I had no say obviously with Judge Aenlle-Rocha as to what decision he made on the requested continuance, but I did assure him that because the case had been set when it was, and having even greater difficulties in setting a date, that I would respect whatever decision he made on that.

So having made the decision not to continue the case, Mr. Harbaugh cannot be two places at once, anymore than Mr. Mills can be two places at once.

I have for over a year planned to be absent from Los Angeles on the final week of May, and then in the fall starting on September 23rd.

So what that really gives us, as far as I'm concerned, is any time in June, July and August that counsel can get together, and the -- get together on a date, I'll try to work with you on that.

So have you had a chance, then, to suggest to me a date? And at this point I am going to make sure that that is truly a date. It's kind of the way Judge Rocha was dealing with his May date when he set it. I'll make sure this is the date, and I'll let other -- expect other judges to respect my choice of this date.

Counsel, is there a recommendation as to a date?

MR. YANIELLO: Your Honor, we have with Ms. Sanchez and with counsel, I believe the parties have settled on an August 25th date that is workable for everybody. I believe that Mr. Banks continues to object to a continuance.

THE COURT: Mr. Banks, I understand, the record will note that, and I know you are in custody. And since I was the one who denied your bail motion, I am certainly very well aware that you are in custody. And I am sorry that I need to have you detained for that length of time.

Nonetheless, that objection is overruled. There is no question under the Speedy Trial Act that the delay has to

occur, and that is the situation in which we find ourselves. But the record will reflect Mr. Banks's objection, which is understandable under these circumstances.

So having dealt with that --

MS. MOEEL: Sorry, Your Honor. May I just make -- I have really no conflicts through the summer and the fall, other than the weekend of September 11th, where I'll be in New York for a preplanned trip that is very important to me.

So I would only ask if that the case does go through that week, if I could, if we could be dark a Thursday, which is the date I travel, the 10th, and we may not need to do that, because often in my experience cases resolve quicker.

But I just wanted to let the Court know that that is my only -- my only issue with the date.

THE COURT: Well, I'm not going to guarantee it right now, but I'm exceedingly sympathetic to that situation. Obviously, when those commitments were made, you had no idea that there was going to be this trial taking place. And, you know, other things might arise, jurors might become ill or, you know, any number of things can happen. But rest assured that if we can make it work, then we'll make it work.

MS. MOEEL: Thank you, Your Honor.

THE COURT: All right. Without it being a guarantee.

Any other counsel who want to be heard on the

August 25th date? All right.

MR. HARBAUGH: Your Honor, just simply, I understand the Court is taking it in order of housekeeping matters, and in substance, but of course I don't want to prejudice our very strong motion to sever.

THE COURT: I understand that, counsel, and we will get to that. But at the time I want -- there has to be for now a date set, and for now it is the date for everyone. And obviously, it would not have been negotiated unless there was a recognition of that.

So I assure you that we will hear the severance motion in a few minutes.

Accordingly, the Court sets the date in this case as to all defendants for now, since there has been no successful severance motion, although one is pending, to August 25th, 2026 at 8:30 AM in this courtroom.

All counsel and defendants are ordered to return at that date and time without further order of the Court.

And the Government will submit a stipulation explaining the basis for finding excludable time, and will note that Mr. Banks objects to a further continuance.

Now let's turn to the severance motion. The severance motion certainly is not a trivial motion; however, obviously, it would have been considerably stronger had the Chicago evidence remained in the case.

So the reason I wanted -- I haven't had a hearing on it yet is because I wanted the record to be clear as to what additional evidence was going to be admitted, and which was not.

And we aren't there finally, because as I indicated in my order on some of that evidence, it still might be excluded under Rule 403, because the Government is going to have to convince me that a reasonable jury could find sufficient facts to use the evidence for the purpose for which it's being proffered, and for some of the evidence, I don't believe we are there yet, although I'm sure the Government believes that we'll get there; whether or not we do remains to be seen.

But nonetheless, there is a rough sense now with the parties of what the trial is going to look like. Mr. Harbaugh, you are free to -- I read your motion, obviously, and you are free to argue whatever you like, but what would be most useful to Mr. Wilson is explaining to me what -- how the two trials would be different. And of course, one of the reasons you've said is that some of the Rule 404(b) evidence would not be -- would be admissible against Mr. Banks, but not against Mr. Wilson, or against Mr. Lindsey or Mr. Houston, so -- an assertion with which the Government strongly disagrees.

So let me hear what -- let me hear specifically what

you have to say on that point, but more broadly, how would it -- how would the jury be assisted if the issues -- if there were two trials? Why would the trial for -- why would your client's trial be fairer on the one hand, and why would the Banks jury on the other not have to deal with certain extraneous issues, and can focus solely on why the Government did or did not prove Mr. Banks's guilt beyond a reasonable doubt?

MR. HARBAUGH: Understood, Your Honor.

It definitely was my intention to tailor my argument on why the evidence the Court has identified, with the exception of the lyrics that the Court has identified for Mr. Wilson, are inadmissible against him, and then how they are individually prejudicial and cumulatively prejudicial.

So, Your Honor, I do want to emphasize and start at the beginning, that Mr. Wilson in no way concedes that the Government properly alleges Mr. Banks being engaged in this conduct, nor, as with all due respect, do we concede that they should be admitted at any trial, but now that the Court has made that decision, we believe that it requires a separate trial to ensure fairness.

Your Honor, the Court knows the standard, but we hone in on *Zafiro*, which is severance is required if a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence.

And it's reversible error when the evidence would not have been admissible to the same extent in a separate trial.

And, Your Honor, we are certainly aware of the presumption that typically there is a joint trial for a conspiracy case, and the belief that typically jury instructions can cure a spillover effect.

However, Your Honor, this is not that case, it is a very unique case. We are not talking about one prior act that the Government is seeking to offer. This is a multi-year narrative of violence, attempted violence, threats of violence, talk of violence, planning for violence, an attempted murder, use of heavy weaponry, payment or offer of bounties that have zero connection to Mr. Wilson.

The exceptions are met here. The evidence is admissible only against Mr. Banks, and the spillover is so severe that the jury cannot be expected to compartmentalize.

And I really want to highlight one of the cases, *Nelson*, that the Government relies so chiefly upon, which is that there the Court found that the jury could compartmentalize based upon jury instructions. But there, the jury had a vehicle to compartmentalize, because it was evidence related to separate charges.

So the jury could find that an individual was involved in one attempted robbery, and not in the others; and

in fact, the jury did there.

Here, it is one unified set of charges that apply to Mr. Wilson and Mr. Banks. So the jury has no mechanism to separate the two in their minds.

And, Your Honor, I really want to emphasize, as we heard in the last hearing -- and I apologize, I don't have the transcript -- is that the Government emphasized that with some of the evidence, they simply want to point out that Mr. Wilson and others are associated with Mr. Banks, which, Your Honor, which is by definition guilt by association, which we prohibited the jury from doing.

And so the Government by their own admission is inviting that exact improper determination in this case with the introduction of all of this evidence.

And so now I'm going to walk through and prioritize in order of what is most severe. And we'll first start with the attempted murder of TB in 2021. There is zero evidence that Mr. Wilson had any connection to that. There is no act, no statement, no presence whatsoever involved in that incident.

But the jury will hear and see surveillance footage, and hear from a witness who was involved in this with no limiting instruction available for them to see that this is not associated in any way with Mr. Wilson.

But the jury will hear, and we don't know because

14:59:33 the Government hasn't told us what the extent of their evidence is on this, but Mr. Wilson and others will sit here to deal with a completely unrelated act.

14:59:43 And, Your Honor, and this was pointed out before, and I'm not going to rehash the 404(b) motion, but I think it is really important, the Government casts this broad conspiracy starting in 2010, but the overt acts don't begin until much later. And, Your Honor, this is not identified as -- actually, it's not even identified in the Complaint, or in the charging document, but it's not identified as to any of these other individuals.

15:00:11 The conspiracy is limited to the events that occurred in Los Angeles. It has nothing to do with what occurred in Blackshear, Georgia. And so, Your Honor, this alone is the basis why the Court should grant a severance.

15:00:28 But I will now walk through the other prior acts that the Government seeks to offer. So the next one, this "hunting you" IG thread, and Mr. Wilson is on an IG chain, text chain. He makes no statement, no comment, no advancing it. He is simply on the chain. And so there is no basis to offer this at a trial in Mr. Wilson's separate trial.

15:01:02 But obviously, it's extremely prejudicial. It's an explicit threat of hunting someone else, another alleged target that the Government claims of Mr. Banks.

15:01:14 And so, again, Mr. Wilson, it would be inadmissible

against him, and he has no way to refute it because it doesn't involve him.

Your Honor, the next is the "pipe it up" thread. Again, Mr. Wilson is on the text chain, but makes no comment, no statement, no utterance furthering it or advocating it. So, again, the prejudice is clear.

The OTF voice memo -- and I apologize, Your Honor, I'm doing my best to be cryptic in line with the Court's public filing, but I think the Court is aware of what I'm referring to here.

THE COURT: Go ahead.

MR. HARBAUGH: And so again, no mention of Mr. Wilson being involved in any way, not identified in the voicemail, not forwarded the voicemail, not referenced in any context. But again, he's prejudiced because the Government imputes this all to not just Mr. Banks, but this OTF hierarchy.

So the mere fact that Mr. Wilson is an artist who performs for OTF, the jury cannot compartmentalize and say, Well, that only applies to these OTF members when the Government is essentially arguing that it's a dual purpose entity, which is both a criminal enterprise and a rap label.

Your Honor, the Banks motive lyrics, again, these go to Banks' own statements. Wilson is not the author or referenced in them. These are violent, retaliatory lyrics.

15:03:00 Again, we don't concede that they should be admitted, but
15:03:03 they shouldn't certainly be applied to Mr. Wilson's trial.

15:03:06 Next is the bounty lyrics, the Court has deferred,
15:03:12 and I'll note if the Court, if it makes sense to defer
15:03:15 ultimate ruling on the severance motion in light of the
15:03:18 Court's pending or deferred rulings, then we would certainly
15:03:22 welcome that. But we think it all factors into the overall
15:03:26 cumulative prejudice.

15:03:26 Your Honor, the fan comment, the "slide for Von,"
15:03:32 this only references, as the Government concedes, Banks'
15:03:36 alleged state of mind. There is no nexus to Mr. Wilson.

15:03:42 The Banks podcast purported admissions or statements
15:03:47 made, again doesn't mention Mr. Wilson, and cannot be
15:03:53 attributed to him.

15:03:54 The Court left the door open with regard to the
15:03:57 music videos. We would take the position that it would be
15:04:03 inadmissible in a stand-alone trial, but the Government, we
15:04:08 will see if they are able to come up with this evidence that
15:04:10 shockingly, Your Honor -- and I will point out that we hope
15:04:15 the Government -- the Court's request for additional evidence
15:04:20 doesn't result in an invitation for the Government to come up
15:04:23 with this evidence by going to their cooperating witnesses,
15:04:28 and now who have been repeatedly interviewed about purported
15:04:33 rewards for videos and other benefits, and they have not come
15:04:36 up with this yet.

So, Your Honor, we would certainly encourage the Court to look at it very circumspect if this information now magically comes to light in response to the Court's directive. But in any event, it wouldn't be admissible against Mr. Wilson.

And so with regard to limiting instructions not being able to cure this spillover, Your Honor, this is an impossible task. The *Gallo* case talks about essentially the mental gymnastics that we are asking the jurors to engage in by ignoring seven items of highly inflammatory evidence, unrelated to Mr. Wilson, and say, Ladies and gentlemen, don't consider any of that evidence -- and we don't know how long the presentation will be on it -- as to Mr. Wilson, even though he's seated here with Mr. Banks, and they are both alleged to be -- or they both are performers for OTF.

Your Honor, even if one item were manageable, and we take the position that the attempted murder of TB in 2021 automatically requires severance, but, Your Honor, the combination of all of them makes it impossible for the jury to decide just Mr. Wilson's guilt based upon the evidence against him.

And, Your Honor, I'm going to hold off on, because the Court has somewhat deferred with regard to the lyrics issue, so I'll hold off on that. But, Your Honor, we just believe that the fair and right decision is a separate trial,

Mr. Banks and the other defendants.

Thank you.

THE COURT: All right. But you recognize that the other defendants have joined in your motion, and their view is that the three of you -- the three of them should have a separate trial, and then Mr. Banks should have his trial?

MR. HARBAUGH: I apologize, Your Honor. When I was saying Mr. Banks in one trial, and the other defendants, that would be encompassing Mr. Wilson, as well.

THE COURT: I see. That is what I -- I wanted to make that clear. Thank you.

Let me hear from the Government, and I'll -- well, before we hear from the Government, does any other defense counsel want to be heard on this?

MS. MOEEL: The only comment I would make on behalf of Mr. Houston, Your Honor, because we do join in Mr. Harbaugh's comments -- and I think Mr. Mills and my client are similarly situated in this regard -- which is that we -- the evidence that the Government is suggesting should be admitted here is even more attenuated for Mr. Houston, because of course he's not on the IG thread identified by Mr. Harbaugh. He's not on the "pipe it up" thread. Again, he neither received, as far as we know, the OTF memo, and in that sense the prejudicial effect to Mr. Houston is even greater.

THE COURT: All right. Thank you.

MS. MOEEL: Thank you.

THE COURT: Mr. Mills, anything to add?

MR. MILLS: Nothing much, Your Honor. We would agree with Ms. Moeel's point that my client is not alleged to be a member of OTF. He's not alleged to be a musical artist. He's not on any of the IG threads. So we would also conclude that the evidence admitted would be unduly prejudicial to our client.

That's it, Your Honor.

THE COURT: All right. Thank you.

What is the Government's response?

MR. WEINER: Thank you, Your Honor.

There is absolutely no basis to sever this trial, this conspiracy trial that was properly joined by a grand jury.

As the Court's ruling made clear, and I'm talking about the recent evidentiary ruling, the evidence which the Court has already admitted goes to show a number of things that are not specific to any defendant. They show the background and the development of this conspiracy. They show the relationship between the coconspirators.

And so the Government, I take issue with Mr. Harbaugh's statement, the Government doesn't concede at all that any of this evidence is solely admissible against

Mr. Banks.

This is a gang murder, that no one really contests happened, SR was killed on the streets of Los Angeles. The crux of this case is who did it and why?

And the Government's theory is clear: Which is that OTF and their associates, including Mr. Lindsey, engaged in a conspiracy to commit a murder-for-hire and to stalk TB to kill him resulting in SR's death. The jury has to hear the relationship between those conspirators. And all of the evidence that the Court ruled on that is admissible goes to the heart of that.

Mr. Banks's motive, for example, even the fans who are posting on his account, and the reasons why Mr. Banks and OTF wanted TB dead, are admissible as to all the defendants. It explains the origin of the conspiracy. It explains the development, why Mr. Banks and his coconspirators wanted to kill TB, and why people would have been able to be recruited, such as Mr. Lindsey, to fly out to accomplish that murder.

So the Government full stop does not concede that any of these pieces of evidence are admissible against a single defendant; they are admissible against all defendants.

It really is -- it's a first principle that severance, especially in a conspiracy case, is disfavored, and especially in this conspiracy case, where the multiple pieces of evidence that this Court ruled on show the

background and development of how these defendants engaged in their criminal activity together.

And the last point I'll make is Mr. Harbaugh said that the Government is trying to show guilt by association. That couldn't be farther from the truth.

What the Government wants to show, and will show to the jury, is guilt by criminal association. That is what a conspiracy is, and that is what these defendants engaged in.

The final point I'll make as to the attempted murder of TB in 2021, I think Mr. Harbaugh says that, you know, there is no evidence that his client was involved in that. What his client is charged with is joining a stalking scheme. That scheme, as alleged in the Indictment, did not begin with the Los Angeles murder, it happened before that. That is because OTF and their coconspirators, including the anticipated witness who is identified in the Court's order, will testify that this murder occurred -- or this attempted murder occurred for the same reasoning that the attempted murder of TB in Los Angeles occurred, which was revenge for DB's death.

And so all of these defendants who knowingly joined into that scheme to stalk, that evidence goes to all of them. It doesn't just run to any single defendant.

And to the extent the Court rules that any piece of evidence does run to a single defendant, there is no

15:12:06 indication at all that a jury instruction cannot suffice. I believe Mr. Harbaugh said something to the effect of a jury instruction won't work, it potentially would be too complicated given the number of pieces of evidence, but it's, you know, black letter law in the Ninth Circuit that jurors are presumed to follow the law. This Court will instruct them to consider the evidence however the Court admits it.

15:12:31 And so there just really is no basis whatsoever to deviate from the extreme norm and sever this trial.

15:12:40 THE COURT: All right. Thank you.

15:12:42 Mr. Harbaugh?

15:12:43 MR. HARBAUGH: Thank you, Your Honor.

15:12:45 Your Honor, I just -- I want to address three points that Mr. Weiner raises.

15:13:01 So first, the Government claims that this would be admissible against Mr. Wilson to simply show the relationship to other coconspirators.

15:13:12 Your Honor, this isn't -- the Government isn't simply offering that they know one another, they are attempting to offer explicit evidence of violent -- alleged violent acts, alleged violent threats, and planning for that. That doesn't merely show that they know one another. And if Mr. Wilson had no involvement in it, then it's completely irrelevant as to him.

15:13:40 Second, Your Honor, the Government continues to

attempt to classify this as a gang murder, but, Your Honor, the Government's premise is based entirely on a circular reasoning. This is not alleged to be -- this is not an actual, not an established gang, it's -- the Government attempts to identify it here, but there is no history, there is no basis.

And, Your Honor, we'll deal with this down the road, we have the Government's notice for their purported gang expert, who essentially investigated OTF in this case and then worked on one other case.

But, Your Honor, the Government essentially has labeled it a gang murder, and then saying this is all part of a gang.

Your Honor, with regard to the attempted murder in Blackshear, the Government did not charge that as a predicate act in this case, because it's not a part of this conspiracy. So they can't shoehorn it in now, claiming it's a part of the overall conspiracy by getting it in under 404(b).

So, Your Honor, for all of those reasons, we implore the Court to grant severance.

Thank you.

THE COURT: All right. Thank you, counsel.

The motion is taken under submission, but I don't intend for it to linger here, because we do have to be able to plan the trials, but I do want to think about it.

All right. Counsel, anything else while we are all here?

MR. YANIELLO: Nothing from the Government, Your Honor.

MS. O'CONNOR: Yes, Your Honor. Christy O'Connor for Mr. Banks.

To be clear, and the Court has probably figured this out, but if the Court rules that severance is warranted, Mr. Banks would like to go first, and he would like to go soon. He would like his day in court.

THE COURT: I understand that; and in fact, that is in fact what I would do.

MS. O'CONNOR: Okay. Thank you, Your Honor.

And --

THE COURT: Go ahead, counsel.

MS. O'CONNOR: Just on a separate issue, housekeeping, I can raise this later, or I could raise it now. I just wanted to know if the Court, regarding the bill of particulars motion that is also pending, does the Court have everything that Your Honor needs in order to decide that motion, and would the Court like to hear from me?

THE COURT: No.

MS. O'CONNOR: Okay. Thank you.

THE COURT: It's a short answer.

MS. O'CONNOR: I briefed it to death, but I'm happy

15:16:09 to say more always.

15:16:10 Thank you.

15:16:10 THE COURT: All right. Thank you, counsel.

15:16:12 And I understand now that Mr. Banks has been placed
15:16:16 in the general population, is not in the SHU?

15:16:21 MS. O'CONNOR: That's correct, Your Honor. Thank
15:16:22 you for that.

15:16:22 THE COURT: You are welcome.

15:16:23 All right. Anything -- counsel, anything else?

15:16:26 MR. HARBAUGH: Nothing further for Mr. Wilson, Your
15:16:29 Honor.

15:16:29 THE COURT: Anything from the Government?

15:16:30 MR. YANIELLO: No, Your Honor.

15:16:31 THE COURT: All right. Thank you, counsel.

***** ***** *****

I certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

---------------------------

Amy C. Diaz, RPR, CRR March 10, 2026
S/ Amy Diaz