DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
marissa@findlinglawfirm.com

BRIAN STEEL
The Steel Law Firm
1800 Peachtree Street NW, Suite 300
Atlanta, CA 30309
Telephone: (404) 605-0023
Email: thesteellawfirm@msn.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES,

Plaintiff,

v.

DURK BANKS,

Defendant.

Case No. 2:24-cr-00621-MWF

**DEFENDANT DURK BANKS' MOTION TO SEVER COUNTS OR IN THE ALTERNATIVE, TO DISMISS THE THIRD SUPERSEDING INDICTMENT ON SPEEDY TRIAL GROUNDS; EXHIBITS**

**Hearing Date: July 27, 2026**

**[UNDER SEAL]**

Defendant Durk Banks, through his attorneys, Drew Findling, Marissa Goldberg, Brian Steel, and Christy O'Connor, hereby files this motion to sever Counts One and Six (the "VICAR Counts") from Counts Two, Three, Four, and Five (the "Los Angeles Counts") of the Third Superseding Indictment. This severance is necessary so that Mr.

Banks might have the August 20, 2026 trial that he has been preparing for since October of 2024 and that the Sixth Amendment's speedy trial provision guarantees him. Should the Court deny Mr. Banks' motion to sever counts, the inevitable delay in this trial date-- caused by the government's unreasonable, eleventh-hour addition of significant new allegations-- requires dismissal of the Indictment.

This motion is based upon the attached memorandum of points and authorities and attached exhibits, the files and records in this case, and such further evidence and argument as the Court deems appropriate.

Respectfully submitted,

Dated: June 26, 2026 BY: /s/ Christy O'Connor

Drew Findling
Marissa Goldberg
Brian Steel
Christy O'Connor
*Attorneys for Durk Banks*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... iv

**MEMORANDUM OF POINTS AND AUTHORITIES** .......... 1

- **I. Introduction** .......... 1
- **II. Factual Background and Timeline** .......... 2
- **III. Legal Standards** .......... 12
  - **a. Rule 14 Severance** .......... 12
  - **b. Speedy Trial** .......... 12
- **IV. Argument** .......... 16
  - **a. Severance of Counts** .......... 16
  - **b. Speedy Trial** .......... 16
- **V. Conclusion** .......... 20

## TABLE OF AUTHORITIES

### CASES

*Barker v. Wingo*, 407 U.S. 514, 530 (1972) .................... passim

*Dillingham v. United States*, 423 U.S. 64 (1975) .................... 13

*Doggett v. United States*, 505 U.S. 647 (1992) .................... passim

*Garris v. United States*, 418 F.2d 467 (D.C. Cir. 1969) .................... 12, 16

*McNeely v. Blanas*, 336 F.3d 822 (9th Cir. 2003). .................... 17

*United States v. Aguirre*, 994 F.2d 1454 (9th Cir. 1993) .................... 18

*United States v. Alexander*, 817 F.3d 1178 (9th Cir. 2016) .................... 17, 19

*United States v. Battis*, 589 F.3d 673 (3d Cir. 2009) .................... 14, 17

*United States v. Black*, 830 F.3d 1099 (10th Cir. 2016) .................... 14, 15, 16

*United States v. Black*, 918 F.3d 243 (2d Cir. 2019) .................... 14, 17, 18

*United States v. Calloway*, 505 F.2d 311 (D.C. Cir. 1974) .................... 15

*United States v. Carter*, 907 F.3d 1199 (9th Cir. 2018) .................... 12

*United States v. Gregory*, 322 F.3d 1157 (9th Cir. 2003). .................... 15

*United States v. Handa*, 892 F.3d 95 (1st Cir. 2018) .................... 14, 16

*United States v. Jeanetta*, 533 F.3d 651 (8th Cir. 2008) .................... 14

*United States v. King*, 483 F.3d 969 (9th Cir. 2007) .................... 15

*United States v. Lamb*, 214 F. App'x 908 (11th Cir. 2007) .................... 15

*United States v. Lonich*, 23 F.4th 881 (9th Cir. 2022) .................... 15

*United States v. Loud Hawk*, 474 U.S. 302 (1986) ........ 17

*United States v. MacDonald*, 456 U.S. 1 (1982) ........ 14

*United States v. Marion*, 404 U.S. 307 (1971) ........ 13

*United States v. Mendoza*, 530 F.3d 758 (9th Cir. 2008) ........ 17

*United States v. Messer*, 197 F.3d 330 (9th Cir. 1999) ........ 12, 13, 16

*United States v. Milhim*, 702 F.2d 522 (5th Cir. 1983) ........ 14

*United States v. Olsen*, 504 F.2d 1222 (9th Cir. 1974) ........ 12, 16

*United States v. Oriedo*, 498 F.3d 593 (7th Cir. 2007) ........ 14

*United States v. Thomas*, 55 F.3d 144 (4th Cir. 1995) ........ 14

*United States v. Velazquez*, 749 F.3d 161 (3d Cir. 2014) ........ 17, 19

*United States v. Williams*, 753 F.3d 626 (6th Cir. 2014) ........ 14

*United States v. Velazquez*, 749 F.3d 161 (3d Cir. 2014) ........ 17, 20

*Zafiro v. United States*, 506 U.S. 534 (1993) ........ 12

**STATUTES**

Fed. R. Crim. P. 14 ........ 2,12,16

**OTHER AUTHORITIES**

ABA Model Rule 2.2 ........ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

For nineteen months, Mr. Banks and his defense team have been preparing to defend against charges related to the August 2022 killing of S.R. in Los Angeles (the "Los Angeles incident"). Team Banks is prepared to proceed on those charges[1] on August 20, 2026, as currently scheduled. This is a trial date that has been continued three times over Mr. Banks' objection. Had his demand for a speedy trial carried the day, he would have had his day in court in October of last year, and right now, he would be home with his family.

But alas, Mr. Banks did not receive the timely trial he demanded. And so, in the interim, the defense team has continued its preparations in earnest-- preparations based on government representations about the intended scope of its case and Court rulings addressing the same. These efforts have included actively litigating the admissibility of 1) evidence regarding "other bad acts," including the January 2022 killing of Stephon Mack in Chicago (the "Chicago incident"), and 2) certain of Mr. Banks' song lyrics. After multiple rounds of briefing and argument, the Court tailored a carefully-considered ruling on the lyrics issue. And after representing to the Court, in January, that the United States Attorneys' Office had turned over all discovery related to the Chicago murder (it had not), the government announced in February that it was taking the Chicago incident off the table. The defense-- and the Court-- proceeded for months in reliance on that representation, along with an array of other government representations about what "other bad act" evidence it would and would not seek to introduce at trial.

---

[1] Referred to herein as the "Los Angeles Counts," these charges were contained in Counts One through Four of the Second Superseding Indictment, and in Counts Two through Five of the Third Superseding Indictment.

The government now attempts to undo all that the parties and the Court have worked for. Less than three months before trial, it supersedes for a third time, re-inserting the Chicago incident into the playing field, and adding inflammatory accusations it could have charged from the start, including an alleged attempted murder in Atlanta in 2019 ("the Atlanta incident"), robbery, theft, and a multi-state drug trafficking operation. Dkt. No. 423. Further, the government now asserts that because it has superseded for a third time, all prior litigation on the music admissions has been for naught. In two successive new supplemental notices (37 and 40 pages long, respectively), it "reserves the right" to seek the admission of a significant amount of previously unnoticed music lyrics and videos.

Regardless of whether this is government gamesmanship, ineffectiveness, or something else altogether, what the government is doing here imperils the constitutional rights of a man who is presumed innocent but nevertheless languishes in jail. In situations like this, where a defendant would otherwise suffer such prejudice to a fundamental right, the law affords this Court wide discretion to order separate trials of counts contained in the same indictment. *See* Fed. R. Crim. P. 14(a). Mr. Banks requests that the Court permit him to proceed to trial, as scheduled, on the Los Angeles Counts against which he has been working so hard to prepare a defense. In the alternative, if Mr. Banks is forced to defend against additional serious charges that the government could have, with due diligence, brought in the first instance, the government has in essence forced a continuance. Mr. Banks' Speedy Trial rights would then demand dismissal of this case. U.S. Const. Amend. VI.

## II. **Factual Background and Timeline**

This case has been taking shape for almost 19 months. The following is a timeline of some the pertinent events that have shaped this case to date.

**June 21, 2023**: The government is aware of allegation that Mr. Banks funds OTF drug trafficking. Ex. A.

**October 17, 2024**: the government issues its first Indictment in this case. Kavon Grant is the lead defendant. Mr. Banks is not charged. Dkt. No. 1.

**October 24, 2024**: Mr. Banks is charged by complaint and taken into custody. He has remained in custody ever since, including almost five months in segregated housing.

**October 29, 2024**: Federal Agent , in a memorandum approved by SSA and A/ASAC , refers to the murder of S.R. as a "VICAR MURDER." Ex. B (excerpted).

**November 8, 2024**: Mr. Banks is charged in the First Superseding Indictment. Dkt. No. 27. This indictment charges him with three counts, all related to the August 19, 2022 killing of S.R. in Los Angeles, California: Count One charges conspiracy to commit murder-for-hire; Count Two charges murder-for-hire; and Count Three charges possession of a firearm in relation to a crime of violence-- to wit, the same murder-for-hire.

The indictment discusses Co-conspirators 2 through 5.

**December 12, 2024**: On the morning of Mr. Banks' first detention hearing, the government raises the Chicago incident in its brief in support of detention. Dkt. No. 105. The brief cites a search warrant affidavit from the Northern District of Illinois for the proposition that Mr. Banks "offered money for people to kill those responsible for his brother's murder, and more specifically, offering to pay money for any Gangster Disciple that is killed." Dkt. No. 105 at 2 (cleaned up). The affidavit, attached as an exhibit to the brief, relays that a confidential source reported the same. Dkt. No. 105, Ex. 1 at 12.

After the December 12 hearing, Mr. Banks is ordered detained. Dkt. No. 116.

**December 18, 2024**: The government produces its first batch of discovery, which contains the allegation that "Banks has been involved in much criminal activity including a shooting outside The Varsity restaurant in Atlanta on February 5, 2019,

where was shot multiple times." Ex. C (excerpted). It also contains the allegation that the Los Angeles murder "enhances his credibility, respect, reputation, and fame in the enterprise of both his gang life and (OTF label) rap life, which are thus inseparable." *Id.*

**<u>December 31, 2024</u>**: The parties, including Mr. Banks, stipulate to continue trial from January 7, 2025, to October 14, 2025. The Court grants that stipulation. Dkt. No. 122.

**<u>April 18, 2025</u>**: Mr. Banks moves to dismiss the First Superseding Indictment based on the government's presentation of false evidence to the grand jury. Dkt. No. 135. As is apparent from the face of the First Superseding Indictment, the government told the grand jury that lyrics contained in the song "Wonderful Wayne & Jackie Boy" constituted an after-the-fact commercialization of S.R.'s death, in which Mr. Banks raps "about his revenge on T.B. with music that explicitly references audio from a news clip taken shortly after S.R.'s murder . . ." *See* Dkt. No. 27 at 3. The government's read on these lyrics, however, is demonstrably false: the song was recorded seven months before S.R. was shot and killed, and thus, could not be a commercialization of his murder.

**<u>May 1, 2025</u>**: The government issues a Second Superseding Indictment. Dkt. No. 147. Again, all counts in the Second Superseding Indictment pertain to the August 2022 Los Angeles shooting. In addition to the counts charged in the First Superseding Indictment, the Second Superseding Indictment adds a count (Count Three) alleging stalking. Notably, the Second Superseding Indictment removes the false allegation, contained in the First Superseding Indictment, about the meaning of Mr. Banks' lyrics. It also removed the allegation, contained in the First Superseding Indictment, that co-defendant Wilson, at Mr. Banks' direction, paid the bounty for the killing of S.R. *Compare* Dkt. No. 27 at 6; Dkt. No. 147.

**September 1, 2025**: The government provides the defense with a "preliminary" 404(b) notice. It lists, in pertinent part, the Chicago murder, and lyrics from three of Mr. Banks' songs: "Ahh Ha," "Rumors," and "Scoom His Ass." It does not list music videos.

**September 12, 2025**: Mr. Banks does not join in the government and co-defendants' stipulation to continue the trial date from October 15, 2025, to January 20, 2026. Dkt. No. 220. The stipulation is granted over Mr. Banks' objection. Dkt. No. 222.

**October 6, 2025**: Mr. Wilson files a motion to sever, in which co-defendants Lindsey and Houston join. Dkt. No. 230 (under seal). The motion argues that Mr. Banks should be tried separately from his co-defendants, citing the "spillover" prejudice from evidence that primarily concerns Mr. Banks, including the Chicago incident and proposed song lyrics.

**October 14, 2025**: Mr. Banks' trial would have begun, had he received the speedy trial he demanded.

**October 17, 2025**: Mr. Banks requests from the government all discovery related to, among other topics, the Chicago incident. Ex. D.

**October 26, 2025**: The person who is referred to as Co-Conspirator 6 in the Third Superseding Indictment passes away.

**October 31, 2025**: The government responds to Mr. Banks' October 17 discovery letter. It tells the defense: "As to the *Montgomery-Wilson* case, we will not be producing the entire case file but are continuing to evaluate your request for additional materials and anticipate responding further in the coming weeks. And, as stated above, the government will continue to comply with its obligations under *Brady*, *Giglio*, and the Jencks Act." Ex. E.

**November 17, 2025**: The government "revises" its September 1 404(b) notice. In addition to what was listed in the September notice, it adds lyrics from "Who Want

Smoke??," "Go," and "Block is Hot." It does not list music videos, but cites these song excerpts as "admissions."

**January 5, 2026**: Mr. Banks does not join in the government's and co-defendants' stipulation to continue the trial date from January 20, 2026, to May 4, 2026. Dkt. No. 330. The stipulation is granted over Mr. Banks' objection, and the trial is set for April 21, 2026. Dkt. No. 343.

**January 7, 2026**: The Court holds a pretrial conference. Dkt. No. 335. At that hearing, the it asks the government whether it has provided the defense with "both the notice of those incidents which would be considered 404(b) and the evidence which is backing that up . . ." Dkt. No. 341 at 15. "But what I want to ask the Government is -- I don't want this to be a moving target. Has -- is there any doubt as of right now that the evidence related to the Rule 404(b) has been provided, that the incidents -- you know, what's listed in the motion in limine are, like, ten different incidents that are disputed. Has that all -- has it been disclosed?" *Id.* at 14.

In response, government counsel represents that "everything that the U.S. Attorney's Office has in connection with different events and 404(b) incidents has been produced, has been disclosed." *Id.* at 15. Mr. Banks' counsel takes issue with that representation, referencing the government's October 31 response to the discovery request: "[T]here is a pending case in Chicago, *U.S. v. Montgomery Wilson* is a pending federal matter. . . And we have asked in a letter to the Government to have further discovery as to that issue. We've been provided very limited discovery from that case. And they have refused thus far to give that to us." *Id.* at 18. The Court reiterates: "And in the meantime, I want the Government to – and – to make sure that it is providing everything that it currently has." *Id.* at 19.

The Court continues the remainder of the 404(b) hearing to February 9.

**January 16, 2026**: The government "supplements" its November notice regarding lyrics "and/or music videos." Ex. F. This is the first notice of the

government's intent to introduce music videos. The supplement adds excerpts from the music videos for the following of Mr. Banks' songs: "Hanging with Wolves," "Block is Hot," "Go," "Risky," "Rumors," "Scoom His Ass," "Who Want Smoke??," "Whatever You Wit," and "AHHH HA."

**February 9, 2026**: The Court holds a hearing on the 404(b) issue and on Mr. Wilson's severance motion. As to the lyrics issue, as a threshold, the Court noted: "I'm not addressing here a number of things that the Government originally put forth in the notice, because I would say based on the reply, the Government's memoranda, that the Government does intend to offer several of those things. So in that sense, I think the Government has much more given up on a number of points . . ." Dkt. No. 382 at 19. The government does not correct or dispute the Court's understanding.

At the hearing, after the Court expressed doubt that evidence on the Chicago incident would be admissible, the government told the Court that it would not seek to admit it. It represented: "We are not inclined at this time to introduce that evidence, so I think we are going to make it an easy issue." *Id.* at 33.

**February 13, 2026**: After extensive briefing[2] and several hearings, the Court issues a detailed, 21-page ruling on the 404(b) issues. Dkt. No. 381. The Court noted: "As an initial matter, the Government initially indicated that it intended to introduce evidence surrounding an incident that occurred in 2022 in Chicago. At the hearing, the Government withdrew the evidence for consideration. The Court also expressed its tentative view based on the briefing that it was inadmissible under either Rules 404(b) or 403. The Motion is therefore **DENIED *as moot*** as to that requested evidence. References to that incident will not be admissible without first obtaining the express permission of the Court." *Id.* at 2.

---

[2] The parties filed a total of eight briefs on the various 404(b) issues. *See* Dkt. Nos. 258, 283, 289, 327, 350, 367, 375, and 376.

The order goes on to address Mr. Banks' argument that the government's Rule 404(b) notices lacked the requisite specificity, noting that "the Government cannot be said to be sandbagging the defense by switching its relevance theories too close to trial." *Id.*

The Order then addresses each proposed piece of evidence in turn and makes a number of admissibility rulings.

**February 23, 2026**: "The severance motion certainly is not a trivial motion; however, obviously, it would have been considerably stronger had the Chicago evidence remained in the case. So the reason I wanted – I haven't had a hearing on it yet is because I wanted the record to be clear as to what additional evidence was going to be admitted, and which was not." Dkt. No. 392 at 7-8.

**February 10, 2026**: The government produces discovery on the Atlanta incident.

**February 26, 2026**: The Court denies Mr. Wilson's motion to sever defendants, based in part on the government's representation regarding the Chicago incident. It reiterated: "As counsel no doubt realize, the Motion was considerably stronger before the government's withdrawal of the 'Chicago Incident' as evidence purportedly admissible under Rule 404(b) or as inextricably intertwined." Dkt. No. 386 at 4.

**March 23, 2026**: Mr. Banks does not join in the government's and co-defendants' stipulation to continue the trial date from April 21 to August 20, 2026. Dkt. No. 395. The stipulation is granted over Mr. Banks' objection. Dkt. No. 396.

**May 13, 2026**: Government counsel sends defense counsel an email "[f]or transparency," disclosing that counsel are "discussing seeking a superseding indictment prior to June 3." Ex. G. The email continues: "Although our plans are not final, the superseding indictment would make the shootings of Stephon Mack (Chicago 2022) and (Atlanta 2019) direct evidence. As you know, we have already produced evidence underlying these events in discovery. In the event we elect

to supersede, we will comply with our discovery obligations and produce additional discovery expeditiously in light of the upcoming trial date." *Id.*

**May 26, 2026**: Government counsel again emails, this time with definitive plans to supersede: "Following up on our email below, we anticipate a third superseding indictment adding charges of 18 U.S.C. § 1959(a)(1) (VICAR murder) and 18 U.S.C. § 371 (conspiracy to commit stalking) against defendants Banks, Wilson, Lindsey, and Houston will be returned by June 3. As described below, we anticipate the superseding indictment would make the shootings of Stephon Mach (Chicago 2022) and (Atlanta 2019) direct evidence of the charges. We will be making additional discovery productions this coming week." Ex. G.

**May 29, 2026**: The government produces a large amount of discovery.

**June 4, 2026**: In the face of an August 20 trial date, the government supersedes the Indictment for a third time. Dkt. No. 427. Unlike the previous indictments, the Third Superseding Indictment is not limited to the August 2022 Los Angeles incident. Instead, it alleges a sweeping racketeering enterprise that encompasses a broad array of previously-uncharged and/or unnoticed conduct, including "murder and attempted murder, robbery, theft, trafficking in controlled substances, obstruction and attempted obstruction of justice, including witness tampering . . ." *Id.* at 9.

For example, the Third Superseding Indictment adds allegations that Mr. Banks funded a multi-state drug trafficking enterprise in order to secure "Banks Gang Enterprise" associates' loyalty and ensure their willingness to engage in acts of violence on his behalf. *Id.* at 5. These allegations have not been included in any of the government's 404(b) notices to date.

The Third Superseding Indictment also adds additional alleged acts of violence, including: the attempted murder of Victim 1 in Atlanta, Georgia on February 5, 2019 (the "Atlanta incident"), which has not been included in any of the government's

404(b) notices to date, and the Chicago incident, which the government explicitly removed from the scope of the case at the February 9 hearing. *Id.* at 5-6.

The following counts in the Third Superseding Indictment were not included in the Second Superseding Indictment:

*Count One*: murder in aid of racketeering activity (18 U.S.C. § 1959). This Count alleges that the Los Angeles incident was related to (in consideration for payment from, and for the purpose of gaining/maintaining/increasing position in) the "Banks Gang Enterprise." The Enterprise's racketeering activity is alleged to involve murder/attempted murder in California, Illinois, and Georgia; and drug trafficking.

*Count Two*: conspiracy to stalk, in violation of 18 U.S.C. §§ 371, 2261A(2)(A), (B). Although this charge is technically new, it relates to the Los Angeles incident.

*Count Six*: use of a firearm during and in relation to a crime of violence, namely, murder in aid of racketeering (18 U.S.C. § 1959, as alleged in Count One), in violation of 18 U.S.C. § 924(c). The Second Superseding Indictment had contained a § 924(c) charge, but it was predicated on the Los Angeles stalking allegation.

*Co-Conspirator 6*: The Third Superseding Indictment places Co-Conspirator 6 at the center of the Atlanta incident. Per that indictment, on February 9, 2019, Mr. Banks, D.B. and Co-Conspirator 6 attempted to murder Victim 1 due to a dispute over the purchase of a stolen car. "Specifically, members, associates, and affiliates of the Banks Gang Enterprise, including Co-Conspirator 6, confronted Victim 1 about a stolen car that Victim 1 had sold Co-Conspirator 6. Co-Conspirator 6 demanded a refund. When Victim 1 refused to pay, Co-Conspirator 6 attempted to rob him. After Victim 1 resisted, members of the Banks Gang Enterprise, including DEFENDANT BANKS and D.B., produced firearms and began shooting at Victim 1, striking and wounding Victim 1." Dkt. No. 423 at 5-6.

**<u>June 4, 2026</u>**: The government again "supplements" its prior 404(b) notices regarding rap lyrics and music videos. Referencing the broader sweep of the Third

Superseding Indictment, the government allege that "certain lyrics the Court initially ruled inadmissible under 404(b) are now relevant and admissible." Ex. H at 2. And although at the February 9 hearing on the subject, the government did not dispute the Court's assertion that the government had "given up on a number of points" and narrowed the scope of its proposed admissions, the June 4 notice takes the opposite approach: referencing the chart it filed with the Court, the government claims that it "did not intend to limit or supplant the scope of lyrics it intended to introduce." *Id.* at 2 n.1.

The government's notice adds an array of new lyrics/music videos that it had not previously raised with the defense or the Court. It adds new excerpts from songs it had previously noticed: "Hanging With Wolves," "Risky," "Scoom His Ass," and AHHH HA." And it notices excerpts from new songs, not mentioned in prior 404(b) notices: "Pissed Me Off," "Back Again," "Still Runnin," "Sharing Locations," "Threats to Everybody," "Redman," and "Evil Twins." *Id.*

**<u>June 16, 2026</u>**: The government produces discovery related to Third Superseding Indictment allegations. The discovery requires a 1 terabyte hard drive.

**<u>June 23, 2026</u>**: The government produces a large amount of discovery, including cell phone extractions, related to the Atlanta incident and the Chicago incident.

**<u>June 24, 2026</u>**: The government again amends its disclosure regarding music admissions. It communicates that it no longer intended to use any video associated with "Go,"[3] although its intent to use the audio apparently remains. It adds audio excerpts from two songs never before noticed: "Computer Murderers," and "Sing this Song." Ex. I.

[3] This is probably because what the government represented to be the song's "official music video" was instead an amateur YouTuber's mishmash of unrelated video footage set to the song's audio.

## III. <u>Legal Standards</u>

### a. <u>Rule 14 Severance</u>

Even where counts are of the same or similar character, this Court is empowered to order separate trails of counts where a "consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). The Court's discretion is broad. *See id.* at advisory committee's note (calling the severance decision "entirely in the discretion of the court"); *United States v. Olsen*, 504 F.2d 1222, 1224-25 (9th Cir. 1974) (exercise of the court's discretion to order separate trials of some counts while others are held in abeyance "will not be disturbed, absent abuse").

Although joinder is the norm, where there is a serious risk that denying a severance would compromise a specific trial right, a district court should grant a severance under Rule 14. *See Zafiro v. United States*, 506 U.S. 534, 538 (1993). The risk of prejudice will vary with the facts of each case. *Id.* "Prejudice" under Rule 14 is not limited to "irrevocable damage, certain to occur, and impossible to overcome." *Garris v. United States*, 418 F.2d 467, 469-70 (D.C. Cir. 1969). Instead, it "may also lie in shouldering substantial risk that a situation will not be remedied." *Id.* at 470 (upholding severance of counts where necessary witnesses for various counts could not be available at the same time); *United States v. Carter*, 907 F.3d 1199, 1208 (9th Cir. 2018) (citing *Garris* and suggesting severance of counts would have been appropriate to address witness availability issues because "[a]lthough some of the government's evidence may have overlapped among the counts, the charges were not inseparable"). Where a joinder imperils a defendant's Speedy Trial rights, the Ninth Circuit has reasoned that severance would be an appropriate remedy. *United States v. Messer*, 197 F.3d 330, 340 (9th Cir. 1999).

### b. <u>Speedy Trial</u>

In considering whether a trial continuance infringes upon a defendant's Sixth Amendment right to a speedy trial, the Court should consider four factors, known as the

*Barker* factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). As to the first factor—whether the delay before trial is unreasonably long—Courts have held that delays approaching one year are presumptively prejudicial. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). On the second factor, the reason for the delay, courts consider "whether the government or the . . . defendant is more to blame." *Barker*, 407 U.S. at 531. The third factor, whether a defendant has asserted his right to a speedy trial, is self-explanatory. And in assessing the fourth *Barker* factor, whether a defendant is in custody factors into the prejudice analysis. *E.g. Barker*, 407 U.S. at 532 (discussing the disadvantages of lengthy pretrial incarceration); *Messer*, 197 F.3d at 340 (finding prejudice despite release on bond). The "most serious" form of prejudice, though, is when a delayed trial has impaired the defense: for example, "[i]f witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532.

As to factor one, when there is a superseding indictment, the question becomes: when to a defendant's Speedy Trial Clause rights attach? When the original charges were filed, or on the date of the superseding indictment? The Supreme Court has repeatedly affirmed the notion that the right to a speedy trial is jeopardized at the moment a defendant is arrested, even before the operative charging document issues. In *United States v. Marion*, the Court noted that the right is "engaged by either a formal indictment or information *or else the actual restraints imposed by arrest and holding to answer a criminal charge*." 404 U.S. 307, 320-21 & n.12 (1971) (emphasis added) (citing ABA Model Rule 2.2(a)[4]). In *Dillingham v. United States*, the Court reversed a

[4] ABA Model Rule 2.2(a), as quoted by the Supreme Court, in turn provides that "if the defendant has been continually held in custody or on bail or recognizance until [the date the charge is filed] to answer for the same crime or a crime based on the same conduct or arising from the same criminal episode, then the time for trial should

decision based on the lower court's failure to calculate delay from the date of arrest, as opposed to the indictment. 423 U.S. 64, 65 (1975) ("[T]he Government constituted petitioner an 'accused' when it arrested him and thereby commenced its prosecution of him."). And in *United States v. MacDonald*, the Court held that the right attached at arrest despite the fact that a "literal reading of the Amendment suggests that this right attaches only when a formal criminal charge is instituted and a criminal prosecution begins." 456 U.S. 1, 6, 8 (1982). These decisions are consistent with *Barker*'s recognition that the right to a speedy trial is "amorphous" and not easily susceptible to formalistic rules. *Barker v. Wingo*, 407 U.S. at 522.

All other Court Appeals are in explicit agreement: a superseding indictment does not operate to automatically restart the speedy trial clock. *See United States v. Handa*, 892 F.3d 95, 106-07 (1st Cir. 2018) (measuring duration of delay from the first indictment where charges in the superseding indictment arose from the same "common scheme or plan" and the government, with due diligence, could have brought all charges at once); *United States v. Black*, 918 F.3d 243, 259-60 (2d Cir. 2019) ("the relevant interval for . . . Sixth Amendment speedy trial claim is from the *first* indictment or arrest to trial"); *United States v. Battis*, 589 F.3d 673, 679 & n.5 (3d Cir. 2009) (calculating delay as the period "between the [first] federal indictment . . . and the start of trial," and holding "that the speedy trial right was not affected by the filing of a superseding indictment"); *United States v. Thomas*, 55 F.3d 144, 146-49 n.2 (4th Cir. 1995); *United States v. Milhim*, 702 F.2d 522, 524-25 (5th Cir. 1983) (starting speedy trial time period upon filing of original indictment despite superseding indictment being filed four months later); *United States v. Williams*, 753 F.3d 626, 630-32 (6th Cir. 2014); *United States v. Oriedo*, 498 F.3d 593, 595, 597 (7th Cir. 2007) (finding presumptive prejudice where "nearly three years passed from original

---

commence running from the date he was held to answer." *Marion*, 404 U.S. at 321 n.12.

indictment to trial" in a case with four superseding indictments); *United States v. Jeanetta*, 533 F.3d 651, 653-54, 656 (8th Cir. 2008) (counting, without discussion, delay from original indictment until trial despite superseding indictment nine months after original indictment); *United States v. Black*, 830 F.3d 1099, 1103-09, 1112 (10th Cir. 2016) (calculating speedy trial delay where parties agreed on length of delay by combining "the three periods during which an indictment was pending against Black"); *United States v. Lamb*, 214 F. App'x 908, 910-14 (11th Cir. 2007); *United States v. Calloway*, 505 F.2d 311, 313-16 (D.C. Cir. 1974).

The Ninth Circuit, although it avoids taking a definitive stance on the issue, has reviewed Speedy Trial claims by calculating the length of delay from the date of original indictment, not the superseding. *See United States v. Lonich*, 23 F.4th 881, 893-94 (9th Cir. 2022). In *Lonich*, the Court noted that parties spent "considerable effort dueling over the first *Barker* factor" and whether the length of the delay should be calculated based on the original or superseding indictment. It concluded, however, that that "[w]e need not resolve that debate today." *Id.* The Court went on to assume, in its analysis, that the speedy trial clock began to run with the initial indictment, not the superseding.

In *United States v. Gregory*, the Court of Appeals did the same. 322 F.3d 1157 (9th Cir. 2003). There, the Court noted at the outset that instead of deciding to supersede with new charges, the government had been free to file a new indictment altogether. "Such a new indictment, issued five months before [the defendant's] trial date, would have presented no constitutional speedy trial problems." *Id.* at 1161. The Court went on: "[g]iven the government's own linkage of the third indictment to the first, we assume without deciding that the delay in this case should be measured from the date of the first superseding indictment, which is the first indictment in which [the defendant] was named." *Id.* at 1162. *See also United States v. King*, 483 F.3d 969, 976

(9th Cir. 2007) (tallying Speedy-Trial-Clause delay from the original indictment, despite presence of superseding indictment).

The First Circuit, meanwhile, has articulated limiting principles under which the delay is counted from an original indictment, holding that superseding indictments do not "reset" the speedy trial clock if (1) the original and new charges "are based on the same act or transaction," or the new charges are "connected with" the previously-charged scheme; and (2) the government could have filed the superseding charges "at the time of the prior accusation." *Handa*, 892 F.3d at 106-07.

## IV. Argument

This Court has wide latitude to grant a Rule 14 severance where a defendant is prejudiced by a joinder. Unless the Los Angeles Counts are severed at trial from the VICAR Counts, there is a substantial risk that Mr. Banks' Speedy Trial rights would be imperiled by the government's delay in seeking and producing discovery related to the Third Superseding Indictment.

### a. Severance of Counts

Severance of counts is appropriate where a defendant is prejudiced by their joinder. Fed. R. Crim. P. 14(b). A Court's decision to sever under Rule 14 is granted wide latitude. *Olsen*, 504 F.2d at 1224-25. "Prejudice" sufficient to warrant a severance need not mean "certain to occur," but "may also lie in shouldering substantial risk that a situation will not be remedied." *Garris*, 418 F.2d at 469-70. Where a joinder imperils a defendant's Speedy Trial rights, severance is an appropriate remedy. *Messer*, 197 F.3d at 340.

### b. Speedy Trial

*Barker's* four-factor balancing test governs the speedy-trial analysis. *Doggett*, 505 U.S. at 651. It evaluates: (1) the length of delay; (2) whether the government or defendant is more to blame for that delay; (3) whether defendant asserted his speedy-trial right in due course; and (4) prejudice. *Id.* None of these factors is necessary or

sufficient, individually, to establish a Sixth-Amendment violation; they are considered together. *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008).

Here, the *Barker* factors decidedly favor Mr. Banks, and by forcing an otherwise-avoidable continuance, the newly-added VICAR Counts violate his Sixth-Amendment speedy-trial rights.

**i. Factor One: Length of the Delay**

Delay is measured from the time of indictment to the time of trial. *Mendoza*, 530 F.3d at 762. In cases involving superseding indictments, like here, courts tally speedy-trial delay from the *first* indictment. *See United States v. Black*, 918 F.3d 243, 259-60 (2d Cir. 2019) (collecting cases); *United States v. Battis*, 589 F.3d 673, 679 & n.5 (3d Cir. 2009) (same). When delay between the first indictment and trial surpasses one year, it is deemed "presumptively prejudicial" and triggers inquiry into *Barker's* other factors. *E.g., Black*, 918 F.3d at 254-55.

Here, the first indictment naming Mr. Banks (the First Superseding Indictment) was filed on November 8, 2024. Trial is currently set for August 20, 2026, a total delay of over 21 months. This is already well over the presumptively prejudicial threshold. Should the Court fail to sever the VICAR Counts from the Los Angeles Counts, the government's eleventh-hour Third Superseding Indictment, along with its belated, voluminous discovery productions, would force an even greater delay.

**ii. Factor Two: Reason for the Delay**

The second *Barker* factor is "the focal inquiry." *United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016). It is especially important and "the 'flag all litigants seek to capture.'" *United States v. Velazquez*, 749 F.3d 161, 175 (3d Cir. 2014) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)). Because the government has an affirmative duty to diligently bring a defendant to trial, it bears the burden to justify pretrial delay. *McNeely v. Blanas*, 336 F.3d 822, 826-27 (9th Cir. 2003).

Different reasons for delay are assigned different weights. *Barker*, 407 U.S. at 531. Courts "consider whether the delay was deliberate, neutral, or valid." *United States v. Black*, 918 F.3d 243, 260 (2d Cir. 2019); *Accord Alexander*, 817 F.3d at 1182. Deliberate delay weighs heaviest against the government, with intentional delay to gain an advantage at trial providing an overwhelming case for dismissal. *United States v. Aguirre*, 994 F.2d 1454, 1456 (9th Cir. 1993). While not weighed as heavily as deliberate delay, a more neutral reason like negligence still amounts to an "unacceptable reason []" for delay and weighs against the government. *Doggett*, 505 U.S. at 656-57.

The burden to justify the delay here rests on the government. The defense, for its part, can think of no good reason for the unfortunate series of decisions the government has made that lead us here. Take its treatment of the 2019 Atlanta incident. Although the incident has been squarely on the government's radar for the duration of this entire case, the government never even noticed it as 404(b). Yet now, 19 months into Mr. Banks' confinement and prosecution and less than three months before trial, the Atlanta incident is suddenly part of a common scheme with the Los Angeles incident. No doubt, in its opposition to this motion, the government will argue that it is inseparable for the purposes of trial.

Similarly perplexing is the government's treatment of the Chicago incident. When the government took the Chicago incident off the table in February, it had already considered whether the Los Angeles incident was a VICAR murder-- at least some of its Agents believed that it was. When the government disavowed the Chicago incident in February 2026, it apparently did so for a tactical advantage, in order to defeat Mr. Wilson's motion to sever defendants. (The alternative explanation for its disavowal, that the government no longer believed the Chicago incident to be pertinent to the trial on the Second Superseding Indictment, flies in the face of the Third Superseding Indictment.) The government's tactical decision thus also had served to

delay Mr. Banks' trial date over his objection. Further, whenever it was that the government began to contemplate the Chicago incident as part of a superseding charge (and the government should provide the Court with that answer), why did it not then provide the full discovery that Mr. Banks had requested as far back as October 17? The defense is now in a position where it has to review, digest, investigate, and be prepared to rebut terabytes of new data, just two months out from trial on a charge carrying a life sentence. It is untenable.

As to these incidents, along with the miscellaneous other allegations in the Third Superseding Indictment (drug trafficking, car theft, etc.), the defense has seen no blockbuster breakthroughs in the government's recent investigation that would justify the Third Superseding Indictment's sandbaggery.[5] In other words, the government had access to most (if not *all*) of the evidence supporting the VICAR counts months ago. It should be required to tell the Court why it did not supersede then, and why Mr. Banks' trial date may potentially be disturbed as a result. *See Doggett, 505 U.S. at 657* ("condoning" unjustifiable delay would "penalize" defendants "for the state's faults" and "encourage the government to gamble with the interests of criminal suspects").

**iii. Factor Three: Assertion of the Right**

This analysis is straightforward and inures to Mr. Banks' benefit. Mr. Banks has repeatedly asserted his right to a speedy trial. He objected to the continuance of the trial date from October 2025 to January 2026. He objected to the continuance of the trial date from January to April 2026. And finally, he objected to the continuance of the trial date from April to August 2026.

**iv. Factor Four: Prejudice**

If it is true, as it appears to be, that "the government intentionally delayed," declining to file the VICAR charges earlier when it had the ability to, the law presumes

[5] The government has produced terabytes of new discovery in the past few weeks, and the defense's review of that discovery is ongoing.

even weightier prejudice than for negligent delay. *Alexander*, 817 F.3d at 1182; *See Doggett*, 505 U.S. at 656-57. The government must rebut presumptive prejudice; it essentially must prove "the absence of any prejudice to a defense from passage of years." *United States v. Velasquez*, 749 F.3d 161, 175 (3d Cir. 2014). The government is assigned this burden when responsible for delay because it "compromises the reliability of trial in ways that neither party can prove." *Doggett,* 505 U.S. at 655-56. The government cannot prove the absence of prejudice here.

## V. **Conclusion**

Because the last-minute addition of the VICAR Counts imperils Mr. Banks' Constitutionally-guaranteed right to a speedy trial, this Court should sever those counts from the Los Angeles Counts, and allow him the prompt trial he has consistently demanded. The government's delay in bringing additional charges and producing evidence in support of those charges is unjustifiable. Any further continuance would be of the government's sole creation and would warrant dismissal of the Third Superseding Indictment.