TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division (Cal. Bar No. 265481)
MICHAEL J. MORSE (Cal. Bar No. 291763)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
1400/1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3667/0813/7367
Facsimile: (213) 894-0142
E-mail: ian.yanniello@usdoj.gov
michael.morse@usdoj.gov
daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DURK BANKS, et al.,<br><br>Defendants. | No. CR 24-621(C)-MWF<br><br><u>GOVERNMENT'S OPPOSITION TO DEFENDANT BANKS' MOTION TO SEVER COUNTS OR IN THE ALTERNATIVE, TO DISMISS THE THIRD SUPERSEDING INDICTMENT ON SPEEDY TRIAL GROUNDS; EXHIBIT A</u> |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Michael J. Morse, and Daniel H. Weiner, hereby files its opposition to defendant Banks' Motion to Sever Counts or in the Alternative, to Dismiss the Third Superseding Indictment on Speedy Trial Grounds.

//

//

This opposition is based upon the attached memorandum of points and authorities, the attached Exhibit A, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 6, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

*/s/*

IAN V. YANNIELLO
MICHAEL J. MORSE
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**


DESCRIPTION PAGE

TABLE OF AUTHORITIES....................ii

MEMORANDUM OF POINTS AND AUTHORITIES....................1

I. INTRODUCTION....................1

II. BACKGROUND....................3

A. Timeline....................3

B. Government's Investigation and Superseding Charges....................7

III. ARGUMENT....................10

A. Defendant Banks Should Be Tried on All Charges Contained in the TSI....................11

B. Defendant Banks' Claim that Any Further Continuance Would Violate His Speedy Trial Rights Is Baseless....................16

1. Length of the Delay....................18

2. Reason for the Delay and Assertion of Right....................19

3. Prejudice....................21

IV. CONCLUSION....................22

**TABLE OF AUTHORITIES**

DESCRIPTION: PAGE(S)

Cases:

Barker v. Wingo,
407 U.S. 514 (1972) .................................... 17, 18, 19
Doggett v. United States,
505 U.S. 647 (1992) .................................... 16, 19
United States v. Alexander,
817 F.3d 1178 (9th Cir. 2016) .................................... 17
United States v. Armstrong,
621 F.2d 951 (9th Cir. 1980) .................................... 16
United States v. Baker,
63 F.3d 1478 (9th Cir. 1995) .................................... 17
United States v. Bao Lu,
No. CR. S-99-0433-WBS, 2002 WL 32103062
(E.D. Cal. Oct. 18, 2002) .................................... 20
United States v. Doran,
No. 2:14-CR-00684-CAS-7,2021 WL 413520
(C.D. Cal. Jan. 29, 2021) .................................... 20
United States v. Elmore,
118 F.4th 1193 (9th Cir. 2024) .................................... 12
United States v. Escalante,
637 F.2d 1197 (9th Cir. 1980) .................................... 11
United States v. Goodwin,
457 U.S. 368 (1982) .................................... 2
United States v. Gregory,
322 F.3d 1157 (9th Cir. 2003) .................................... 18, 21
United Stated v. Hartfield,
No. 2:22-CR-00176-LK, 2025 WL 2917377
(W.D. Wash. Oct. 14, 2025) .................................... 20
United States v. Kenny,
645 F.2d 1323 (9th Cir. 1981) .................................... 11
United States v. King,
483 F.3d 969 (9th Cir. 2007) .................................... 10, 17, 20
United States v. Landa-Arevalo,
104 F.4th 1246 (10th Cir. 2024) .................................... 19
United States v. Loud Hawk,
474 U.S. 302 (1986) .................................... 20
United States v. Lovasco,
431 U.S. 783 (1977) .................................... 20
United States v. Mendoza,
530 F.3d 758 (9th Cir. 2008) .................................... 19
United States v. Mikhel,
889 F.3d 1003 (9th Cir. 2018) .................................... 11

**TABLE OF AUTHORITIES (CONTINTUED)**

DESCRIPTION: PAGE(S)

United States v. Morris,
729 F. App'x 549 (9th Cir. 2018) .................................. 21
United States v. Myers,
930 F.3d 1113 (9th Cir. 2019) ........................... 17, 19, 21
United States v. Nance,
666 F.2d 353 (9th Cir. 1982) ...................................... 13
United States v. Paguio,
114 F.3d 928 (9th Cir. 1997) ...................................... 16
United States v. Polizzi,
801 F.2d 1543 (9th Cir. 1986) ..................................... 11
United States v. Reynolds,
231 Fed. Appx. 629 (9th Cir. 2007) ................................ 19
United States v. Satterfield,
572 F.2d 687 (9th Cir.1978) ....................................... 16
United States v. Sears, Roebuck & Co.,
877 F.2d 734 (9th Cir. 1989) ...................................... 17
United States v. Sandoval,
990 F.2d 481 (9th Cir. 1993) ...................................... 19
United States v. Shell,
974 F.2d 1035 (9th Cir. 1992) ..................................... 19
United States v. Tanh Huu Lam,
251 F.3d 852 (9th Cir. 2001) ............................ 18, 19, 21

Statutes:

18 U.S.C. § 1958(a) ................................................ 4
18 U.S.C. § 3161(h)(1)(D) ......................................... 14
18 U.S.C. § 3161(h)(6) ........................................... 5, 6
18 U.S.C. §§ 2261A(2)(A) ........................................... 4

Rules:

Fed. R. Evid. 804(b)(3) ........................................... 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This prosecution arises from a coordinated gang murder. At approximately 6 a.m. on October 24, 2024, the government executed simultaneous warrants and arrested defendant Banks' five co-defendants in and around Chicago, Illinois. Soon after, defendant Banks began booking international flights in an apparent attempt to flee the United States later that evening. The FBI arrested defendant Banks before he boarded a private flight out of the country, and he and his co-defendants were subsequently charged in the First Superseding Indictment ("FSI").

The FSI outlined the gang-related nature of S.R.'s murder and identified multiple uncharged co-conspirators who conspired to kill T.B., resulting in S.R.'s death. As a result, the government continued to investigate the conspiracy and other criminality linked to defendant Banks and his co-conspirators. That investigation involved robust legal process and the review of voluminous digital records, with 59 digital devices and accounts seized --- including 38 following the defendants' arrests. The investigation also revealed the co-conspirators' tradecraft in attempting to evade law enforcement, including witness intimidation, their use of multiple burner phones, and messages showing instructions from enterprise members to delete communications, including defendant Banks telling co-conspirators to "delete thread and start new one" after suspecting an individual provided information to federal law enforcement.

Based on the government's investigation, the grand jury returned additional charges in the Third Superseding Indictment ("TSI") on June 3, 2026 --- including a VICAR murder charge. As the Supreme

Court has long recognized, such superseding charges fall in the heartland of the government's duties and obligations to the public. See United States v. Goodwin, 457 U.S. 368, 382 (1982) ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct.").

Following the return of the TSI, the defendants indicated they will require additional time to prepare for a trial.[1] Pending before the Court is defendant Banks' motion to sever Counts One and Six (the "VICAR charges") from the TSI --- a request that essentially asks this Court to cast aside the operative charging document so that defendant Banks can proceed to trial on his choice of counts. The requested severance should be denied. The joinder of defendants and counts in this racketeering and murder conspiracy case is proper, just, and warranted. As alleged in the TSI, the murder of S.R. was committed by a racketeering enterprise that engaged in, among other crimes, conspiracy, murder, and attempted murder against its rivals. All six counts of the TSI expressly incorporate the indictment's racketeering allegations (Dkt. 423 at ¶¶ A-C), and for good reason --- the enterprise's object, manner and means, and the conspirators'

[1] In his motion, defendant Banks states that if a joint trial on all charges in the TSI proceeds, the government has "forced a continuance." (Mot. at 2, 17.) Defendant Wilson represented to Judge Audero, prior to the return of the TSI, that the "[s]upplemental charges of [the] scope" described by the government to be returned in the TSI "will not permit the August 20, 2026, trial date to hold and Mr. Wilson's pretrial detention is poised to become indefinite." (Dkt. 412 at 1). Defendant Wilson, joined by defendant Lindsey, subsequently told this Court in their motion to sever that he "does not yet know whether a continuance will be required." (Dkt. 442.) The Court has already indicated it will continue defendant Houston's trial date to afford sufficient time to prepare.

conduct are necessarily intertwined and overlap in this conspiracy case.

Defendant Banks' sole basis to sever the VICAR charges is that a trial on the operative charging document would "force[] a continuance" and therefore violate his Sixth Amendment Speedy Trial rights. (Mot. at 1.) That is wrong. There has been no violation of defendant Banks' constitutional speedy trial rights. All defendants (including defendant Banks) requested to continue the trial from late-2024 to October 2025, and his co-defendants then stipulated to continue the trial to its current date. When ordering each requested continuance, the Court made findings of excludable time under the Speedy Trial Act, including that the case was complex and unusual, the defendants were joined for trial and no severance had been granted, and the Court's broad power to delay trial when the ends of justice are served by the continuance. If the Court were to further continue the trial, the Court would undoubtedly evaluate the merits of the request and make similar, appropriate findings that comply with the Speedy Trial Act and the Constitution. The remedy for defendant Banks' request is straightforward: a continuance of the trial. For these reasons --- and those set forth below --- the Court should deny defendant Banks' motion to sever.

## II. BACKGROUND

### A. Timeline

The following is a timeline of relevant procedural history:

- <u>October 24, 2024</u>: Just hours after the arrests of his co-defendants, defendant Banks started booking multiple flights out of the United States. As a result, the government arrested defendant Banks near the tarmac of a

private jet preparing to takeoff. (Dkt. 1 (criminal complaint affidavit outlining defendant Banks' efforts to flee).)

- November 7, 2024: Government filed the FSI, charging defendants Banks, Grant, Wilson, Jones, Lindsey, and Houston, with Conspiracy to Commit Murder-for-Hire Resulting in Death and Murder-for-Hire Resulting in Death, in violation of 18 U.S.C. § 1958(a); and Use, Carry, and Discharge of Firearms and a Machinegun in Furtherance of a Crimes of Violence. (Dkt. 27.)
- December 31, 2024: Defendants Banks, Grant, Wilson, Jones, and Lindsey requested a continuance and signed a stipulation to continue trial to October 14, 2025.[2] (Dkt. 121.)
- January 2, 2025: Court ordered trial continued to October 14, 2025, and made excludable time findings under the Speedy Trial Act for all defendants. (Dkt. 122.)
- April 18, 2024: Defendant Banks filed a motion to dismiss the case based on alleged grand jury misconduct. (Dkt. 137.)
- May 1, 2025: Government filed the Second Superseding Indictment, which added an additional count: Stalking Resulting in Death, in violation of 18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(1). (Dkt. 147.)
- September 12, 2025: Defendants Wilson, Lindsey, and Houston stipulated to continue the trial to January 20, 2026. (Dkt.

---

[2] Defendant Houston did not join in this first continuance. (Id.)

220.) This is the first continuance to which defendant Banks objected.

- September 17, 2025: Court ordered trial continued to January 20, 2025, and made excludable time findings --- including for defendant Banks under 18 U.S.C. § 3161(h)(6). (Dkt. 222.)
- October 6, 2025: Defendants Banks, Wilson, and Houston filed multiple pretrial motions, including multiple motions to dismiss counts and/or the case. (Dkts. 226, 227, 228, 241, 258, 259).
- November 13, 2025: Defendant Banks filed another pretrial motion, this time to disqualify this Court, all judges in the Central District, and the U.S. Attorney's Office (Dkt. 290.)
- January 5, 2026: Defendants Wilson, Lindsey, and Houston request a continuance and enter a stipulation to continue the trial to May 4, 2026. (Dkt. 330.) This is the second continuance to which defendant Banks objected.
- January 13, 2026: Court ordered trial continued to April 21, 2026, and make excludable time findings for the trial defendants --- including for defendant Banks under 18 U.S.C. § 3161(h)(6). (Dkt. 343.)
- March 23, 2026: Defendants Wilson, Lindsey, and Houston stipulated to continue the trial to August 20, 2026. (Dkt. 395.) This is the third continuance to which defendant Banks objected.
- March 23, 2026: Court ordered trial continued to August 20, 2026, and made excludable time findings for the trial

defendants --- including for defendant Banks under 18 U.S.C. § 3161(h)(6). (Dkt. 396.)

- April 16, 2026: Anthony Montgomery-Wilson plead guilty in the Northern District of Illinois to Use of a Firearm During and In Relation to a Crime of Violence (Murder-for-Hire) for murdering S.M. "as consideration for the promise and agreement to pay a sum of money from Individual C."[3] Defendant Montgomery-Wilson further admitted under oath that after murdering S.R., he "collected money that had been offered as consideration for [S.M.]'s murder."[4]
- May 13, 2026: Government informed defense counsel that it was considering filing a superseding indictment before trial that would make the Chicago murder of S.M. and the attempted murder of A.W. in Georgia relevant as direct evidence at trial.
- May 20, 2026: Preston Powell plead guilty in the Northern District of Illinois to Use of a Firearm During and In Relation to a Crime of Violence (Murder-for-Hire) for murdering S.M. Among other things, defendant Powell admitted there "was a cash bounty for [S.M.]'s murder" and that he "participated in a conspiracy with [Montgomery-Wilson] to murder [S.M.] and collect the payment."[5]

---

[3] United States v. Montgomery-Wilson et al., Case No. CR 23-546-TMD, Dkt. 179 [Plea Agreement], at 3-4.

[4] Id. at 5.

[5] United States v. Montgomery-Wilson et al., N.D. Ill. Case No. CR 23-546-TMD, Dkt. 187 [Plea Agreement], at 3.

- May 26, 2026: Government confirmed to defense counsel that it will supersede with the VICAR murder charge by June 3, 2026.
- June 3, 2026: The grand jury returned the TSI, adding two additional counts, including VICAR murder and conspiracy to commit stalking. As set forth below, the murder-for-hire allegations previously charged in the SSI are directly relevant to proving VICAR murder. (Dkt. 423.)
- June 10, 2026: Defendant Wilson and Lindsey filed a renewed motion to sever. (Dkt. 433.)
- June 11, 2026: Defendant Houston filed a motion to sever or continue the trial based on a need for additional time to prepare for trial. (Dkt. 437.)
- June 26, 2026: Defendant Banks filed the current motion to sever the case into two trials: an August 2026 trial on Counts Two through Five; and a later trial on the VICAR charges (Counts One and Six). (Dkt. 446.)

**B. Government's Investigation and Superseding Charges**

As set forth above, after learning that defendant Banks had booked multiple international flights following the arrest of his co-conspirators, the government arrested defendant Banks and charged the defendants in the FSI. As a result of the arrests and other search warrants executed in or around October 2024, the government seized a significant number of digital devices.[6]

[6] The government seized approximately 23 devices on the day the warrants were executed and the defendants were arrested. Notably, because most of the devices were encrypted, the government did not get access to the data right away.

Following the arrests, the government continued to investigate uncharged co-conspirators and other criminality linked to the Banks Gang Enterprise, including through proffering multiple cooperating co-conspirators, and by seeking additional warrants to search for and seize evidence related to RICO and VICAR (hereafter, "enterprise evidence").[7] As the government continued its investigation --- including its review of voluminous electronic records --- it found significant gang enterprise evidence.

Among other things, the government identified numerous text messages by and between enterprise members discussing the racketeering activity alleged in the TSI, including communications about identifying suspected informants, among others. For example, in August 2023, defendant Banks sent a group text message to co-conspirators and enterprise members, including defendant Wilson, stating that a suspected government informant and shooter during the 2022 Los Angeles murder of S.R. was "just ready to snitch blood clear as day" and "[h]e gone tell soon." Defendant Banks then reassured the group, sending a follow up text that stated "[a]s long as we don't break they can tell em what ever." (See TSI at Count 2, Overt Acts 34-37.)

---

[7] For example, in February 2025, the government sought and obtained rollback warrants to search for enterprise evidence dating back to 2019 from iCloud accounts belonging to Co-Conspirators 3 and 4. (See USAO_31964.) In September 2025, the government obtained warrants to search: a social media account belonging to defendant Banks (see USAO_37154); two contraband devices that defendant Banks used to have unmonitored communications while incarcerated (see USAO_37166); and iCloud accounts associated with defendant Banks' contraband devices (see USAO_42458).

To date, the government has produced approximately 4.5 terabytes of digital evidence from approximately 59 digital devices and accounts.

Evidence collected during the investigation also showed that enterprise members took significant steps to prevent law enforcement detection and conceal evidence. For example, in a July 2023 group text message thread between defendant Banks, Co-Conspirator 6, and other Banks Gang Enterprise members, defendant Banks instructs the group to "[d]elete [the] text thread and start [a] new one" after Co-Conspirator 6 sends a voice recorded message to the group suggesting police had recently arrested someone and were asking about defendant Banks, Co-Conspirator 6 and Banks Gang Enterprise members. (See Ex. A at 1-2.) Co-conspirator 6 then sends instructions to the group on how to further conceal evidence by deleting text messages from cloud storage. (Id. at 2.) Additionally, the co-conspirators often used multiple "burner phones" and would dispose of those phones after violence to prevent law enforcement from obtaining relevant information, as defendant Banks did after S.R.'s murder in Los Angeles.[8] (See TSI at 21.)

As a result, the grand jury returned the TSI alleging a racketeering enterprise (i.e., the Banks Gang Enterprise). As set forth in the TSI, members and associates of the gang enterprise committed violence on behalf of the enterprise, including the following:

- **The murder of S.M. in Chicago on January 27, 2022:** Among other things, after murdering S.M., the Chicago defendants Montgomery-Wilson and Powell[9] discussed collecting the

---

[8] As noted above, the government has currently identified approximately 14 of the phone numbers used by defendant Banks during the relevant time.

[9] The TSI refers to the Chicago defendants as Co-Conspirator 7 (defendant Montgomery-Wilson) and Co-Conspirator 8 (defendant Powell).

bounty for killing S.M. from defendant Banks and the Banks Gang Enterprise. Specifically, defendant Powell sent a text message to Montgomery-Wilson stating, "Wassup with otf... wym they not paying." In response, Montgomery-Wilson wrote "we waiting[;] [defendant BANKS] comes up here on the 17."[10] (See TSI at Introductory Allegations, ¶ B.9.b.)

- **The attempted murder of A.W. in Atlanta on February 5, 2019:** As alleged in the TSI, the alleged attempted murder involved multiple enterprise members (including defendant Banks and D.B.) and began as a coordinated, botched robbery attempt.[11] (See TSI at Introductory Allegations, ¶ B.9.a.)

## III. ARGUMENT

Defendant's sole basis for severance is that the joinder of the VICAR charges at the August 20 trial would "imperil [his] Speedy Trial rights" under the Sixth Amendment.[12] (Mot. at 16.) That constitutional analysis is factually and legally unsupported. Ninth Circuit law compels a joint trial on all properly-joined charges in the TSI, which will ensure a streamlined and orderly presentation of evidence, conserve judicial resources, and minimize risk to witnesses. Holding two trials --- including one that pretends the

---

[10] Discovery related to the murder of S.M. was initially produced on August 22, 2025. Additional discovery was produced on May 29, 2026.

[11] Discovery related to the attempted murder of A.W. was initially produced on February 7, 2025. Additional discovery was produced on June 22, 2026.

[12] Defendant Banks does not claim that there has been a Speedy Trial Act violation, the absence of which renders a Sixth Amendment violation "unusual", as explained below in Section B. See, e.g., United States v. King, 483 F.3d 969, 976 (9th Cir. 2007).

enterprise allegations do not exist --- would deprive the jury of a complete understanding of the alleged gang enterprise, including how and why the Los Angeles murder occurred.

### A. Defendant Banks Should Be Tried on All Charges Contained in the TSI

Defendant bears the burden of making a "strong showing" to justify severance. United States v. Kenny, 645 F.2d 1323, 1345 (9th Cir. 1981). Severance is not warranted unless a joint trial would violate a defendant's substantive rights. United States v. Escalante, 637 F.2d 1197, 1202 (9th Cir. 1980). A district court does not abuse its discretion unless "a joint trial [is] so manifestly prejudicial as to require the ... exercise [of] discretion in but one way, by ordering a separate trial." United States v. Mikhel, 889 F.3d 1003, 1047 (9th Cir. 2018) (quotation omitted). "[S]erious consideration" of judicial economy is appropriate. United States v. Polizzi, 801 F.2d 1543, 1553 (9th Cir. 1986).

Here, a joint trial on all counts in the TSI promotes judicial economy and ensures the jury has before it the evidence necessary to evaluate this gang murder. As explained above, every count in the TSI incorporates the indictment's allegations regarding the racketeering enterprise, its object, and its manner and means. But even if the enterprise allegations were not incorporated into the "murder-for-hire" counts, the government's evidence (including defendants' admissions and anticipated co-conspirator testimony) to prove the murder-for-hire conspiracy is the same evidence necessary to prove VICAR murder. Indeed, the VICAR murder charge wholly incorporates the Los Angeles murder-for-hire scheme because the VICAR purpose element is satisfied when a defendant commits murder (1) to

maintain a position within a racketeering enterprise or (2) *to receive "something of pecuniary value" from the enterprise*. United States v. Elmore, 118 F.4th 1193, 1199 (9th Cir. 2024) (VICAR statute requires "proof: (1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendants committed a violent crime; and (4) that they acted for the purpose of promoting their position in or receiving something of pecuniary value from a qualifying racketeering enterprise" (citation omitted)).

A joint trial here also serves another compelling purpose in minimizing the risk to witnesses who have agreed to cooperate against defendant Banks and his co-defendants. There have already been multiple threats to cooperating witnesses and their family members in this case, as well as outside spectators who have shown their willingness to violate court rules[13] and publicly intimidate suspected witnesses[14]. Requiring these witnesses to repeat their testimony in multiple trials --- including duplicating the extra precautionary security measures court staff and the U.S. Marshals Service will undoubtedly have to take attendant to these witnesses' travel and testimony --- strongly militates in favor of a joint trial.

Nonetheless, defendant Banks asks the Court to set aside the facts that compel a joint trial and instead sever the VICAR counts based on a hypothetical, future violation of his constitutional right to a speedy trial. That argument lacks merits.

---

[13] See Dkt. 306 [Notice of Lodging Under Seal Exhibit Regarding Improper Photograph Taken During the November 18 Hearing and Published Online].

[14] See Dkt. 235 [Government's Motion to Empanel Anonymous Jury] at 12 n. 5-8. (listing examples of attempts to identify and intimidate cooperating witnesses).

To start, it is unclear what precise delay defendant Banks asserts would be unconstitutional. Defendant Banks requested the continuance between November 2024 and October 2025 (eleven months), and the time period between October 2025 and the current trial date (August 2026) was requested by his co-defendants with whom he is joined for trial and no severance was granted (ten months). Defendant Banks cannot plausibly contend that the first eleven months that he requested were unconstitutional. Nor does he provide any caselaw that supports the purported unconstitutionality of the subsequent ten months --- all of which was requested by his co-defendants and authorized by the express terms of the Speedy Trial Act authorizing a continuance for a joint trial.

Given the framing of defendant's motion --- i.e., if the Court does not sever the TSI, defendant Banks would not proceed to trial on August 20 --- he appears to argue that *any delay* past August 20, 2026 would be unconstitutional. But that assertion has no basis in caselaw. This is particularly true here, where the lack of a Speedy Trial Act violation is evident. United States v. Nance, 666 F.2d 353, 360 (9th Cir. 1982) ("although no provision of the Speedy Trial Act is intended to bar any sixth amendment speedy trial claim, it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.") (citations omitted).

Moreover, throughout this case, defendants have filed multiple motions that independently provide a basis for excludable time, including defendant Banks' multiple pretrial motions to dismiss and the currently pending motion to sever. See Dkt. 396 (March 23, 2026 Court order continuing trial and finding that "the time period from

at least October 6, 2025, to the date of this order is excludable as to defendants Banks, Wilson, Houston, and Lindsey, pursuant to 18 U.S.C. § 3161(h)(1)(D) due to the delay resulting from pretrial motions, as set forth in Paragraph 8(b) of the parties' stipulation.").

At its core, defendant Banks' motion hinges on his conclusion that any continuance would violate his rights because the delay would purportedly be based on government "sandbaggery" or gamesmanship. (Mot. at 2, 19.) But that is simply not the case. The government's decision to supersede was a good faith exercise of prosecutorial discretion that followed material developments in the government's investigation. After the government arrested and charged the defendants, it continued its investigation, including by searching over 38 digital devices and accounts. As the investigation continued, the government sought and obtained additional search warrants and issued other legal process leading up to the return of the TSI on June 3, 2026.

To the extent defendants believe the investigation could have proceeded faster, defendants' own conduct significantly contributed to the investigation's complexity. Defendants went to great lengths to conceal their criminality: they used coded language when discussing their criminal conduct; they used --- and disposed of --- multiple burner phones; they worked to identify and intimidate witnesses who could (or would) cooperate against them; and they would delete and destroy evidence that could incriminate them, as evidenced by Banks' instruction to enterprise members to "[d]elete [the] text thread and start [a] new one" after discussing someone who may have provided information to federal law enforcement.

Additionally, defendant's argument that the government took "the Chicago incident off the table" when it withdrew its motion to admit it under Rule 404(b) breezes past material developments in that case, which contributed to the government's decision to include it as direct evidence (not under Rule 404(b)) in the TSI. (Mot. at 1.) Specifically, in April and May 2026, the charged defendants in the Northern District of Illinois United States v. Montgomery-Wilson et al., Case No. CR 23-546-TMD, pled guilty and admitted under oath that they murdered S.M. to collect a bounty payment from "Individual C." (See N.D. Ill. Dkts 178, 186.) Evidence at trial will establish the murder was committed on behalf of the Banks Gang Enterprise, including the text messages described above where the Chicago defendants discussed collecting the bounty payment from defendant Banks and OTF, photographs and video files seized from the Chicago defendants' digital devices,[15] and a jailhouse confession by one of the Chicago defendants.[16] This evidence not only shows a similar

---

[15] As set forth in the government's revised disclosure related to Music Admissions --- which defendant Banks attached as Exhibit I to his motion --- media seized from Co-Conspirator 7's phone depicts multiple individuals handling large amounts of cash at or immediately after meeting with defendant Banks and other enterprise members on or about February 17, 2022. (See Exhibit I at 12-13.)

[16] While incarcerated on other charges, Co-Conspirator 7 made various recorded admissions during a Perkins operation about his motive for murdering S.M. and collecting payment from Banks Gang Enterprise members and associates. Following both Chicago defendants pleading guilty and stating under oath that they killed S.M. to collect a bounty payment, the government intends to admit portions of the recorded confession at trial pursuant to Federal Rule of Evidence 804(b)(3). Where a declarant is unavailable to testify (including by invocation of the Fifth Amendment), Rule 804(b)(3) provides for the admissibility of "[a] statement which … at the time of its making … so far tended to subject the declarant to … criminal liability." Fed. R. Evid. 804(b)(3).

Thus, the Chicago defendants have pled guilty and admitted under oath to the bounty killing of S.M., providing additional

*(footnote cont'd on next page)*

modus operandi to the Los Angeles murder of S.R., it proves the operation and existence of a continuing racketeering enterprise. While defendant Banks may be displeased with the government's decision to supersede and include the Chicago murder of S.M. as direct evidence of racketeering activity, defendant's preference that less evidence be presented against him does not amount to legally binding authority.

At bottom, the government's decision to bring additional charges in the TSI was a good faith exercise of prosecutorial discretion. Since all factors --- including witness safety --- compel a joint trial in this case, the Court should deny defendant Banks' request to sever. See United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980) ("joinder is the rule rather than the exception and that the burden is on the defendant in his appeal following denial of the motion to sever to show that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever.")

**B. Defendant Banks' Claim that Any Further Continuance Would Violate His Speedy Trial Rights Is Baseless**

The Sixth Amendment guarantees a defendant's right to a speedy trial in all criminal prosecutions. See Doggett v. United States, 505 U.S. 647, 651 (1992). In determining when the constitutional

---

corroborating circumstances showing the trustworthiness of Co-Conspirator 7's recorded statements. See United States v. Paguio, 114 F.3d 928, 932 (9th Cir. 1997) ("To get a statement against penal interest into evidence under 804(b)(3), the proponent must show that: (1) the declarant is unavailable as a witness; (2) the statement so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true; and (3) corroborating circumstances clearly indicate the trustworthiness of the statement."); accord United States v. Satterfield, 572 F.2d 687, 690 (9th Cir.1978).

right to a speedy trial has been violated, "the Supreme Court has rejected any rigid approaches or clearly defined rules." United States v. Myers, 930 F.3d 1113, 1119 (9th Cir. 2019). Instead, the Court adopted "a balancing test" in which four factors are considered: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice resulting from the delay. Barker v. Wingo, 407 U.S. 514, 531-33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors must be balanced by "an ad hoc, case-by-case approach," and "considered together with such other circumstances as may be relevant." Myers, at 1117, 1120 (cleaned up). The reason for the delay is the "focal inquiry." United States v. Sears, Roebuck & Co., 877 F.2d 734, 739-40 (9th Cir. 1989).

The Ninth Circuit has "recognized that it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated." United States v. King, 483 F.3d 969, 976 (9th Cir. 2007). Where, as here, the time limits of the Speedy Trial Act have been met, there is a "strong presumption" of compliance with the Sixth Amendment. United States v. Baker, 63 F.3d 1478, 1497 (9th Cir. 1995).

As to prejudice, "[i]f the government can show that the delay was wholly justifiable because it proceeded with reasonable diligence, the defendant's speedy trial claim generally cannot succeed in the absence of a showing of actual prejudice resulting from the delay." United States v. Alexander, 817 F.3d 1178, 1182 (9th Cir. 2016) (per curiam).

1. Length of the Delay

While the Supreme Court has recognized "presumptive prejudice" where delays exceed one year, this "presumption" simply means that this Court should apply the above Barker factors. United States v. Tanh Huu Lam, 251 F.3d 852, 856 n.4 (9th Cir. 2001) ("only if the delay is 'presumptively prejudicial' is there a need to inquire into the other factors"). In such circumstances, the test in Barker is by design based on the circumstances of the case, and the Supreme Court expressly recognized that "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Barker, 407 U.S. at 530-31.

Here, defendant Banks has failed to explain what, if any, delay is relevant to the Barker analysis, particularly because he has not asserted what length of delay would be required should the Court deny this motion. Nonetheless, even assuming the Barker factors should be applied and that delay is the 22-month resulting from defendant Banks' and his co-defendants' request to continue the trial, such timespan is consistent with those that the Ninth Circuit has previously upheld, even when caused by the government (which is not the case here). See United States v. Gregory, 322 F.3d 1157 (9th Cir. 2003) (affirming 22-month delay, even though it was caused in significant part by "the government's negligent delay in bringing [a] superseding indictment," as the defendant failed to sufficiently show prejudice associated with the delay); Lam, 251 F.3d at 855 (although an approximately 15-month delay was long enough to trigger Barker inquiry, it only "militate[d] slightly in Lam's favor").

Indeed, far greater delays are common in complex gang and racketeering cases like this one. That is why nearly all of the

cases where the Ninth Circuit has actually found a speedy trial violation involved delays of six to eight years, far beyond the delay at issue here. See, e.g., Doggett v. United States, 505 U.S. 647, 655 (1992) (eight-and-a-half-year delay); United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008) (eight-year delay); United States v. Shell, 974 F.2d 1035, 1035 (9th Cir. 1992) (six-year delay); United States v. Reynolds, 231 Fed. Appx. 629 (9th Cir. 2007) (four years and eight months).

2. Reason for the Delay and Assertion of Right

The reason for the delay --- i.e., "whether the government or the criminal defendant is more to blame for th[e] delay," Doggett, 505 U.S. at 651 --- weighs strongly in favor of the government, as the record here does not show any "deliberate attempt to delay the trial in order to hamper the defense." Barker, 407 U.S. at 531. "[A] good-faith, reasonable justification for the delay . . . will weigh less heavily against the government or not weigh against the government at all." Myers, 930 F.3d at 1119-20 (citations omitted).

Where, as here, "a defendant causes a post-indictment delay, the defendant is deemed to have waived the right to a speedy trial." Id. at 1119; United States v. Sandoval, 990 F.2d 481, 484 (9th Cir. 1993) ("An accused might intentionally relinquish her speedy trial right to enable her attorney to more thoroughly prepare for trial."). And even when a defendant asserts his rights to a Speedy Trial, "delays caused by codefendants are not attributable to the government and weigh against defendants." United States v. Landa-Arevalo, 104 F.4th 1246, 1256 (10th Cir. 2024) (no Sixth Amendment violation when co-defendants were granted continuances of 19 months over defendant's objections); see also Lam, 251 F.3d at 859 (explaining that "repeated

assertions of [defendant's] speedy trial rights had been contradicted by their repeated filings of frivolous petitions and unsuccessful motions in the district court, which contributed to the delay in their trial") (citing United States v. Loud Hawk, 474 U.S. 302 at 314 (1986).[17]

Likewise, "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused[.]'". United States v. Lovasco, 431 U.S. 783, 795 (1977). This is particularly true in a complex case like this "with numerous defendants and alleged co-conspirators." King, 483 F.3d at 976 (four defendant bank fraud conspiracy case). Accordingly, as explained above in Section A, the government's decision to seek the TSI was a good faith exercise of prosecutorial discretion that followed material developments in the government's investigation of a complex racketeering enterprise and conspiracy that committed violent acts in multiple states, spanning years, with numerous defendants and alleged co-conspirators who engaged in concerted and coordinated

[17] See also United States v. Doran, No. 2:14-CR-00684-CAS-7, 2021 WL 413520, at *5 (C.D. Cal. Jan. 29, 2021) ("even if the [15-month] delay in Doran's case were based on a continuance granted to his codefendants, the Court would conclude that the delay necessary to effectuate a joint trial [] is not unreasonable under these circumstances"); United States v. Bao Lu, No. CR. S-99-0433-WBS, 2002 WL 32103062, at *2 (E.D. Cal. Oct. 18, 2002) (no Speedy Trial Act or Sixth Amendment violation where court continued trial four months at request of co-defendants, and "sole purpose [] of this continuance was to provide counsel on both sides, particularly the defense, the full opportunity to prepare for a highly complex trial . . . file pretrial motions, conduct discovery, and study the volumes of evidence produced in discovery; and counsel for the government has requested a reasonable period of time to respond the those defendants' belated motions"); United States v. Hartfield, No. 2:22-CR-00176-LK, 2025 WL 2917377, at *9 (W.D. Wash. Oct. 14, 2025) (same for eleven-month continuance).

efforts to destroy evidence, disguise criminality, and deter cooperation with law enforcement.

3. Prejudice

Finally, defendant Banks has not established any actual prejudice to date or should the trial be continued --- indeed, his motion solely relies on the Court "presuming" prejudice. (Mot. at 19-20.) But the Supreme Court and Ninth Circuit have made clear that it "should presume prejudice only if the defendant is not responsible for the delay." Lam, 251 F.3d at 859 (citing Doggett, 504 U.S. at 657-58). "If, on the other hand the defendant is responsible for the delay in his trial," as is the case here, "then he carries a heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim." Id.; see also Gregory, 322 F.3d at 1163 (22-month delay "not long enough to excuse Gregory from demonstrating actual prejudice to prevail on his claim"). Defendant Banks cannot do so.

In assessing actual prejudice, "a court should evaluate the three interests the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." Myers, 930 F.3d at 1120 (cleaned up).

Here, defendant Banks does not "credibly point to any specific damage to his defense stemming from the delay in his trial." Lam, 251 F.3d at 859. And although he remains incarcerated pending trial, such incarceration does not weigh towards finding a Sixth Amendment violation, as the Ninth Circuit has held that even 11 months of pretrial incarceration due to delay caused by the government (which is not the case here) was not oppressive. See, e.g., United States v. Morris, 729 F. App'x 549, 550 (9th Cir. 2018) (defendant was not

subjected to oppressive pretrial incarceration where 11 months of a total 21-month delay were attributable to the government and 10 months were attributable to the defendant).

**IV. CONCLUSION**

For the reasons set forth above, the Court should deny defendant Banks' request for severance.

# EXHIBIT A

From: [redacted] Zoo
To: [redacted] (owner)

Liked "What who asked what's to us"

| Participant | Delivered | Read | Played |
|---|---|---|---|
| [redacted] | | 7/3/2023 5:17:43 AM(UTC +0) | |

Status: Read

7/3/2023 5:04:01 AM(UTC+0)

Source Info:
00008110-001C34501A00401E_files_partial-afu.zip/private/var/mobile/Library/SMS/sms.db : 0x50D1AB6 (Table: message, handle; Size: 155525120 bytes)

From: [redacted] Lil Dude lil Brother
To: [redacted] (owner)

Police ?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| [redacted] | | 7/3/2023 5:17:43 AM(UTC +0) | |

Status: Read

7/3/2023 5:04:17 AM(UTC+0)

Source Info:
00008110-001C34501A00401E_files_partial-afu.zip/private/var/mobile/Library/SMS/sms.db : 0x50D1835 (Table: message, handle; Size: 155525120 bytes)

From: [redacted] Zoo
To [redacted] (owner)

30 said ATF

| Participant | Delivered | Read | Played |
|---|---|---|---|
| [redacted] | | 7/3/2023 5:17:43 AM(UTC +0) | |

Status: Read

7/3/2023 5:08:21 AM(UTC+0)

Source Info:
00008110-001C34501A00401E_files_partial-afu.zip/private/var/mobile/Library/SMS/sms.db : 0x50D1626 (Table: message, handle; Size: 155525120 bytes)

From: [redacted] Lil Dude lil Brother
To: [redacted] (owner)

Delete thread and start new one

| Participant | Delivered | Read | Played |
|---|---|---|---|
| [redacted] | | 7/3/2023 5:17:43 AM(UTC +0) | |

**Status:** Read

7/3/2023 5:13:05 AM(UTC+0)

Source Info:
00008110-001C34501A00401E_files_partial-afu.zip/private/var/mobile/Library/SMS/sms.db : 0x50D140F (Table: message, handle; Size: 155525120 bytes)

From: [redacted] Zoo
To: [redacted] (owner)

When y'all delete click on that edit sign and clear all deleted too it's the new update so it won't stay in the iCloud

**Attachments:**




Title: IMG_2527.heic
Size: 33444
File name: ~/Library/SMS/Attachments/78/08/8503665B-76AC-4436-8430-C7DB5B3A1CD9/IMG_2527.heic
Path: https://p47-content.icloud.com/M7B75C6B8478C819B5DE29D9A5BC623A02D5465CC284B0E935C9E5150ED709C31.C01USN00
~/Library/SMS/Attachments/78/08/8503665B-76AC-4436-8430-C7DB5B3A1CD9/IMG_2527.heic

| Participant | Delivered | Read | Played |
|---|---|---|---|
| [redacted] | | 7/3/2023 5:17:43 AM(UTC+0) | |

**Status:** Read

7/3/2023 5:14:21 AM(UTC+0)

Source Info:
00008110-001C34501A00401E_files_partial-afu.zip/private/var/mobile/Library/SMS/sms.db : 0x50D2F6C (Table: message, handle, attachment; Size: 155525120 bytes)
00008110-001C34501A00401E_files_partial-afu.zip/private/var/mobile/Library/SMS/Attachments/78/08/8503665B-76AC-4436-8430-C7DB5B3A1CD9/IMG_2527.heic : (Size: 33444 bytes)