TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Chief, National Security Division
MICHAEL J. MORSE (Cal. Bar No. 291763)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/3535/0813
     Facsimile: (213) 894-0142
     E-mail:    ian.yanniello@usdoj.gov
                michael.morse@usdoj.gov
                daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-621(C)-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE NO. 1 FOR A LIMITED GAG ORDER PROHIBITING PREJUDICIAL EXTRAJUDICIAL STATEMENTS |
| v. | |
| DURK BANKS, et al., | |
| | Hearing Date: August 13, 2026 |
| Defendants. | Hearing Time: 10:00 a.m. |
| | Location:    Courtroom of the Hon. Michael W. Fitzgerald |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Michael J. Morse, and Daniel H. Weiner, hereby files its Motion in Limine No. 1 for a Limited Gag Order Prohibiting Prejudicial Extrajudicial Statements.

//

//

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 27, 2026                     Respectfully submitted,

                                         TODD BLANCHE
                                         Acting Attorney General

                                         BILAL A. ESSAYLI
                                         First Assistant United States
                                         Attorney

                                         IAN V. YANNIELLO
                                         Assistant United States Attorney
                                         Chief, National Security Division


                                         _____/s/_____
                                         IAN V. YANNIELLO
                                         MICHAEL J. MORSE
                                         DANIEL H. WEINER
                                         Assistant United States Attorneys

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Despite the imminent trial date, counsel and surrogates for defendant Banks continue to engage in a public press operation that creates significant risks to the jury pool and the fair administration of justice.  As a result, the government respectfully requests that the Court impose a narrow gag order to prohibit further unnecessary extrajudicial statements about the case.

A defendant is entitled to zealous advocacy, including counsels' forceful argument on the briefs and in the courtroom.  But the right to a fair trial does not include litigation through prejudicial and extrajudicial statements on the eve of, and during, trial.  As this Court previously recognized in a separate case, a "flurry of publicity" on the eve of trial threatens creating a "circus-like environment that would deprive [the parties] of their right[] to a fair trial."[1]

Until now, the government has declined to seek judicial intervention despite the defense's repeated, inflammatory public comments.  The government twice inquired whether defense counsel would agree to a limited order prohibiting the parties from making extrajudicial statements that could prejudice the jury.  Defense counsel declined, and the government respectfully submits that the Court should now intervene to ensure a fair trial.

**II.   ARGUMENT**

Trial courts have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity."  Gannett Co.

---

[1] Doe v. Rose, No. CV-15-07503-MWF, 2016 WL 9107137, at *1 (C.D. Cal. Sept. 30, 2016) (cleaned up).

v. DePasquale, 443 U.S. 368, 379 (1979).  "The case for restraints on trial participants is especially strong with respect to attorneys because they are officers of the court, with a fiduciary duty not to engage in public debate that will obstruct the fair administration of justice."  Rose, 2016 WL 9107137, at *2 (cleaned up and citing Levine v. Dist. Ct., 764 F.2d 590, 595 (9th Cir. 1985).)  "[W]hen [litigants] appear likely to divulge inaccurate information, rumors, and accusations," a "narrowly-drawn partial restraining order" is appropriate.  Sheppard v. Maxwell, 384 U.S. 333, 1521 (1966) (cleaned up).  Such restraint is proper when: "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, (2) the order is narrowly drawn, and (3) less restrictive alternatives are not available."  Levine, 764 F.2d at 595.  The "clear and present danger [standard] is not necessary to enter a gag order; rather, the somewhat lower showing of a substantial likelihood of material prejudice is all that is necessary."  Rose, 2016 WL 9107137, at *2 (cleaned up).

**A.    A Limited Gag Order is Necessary to Ensure a Fair Trial**

From the inception of this case, defendant Banks has attempted to use his influence and media access to influence public opinion about the strength of the case and, at times, to malign the government.  For example, defendant used his social media account with nearly 15 million followers to publicize his first motion to dismiss the FSI, falsely claiming the government was using this murder case to "criminalize[]" "Black artists . . . for their

2

creativity."[2]  While the motion was pending, defense counsel appeared on popular podcasts with hundreds of thousands of views, providing commentary about the merits of the case.[3]  Then, following the filing of the TSI, counsel issued a press release using defendant Banks' social media account that criticized the new charges, calling the allegations "false" and "lipstick on a pig", and contained other rhetoric suggesting the government was "scrambling" and "pathetic."[4] Counsel then gave an interview where he criticized the government, boasted that the defense "have been defeating [the government] on so many legal issues," and claimed the community, including law enforcement officers, opposed the charges against defendant Banks, "walking up to [counsel] and saying 'free Durk'."[5]

On June 26, in light of these and other publicly disseminated statements, the government proposed a joint gag order, to which defense counsel disagreed.  Following the July 14 hearing before this Court, defense counsel conducted an impromptu press conference on the steps of the courthouse.[6]  Last week, the parties met and conferred

---

[2] See, e.g., Instagram, @lildurk, https://www.instagram.com/reel/DJCr4YEzTrA/?hl=en (post on April 29, 2025) (approximately 14.6 million followers).

[3] See, e.g., DJ Vlad, "Lil Durk's Lawyer [] Breaks Down His Murder-for-Hire Fed Case", available at https://www.youtube.com/watch?v=NZQN2pC7nCQ (approximately 335,000 views); DJ Akademiks, "Lil Durk Lawyer [] Breaks down his M*urder for Hire Case...", available at https://www.youtube.com/watch?v=FmtOkgEF4p0 (approximately 405,000 views)

[4] See Instagram, @lildurk, https://www.instagram.com/p/DZMCq6sN4Bs/ (posted on June 4, 2026).

[5]See, e.g., http://hot97.com/news/lil-durks-attorney-drew-findling-says-police-tell-him-free-durk/; https://x.com/mymixtapez/status/2069896211054702908.

[6] See https://www.rollingstone.com/music/music-news/lil-durk-racketeering-chicago-killing-separated-la-trial-1235593517/.  To be
*(footnote cont'd on next page)*

about this and other motions the parties intended to file.  Defendant Banks' counsel indicated that defendant opposes the requested relief.

For the reasons set forth below --- including that trial is in a matter of weeks --- the government respectfully requests that the Court enter an order prohibiting further press conference, releases, and other media operations that could improperly influence the jury.

### 1.    Substantial Likelihood of Material Prejudice

When evaluating prejudice, courts examine "whether pretrial publicity has become so extensive that potential or empaneled jurors will have difficulty avoiding press coverage of the trial," the "nearness of the trial," and whether the "parties may attempt to introduce, improperly, evidence in the press that would be otherwise inadmissible in the courtroom at trial."  Rose, 2016 WL 9107137, at *3 (citing cases).  Given defendant Banks' near-continuous press operation in this case, the imminent trial date, and the significant publicity this case has garnered, further public commentary by the parties and their representatives is unnecessary and will make it impossible for jurors to avoid press coverage of the case.

### 2.    Less Restrictive Alternatives and Narrow Tailoring

In evaluating whether there are less restrictive alternatives, courts consider: (1) "searching" voir dire; (2) clear jury instructions; (3) a change of venue; and (4) sequestration.  Levine, 764 F.2d at 599-600.  Given the imminent trial date, the parties and their representatives should be precluded from making extrajudicial

clear, the government does not submit that the July 14 press statements were prejudicial in and of themselves, nor that defense counsels' statements to the press to date have been made for an improper motive or in bad faith.  For the reasons explained in this motion, the government seeks this relief in light of the increased publicity and amplification of defense counsels' statements opining on issues the jury must decide in a matter of weeks.

statements about the merits of the case, including legal and evidentiary issues the Court and jury will decide before and during trial.  This prohibition is the baseline standard applied in multiple jurisdictions across the United States.  For example, in every criminal case brought in SDNY and EDNY, parties and counsel are prohibited from publicizing information or opinions that create a substantial likelihood that the dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice. See SDNY Joint Criminal Local Rule 23.1.  Those rules articulate multiple topics that are "presumptively" prejudicial, and also prohibit "any extrajudicial statement or interview relating to the trial" during a jury trial, "including the period of selection of the jury."  Id., 23.1(c)-(d). For these reasons, there is no less restrictive means to mitigate the risk of prejudicing the jury. See, e.g., Rose, 2016 WL 9107137, at *3.

Finally, the government seeks a partial gag order in the narrowest fashion like this Court ordered in Rose: that "the parties and their attorneys will be prohibited from discussing the character or reputation of the parties; the expected testimony of a party or witness; the strengths or weaknesses of any party's case; evidence that has been ruled inadmissible, or that the attorneys reasonably should know is likely to be inadmissible, and which would create a substantial risk of prejudice if disclosed."  Rose, 2016 WL 9107137, at *3.  As this Court reasoned, "the congruence between [such a] partial restraining order and counsel's [already imposed] ethical obligations illustrates how limited and appropriate" such a restraining order is in order to ensure "both parties are afforded a fair trial."  Id. at *6.

5