BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Chief, National Security Division
MICHAEL J. MORSE (Cal. Bar No. 291763)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
1400/1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3667/3535/0813
Facsimile: (213) 894-0142
E-mail: ian.yanniello@usdoj.gov
michael.morse@usdoj.gov
daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DURK BANKS, et al.,

Defendants.

No. CR 24-621(D)-MWF

DISPUTED JURY INSTRUCTIONS

Trial Date: August 20, 2026
Trial Time: 8:30 a.m.
Location: Courtroom of the Hon. Michael W. Fitzgerald

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Michael J. Morse, and Daniel H. Weiner, hereby files the parties' disputed instructions after meeting and conferring with defendants Durk Banks, Deandre Dontrell Wilson, and David Brian Lindsey, by and through their respective counsel of record. The parties respectfully reserve the right to supplement these jury instructions as needed.

Unless otherwise noted, the parties have used the most recent version (as of August 12, 2026) of the Jury Instructions found on the Ninth Circuit's website at: https://www.ce9.uscourts.gov/jury-instructions/model-criminal.

Dated: August 12, 2026

Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

/s/
IAN V. YANNIELLO
MICHAEL J. MORSE
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## INDEX OF AGREED-UPON JOINT PROPOSED JURY INSTRUCTIONS

| Proposed No. | Court No. | Title | Source |
|---|---|---|---|
| **PRELIMINARY INSTRUCTIONS** | | | |
| 31 | | Testimony of Witnesses Involving Special Circumstances -- Immunity, Benefits, Accomplice, Plea | Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.) |
| 34 | | Charts and Summaries Not Admitted Into Evidence | Ninth Circuit Model Criminal Jury Instructions, No. 3.16 (2022 ed.) |
| 35 | | Charts and Summaries Admitted Into Evidence | Ninth Circuit Model Criminal Jury Instructions, No. 3.17 (2022 ed.) |
| 37 | | DISPUTED INSTRUCTION: Conspiracy – Elements | Ninth Circuit Model Jury Instructions, No. 11.1 (2022 ed., revised June 2024) (modified to reflect charges) |
| 40 | | Stalking of T.B. (Count Two)[1] | Sources in respective disputed instructions |
| 42 | | Stalking of S.R. (Count Three) | Sources in respective disputed instructions |
| 43 | | Apprendi finding for Stalking of S.R. | Sources in respective disputed instructions |

[1] As set forth in the parties' jointly proposed jury instructions, the parties propose referring to the count numbering such that trial counts begin as Count One (i.e., Count Two of the FSI).

| Proposed No. | Court No. | Title | Source |
|---|---|---|---|
| 44 | | Aiding and Abetting (18 U.S.C. § 2(a)) | Ninth Circuit Model Criminal Jury Instructions, No. 4.1 (2022 ed., revised Nov. 2024) (modified to reflect stalking charges) |
| 45 | | Aiding and Abetting (18 U.S.C. § 2(b)) | Ninth Circuit Model Criminal Jury Instructions, No. 4.2 (2022 ed., revised June 2025) (modified to reflect stalking charges) |
| 46 | | Conspiracy to commit murder-for-hire (Count Four) | Sources in respective disputed instructions |
| 47 | | _Apprendi_ finding for death of S.R. on conspiracy to commit murder-for-hire | Sources in respective disputed instructions |
| 48 | | Murder-for-hire (Count Five) | Sources in respective disputed instructions |
| 49 | | _Apprendi_ finding for death of S.R. on murder-for-hire | Sources in respective disputed instructions |
| 51 | | Conspiracy—Liability for Substantive Offense Committed by Co-Conspirator (_Pinkerton_ Charge) | Ninth Circuit Model Jury Instructions, No. 11.6 (2022 ed.) |

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 31

**GOVERNMENT PROPOSED INSTRUCTION**

You have heard testimony from [*name of witness*], a witness who pleaded guilty to a crime arising out of the same events for which the defendants are on trial. This guilty plea is not evidence against the defendants, and you may consider it only in determining this witness's believability.

You have also heard testimony that [names of witnesses] received benefits from the government in connection with this case.

For these reasons, in evaluating the testimony of [*name of witness*], you should consider the extent to which or whether his testimony may have been influenced by these factors. In addition, you should examine the testimony of [*name of witness*] with greater caution than that of other witnesses.

Testimony of Witnesses Involving Special Circumstances -- Immunity, Benefits, Accomplice, Plea; Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.)

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 31

**DEFENSE PROPOSED INSTRUCTION**

You have heard testimony from [*name of witness*], a witness who:

[received immunity. That testimony was given in exchange for a promise by the government that [the witness will not be prosecuted] [the testimony will not be used in any case against the witness]];

[received [benefits] [compensation] [favored treatment] from the government in connection with this case];

[[admitted being] [was alleged to be] an accomplice to the crime charged. An accomplice is one who voluntarily and intentionally joins with another person in committing a crime];

[pleaded guilty to a crime arising out of the same events for which the defendant is on trial. This guilty plea is not evidence against the defendant, and you may consider it only in determining this witness's believability].

For these reasons, in evaluating the testimony of [*name of witness*], you should consider the extent to which or whether his testimony may have been influenced by these factors, by the witness's plea agreement with the government, or by any benefit—including the possibility of a reduced sentence—that the witness has

received or hopes to receive in exchange for his cooperation or testimony. In addition, you should examine the testimony of [*name of witness*] with greater caution than that of other witnesses.

Testimony of Witnesses Involving Special Circumstances -- Immunity, Benefits, Accomplice, Plea; Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.)(with modifications in the last paragraph).

**GOVERNMENT POSITION**

Defendant's proposal to include the term "favored treatment" in the third paragraph is unnecessary and cumulative, as the term "benefits" sufficiently encompasses the same concept.

Moreover, defendants' proposed additions in the sixth paragraph are a deviation from the model instruction, and are otherwise unnecessary, repetitive, and confusing. The Ninth Circuit Model Criminal Jury Instruction 3.9. does not contemplate benefits a witness hopes to receive. That fact, instead, is contemplated by the plea agreement that will be discussed at trial and is referenced in the model instruction. The government respectfully requests that the Court use the model instruction.

**DEFENSE POSITION**

Model Rule 3.9 provides for several categories of "special circumstances," each one separate and distinct from one the others, that should each be included when appropriate. The Court should re-evaluate the propriety of each category at the close of evidence, when the cross-examinations of the witnesses will have made clear which instructions are warranted by the facts.

Further, it is an accurate statement of the law that *Giglio*/impeachment encompasses benefits a witness hopes or expects to receive, in addition to what he has been explicitly promised or already provided. *See Browning v. Baker*, 875 F.3d 444, 462-63 (9th Cir. 2017).

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 34

During the trial, certain charts and summaries were shown to you to help explain the evidence in the case. These charts and summaries were not admitted into evidence and will not go into the jury room with you. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Ninth Circuit Model Criminal Jury Instructions, No. 3.16 (2022 ed.) [Charts and Summaries Not Admitted Into Evidence]

**GOVERNMENT POSITION**

As a courtesy to the defense, the government produced a substantial number of exhibits in July 2025, well in advance of trial. Additionally, the government intends to use summary exhibits and demonstratives during trial, and will provide the defense with its summary charts once they are complete.

**DEFENSE POSITION**

It is one week before the trial begins in this matter, and the defense has been provided no summary charts or exhibits. Reviewing the accuracy of summary exhibits can be time-consuming and difficult. The defendants have been preparing for trial with no summary exhibits in mind. Any summary charts or exhibits produced between now and trial should be excluded as late-produced.

COURT'S INSTRUCTION NO. _____

JOINT DISPUTED INSTRUCTION NO. 35

Certain charts and summaries have been admitted into evidence. Charts and summaries are only as good as the underlying supporting material. You should, therefore, give them only such weight as you think the underlying material deserves.

Ninth Circuit Model Criminal Jury Instructions, No. 3.17(2022 ed.) [Charts and Summaries Admitted Into Evidence]

**GOVERNMENT POSITION**

As a courtesy to the defense, the government produced a substantial number of exhibits in July 2025, well in advance of trial. Additionally, the government intends to use summary exhibits and demonstratives during trial, and will provide the defense with its summary charts once they are complete.

**DEFENSE POSITION**

It is one week before the trial begins in this matter, and the defense has been provided no summary charts or exhibits. Reviewing the accuracy of summary exhibits can be time-consuming and difficult. The defendants have been preparing for trial with no summary exhibits in mind. Any summary charts or exhibits produced between now and trial should be excluded as late-produced.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 37

**GOVERNMENT PROPOSED INSTRUCTION**

The defendants are charged in Count One of the indictment with conspiring to commit stalking in violation of Section 371 of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on a date unknown, but no later than on or around November 6, 2020, and continuing to at least in or around August 2023, there was an agreement between two or more persons to commit the crime of stalking, in violation of Section 2261A(2)(A), (B) of Title 18 of the United States Code;

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit the crime of stalking as alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to

prove that the defendant personally did one of the overt acts. You do not need to unanimously agree on the particular overt act that was committed in furtherance of the agreed-upon conspiracy.

Ninth Circuit Model Jury Instructions, No. 11.1 (2022 ed., revised June 2024) [Conspiracy—Elements]

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 37

**DEFENSE PROPOSED INSTRUCTION**

The defendants are charged in Count One of the indictment with conspiring to commit stalking in violation of Section 371 of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on a date unknown, but no later than on or around November 6, 2020, and continuing to at least in or around August 2023, there was an agreement between two or more persons to, in violation of Section 2261A(2)(A), (B) of Title 18 of the United States Code; commit the crime of EITHER (you all must agree on one):

Stalking of T.B., as charged in Count 2;

OR

Stalking of S.R., as charged in Count 3;

Second, the defendant became a member of the conspiracy knowing of its object, and intending that a specific individual be stalked, and intending to help accomplish that object; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

A defendant cannot be found guilty of conspiring to stalk T.B. unless you find, beyond a reasonable doubt, that he possessed the intent:

To kill, injure, harass, or intimidate Tyquian Bowman;

OR

To place under surveillance with intent to kill, injure, harass, or intimidate Tyquian Bowman.

A defendant cannot be found guilty of conspiring to stalk S.R. unless you find, beyond a reasonable doubt, that he possessed the intent:

To kill, injure, harass, or intimidate S.R.;

OR

To place under surveillance with intent to kill, injure, harass, or intimidate S.R.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the

conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit the crime of stalking as alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts. You

do not need to unanimously agree on the particular overt act that was committed in furtherance of the agreed-upon conspiracy.

**GOVERNMENT POSITION**

On the evening of August 12, 2026 and less than one week before trial, defendants raised for the first time their intent to file a motion to dismiss the indictment's 18 U.S.C. § 371 charge under Rule 12 --- a count charged on June 3, 2026. The motion is improper and untimely, and the Court should deny it on that ground. On the merits, the conspiracy count is proper, and the government will respond more fully if and when defendants file their motion.

**DEFENSE POSITION**

The defense objects to the propriety of this instruction altogether. The conspiracy to stalk charged in Count Two of the Fourth Superseding Indictment (referred to as Count One for purposes of this severed trial) is duplicitous, in that it alleges multiple victims in the same count. *See* Dkt. No. 515 (explaining that the government sought a Fourth Superseding Indictment because its substantive stalking charge was duplicitous, given that multiple victims were alleged in the same count); *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012) (holding that the victim is the unit of prosecution under the stalking statute); *United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015) (same). To be guilty of stalking under the statute, a defendant must possess the specific intent either to injure or to cause distress to a particular individual. *Schrader*, 675 F.3d at 313. The Supreme Court has established that to be guilty of a conspiracy, a defendant must possess "at least the degree of criminal intent necessary for the substantive offense itself." *United States v. Feola*, 420 U.S. 671 (1975). *United States v. Collazo*, 982 F.3d 596, 607 (9th Cir. 2020). Therefore, to be guilty of a conspiracy to violate the stalking statute, the defendant must possess the specific intent vis-a-vis a particular individual.

In the alternative, the charge fails to state a claim because it fails to, under the "object of the conspiracy" portion, specify which individual the defendants intended to stalk as part of the

conspiracy.

The defense will be filing a motion to dismiss Count Two of the Fourth Superseding Indictment shortly.

The defense proposes the above alternative instruction without waiving any objection to its propriety in the first place. This instruction clarifies that to be guilty of conspiring to violate the stalking statute, the defendant must possess the specific intent inherent in the stalking statute, either vis-a-vis T.B., or vis-a-vis S.R.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 40

**GOVERNMENT PROPOSED INSTRUCTION**

The defendants are charged in Count Two of the indictment with stalking, in violation of Sections 2261A(2)(A), (B) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant possessed the intent to kill, injure, harass, or intimidate another person;

*or*

First, the defendant placed under surveillance with intent to kill, injure, harass, or intimidate that person;

Second, the defendant pursued that intention through a course of conduct that made use of any facility of interstate or foreign commerce, namely airplanes, cars, cell phones, or the internet; and

Third, defendant's course of conduct placed that person in reasonable fear of death or serious bodily injury;

*or*

Third, defendant's course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person.

The person alleged to be stalked in Count Two is Tyquian Bowman.

An airplane, a car, a cell phone, and the internet are each facilities of interstate commerce or foreign commerce.

A "course of conduct" is a pattern of conduct composed of two or more acts, evidencing a continuity of purpose. You are not required to agree unanimously on which two or more acts constitute the course of conduct. Not all acts that constitute part of a course of conduct must involve the use of a facility of interstate or foreign commerce.

"Substantial emotional distress" means serious and significant mental distress, mental suffering, or mental anguish. It is more than mere annoyance or transient distress.

When considering whether the intended course of conduct "would be reasonably expected to cause" substantial emotional distress to Tyquian Bowman, you must consider whether, in light of the evidence presented in this case, a reasonable person in the same or similar circumstances as the victim would suffer substantial emotional distress as a result of the intended course of conduct, as defined in these instructions.

18 U.S.C. § 2261A(2)(B); 18 U.S.C. § 2266(2) (defining "course of conduct"); United States v. Lipman, 2:23-491-FLA (similar instruction on § 2261A(2)(B) count); United States v. Pantchev, 2:21-CR-50-JFW (similar instruction on § 2261A(2)(B) count); United States v. Osinger, 753 F.3d 939, 945 (9th Cir. 2014) (definition of "substantial emotional distress"); Fifth Circuit Pattern Jury Instruction (Criminal Cases) No. 2.86B (2019 ed.); United States v. Oliver, 60 F.3d 547, 550 (9th Cir. 1995) ("[C]ars are themselves instrumentalities of commerce, which Congress may protect."); Fejes v. Fed. Aviation Admin., 98 F.4th 1156, 1160 (9th Cir. 2024) ("Aircraft are also instrumentalities of interstate commerce."); United States v. Stackhouse, 105 F.4th 1193, 1199 (9th Cir. 2024 (cleaned up) ("Telephones are instrumentalities of interstate commerce . . . [and] [w]e have applied this principle equally to landlines and cellphones."); United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) (cleaned up) ("[A]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce.").

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 40

**DEFENSE PROPOSED INSTRUCTION**

The defendants are charged in Count Two of the indictment with stalking, in violation of Sections 2261A(2)(A), (B) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant possessed the intent to kill, injure, harass, or intimidate Tyquian Bowman;

or

First, the defendant placed under surveillance with intent to kill, injure, harass, or intimidate Tyquian Bowman;

Second, when the defendant possessed that intent, he used the mail, any interactive computer service, any electronic communication service, any electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct; and

Third, defendant's course of conduct placed Tyquian Bowman in reasonable fear of death or serious bodily injury;

or

Third, defendant's course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to Tyquian Bowman.

The government must prove the required intent and the required effect as to Tyquian Bowman. Proof of intent directed toward, or fear or emotional distress experienced by, another person does not by itself establish an element of Count Two.

To satisfy the interstate-commerce element, the government must prove beyond a reasonable doubt that the defendant used the mail, any interactive computer service, any electronic communication service, any electronic communication system of interstate commerce, or another facility of interstate or foreign commerce to engage in the alleged course of conduct. The government is not required to prove that every act constituting the alleged course of conduct involved the use of a facility of interstate or foreign commerce. The government must prove, however, that the defendant's use of the facility was a means of engaging in the alleged course of conduct and that when he used the facility, he possessed the intent described above. Use of a facility unrelated to the alleged course of conduct does not satisfy this requirement.

A "course of conduct" is a pattern of conduct composed of two or more acts, evidencing a continuity of purpose. Each of the acts that you rely upon must have been directed at Tyquian Bowman; conduct or intent directed at any other person is not part of the

course of conduct charged in Count Two. You must unanimously agree on which two or more acts constitute the course of conduct: each of you must agree to the same particular acts. Not all acts that constitute part of a course of conduct must involve the use of a facility of interstate or foreign commerce. In deciding whether the government proved a course of conduct, you must consider the alleged acts as a whole. The government must prove that the alleged course of conduct evidenced a continuity of purpose and was undertaken with the intent required for the count you are considering.

To satisfy the reasonable-fear alternative, the government must prove that the alleged course of conduct placed Tyquian Bowman in fear of death or serious bodily injury. The fear must have been reasonable under the circumstances known to Tyquian Bowman at the time.

“Substantial emotional distress” means serious and significant mental distress, mental suffering, or mental anguish. It is more than mere annoyance or transient distress.

When considering whether the intended course of conduct “would be reasonably expected to cause” substantial emotional distress to Tyquian Bowman, you must consider whether, in light of the evidence presented in this case, a reasonable person in the same or similar circumstances as the victim would suffer substantial emotional distress as a result of the intended course of conduct, as defined in these instructions.

If you find a defendant guilty of Count Two, you will then be asked to determine, as a separate finding, whether the government proved beyond a reasonable doubt that the defendant used a dangerous weapon during the offense.

18 U.S.C. § 2261A(2)(B); 18 U.S.C. § 2266(2) (defining "course of conduct"); United States v. Shrader, 675 F.3d 300, 313 (4th Cir. 2012) (holding that § 2261A(2) "unambiguously makes the victim, rather than the course of conduct, the unit of prosecution"); accord United States v. Conlan, 786 F.3d 380, 387 (5th Cir. 2015) (agreeing that the statute "unambiguously contemplate[s] that the unit of prosecution is the targeted individual, requiring that the defendant act with intent towards a particular 'person,' . . . ."); United States v. Shea, No. 2:20-cr-00032-JCC, ECF No. 248 (W.D. Wash. Sept. 29, 2021) (Final Instruction No. 18, requiring proof that the defendant used a qualifying facility of interstate commerce "to engage in a course of conduct"); United States v. Yung, 37 F.4th 70, 77 (3d Cir. 2022) (holding that "[s]ubstantial" emotional distress must be "fairly large," more than mere annoyance); accord United States v. Jubert, 139 F.4th 484, 494 (5th Cir. 2025) (explaining that the substantial-emotional-distress element "excludes imagined fear, idiosyncratic sensitivities, and emotional overreaction," ensuring that "only serious, foreseeable harm qualifies").

**GOVERNMENT POSITION**

The government's proposed instruction sets forth a clear and concise statement of the law. Defendants' proposed instruction adds an additional page of text that is confusing, unnecessary, and ignore clearly established law that vehicles, airplanes, telephones, and the Internet, are "themselves instrumentalities of commerce." United States v. Oliver, 60 F.3d 547, 550 (9th Cir. 1995) ("[C]ars are themselves instrumentalities of commerce, which Congress may protect."); Fejes v. Fed. Aviation Admin., 98 F.4th 1156, 1160 (9th Cir. 2024) ("Aircraft are also instrumentalities of interstate commerce."); United States v. Stackhouse, 105 F.4th 1193, 1199 (9th Cir. 2024 (cleaned up) ("Telephones are instrumentalities of interstate commerce . . . [and] [w]e have applied this principle equally to landlines and cellphones."); United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) (cleaned up) ("the Internet is an instrumentality and channel of interstate commerce.").

Moreover, defendant's request for a specific unanimity finding on the course of conduct ("You must unanimously agree on which two or more acts constitute the course of conduct: each of you must agree to the same particular acts") is legally inaccurate. Richardson v. United States, 526 U.S. 813, 817 (1999) ("Although jury members must agree on each element of a crime, they need not agree on the underlying brute facts that make up and element" as there is a "crucial distinction" between a fact that is an element of a crime and one that is "but the means" to the commission of an

element); United States v. Ackell, 907 F.3d 67, 70 (1st Cir. 2018) (specific unanimity instruction not required for "course of conduct", as "[n]othing in § 2261A(2)(B)'s text indicates that the acts comprising the "course of conduct" are themselves elements"); United States v. Gonzalez, 905 F.3d 165, 183 (3d Cir. 2018) (same, and explaining that "[t]he focus is not on the individual acts as separate, distinct events, but instead on the purpose and scope of the defendants' pattern of stalking conduct as a whole.").

**DEFENSE POSITION**

The government's two objections are that defendants' instruction is too long and that its unanimity paragraph misstates the law. Neither justifies omitting the count-specific protections required by the statute and by the circumstances of this trial.

Length is not an objection. Section 2261A(2) is victim-specific: the statute requires intent directed at a particular person and an effect produced in that same person. The victim, not the course of conduct, is the unit of prosecution. United States v. Shrader, 675 F.3d 300, 313-14 (4th Cir. 2012); accord United States v. Conlan, 786 F.3d 380, 387 (5th Cir. 2015). The government's instruction states the first and third elements as to "another person" and "that person," then names Tyquian Bowman only in a separate sentence after the elements are given. In a joint trial charging separate stalking counts naming two different victims, where the jury will hear fear-and-distress evidence from people who are neither Bowman nor Robinson, the elements themselves must name the person the count charges. Defendants' additions do only that.

The commerce authorities the government cites do not answer the objection. Oliver, Fejes, Stackhouse, and Sutcliffe hold that cars, aircraft, telephones, and the Internet are instrumentalities of interstate commerce that Congress may regulate. Defendants have never disputed that. The element is not whether such things are instrumentalities in the abstract; it is whether this

defendant used one "to engage in a course of conduct" directed at the named victim. 18 U.S.C. § 2261A(2. An instruction declaring four categories of everyday objects to be facilities, untethered to the course of conduct, invites the jury to treat any use of a phone or an airplane during the charged period as satisfying an element. The cited commerce authorities address Congress's power to regulate those instrumentalities; they do not construe § 2261A(2)'s separate element-level requirement that the facility be used "to engage in a course of conduct." A final instruction given in this Circuit states the requirement in the statute's own terms, *United States v. Shea*, No. 2:20-cr-00032-JCC, ECF No. 248 (W.D. Wash. Sept. 29, 2021), and defendants' paragraph tracks it.

On unanimity, defendants do not contend that § 2261A categorically requires agreement on particular acts, and Richardson, Ackell, and Gonzalez are not to the contrary. Defendants acknowledge the ordinary rule that jurors need not agree on the preliminary factual means by which an element is proved. However, the request rests on this Circuit's case-specific rule: a specific unanimity instruction is required where there is a genuine possibility of jury confusion, or where a conviction may occur as the result of different jurors concluding that the defendant committed different acts. United States v. Ruiz, 710 F.3d 1077, 1081 (9th Cir. 2013); United States v. Payseno, 782 F.2d 832, 836-37 (9th Cir. 1986); United States v. Lapier, 796 F.3d 1090, 1096-97 (9th Cir. 2015).

Three defendants, two victims, and numerous candidate acts by different actors at different times is that circumstance. The requested instruction therefore rests not on a categorical element-versus-means rule, but on the concrete risk that different jurors will treat materially different acts, defendants, victims, and periods as the charged stalking offense.

Finally, the two instructions define "substantial emotional distress" identically, and defendants do not dispute that definition. The asymmetry lies in the other result element. The government's instruction devotes two paragraphs to substantial emotional distress and says nothing whatever about reasonable fear, so a jury proceeding under § 2261A(2)(A) would be given no standard while a jury proceeding under § 2261A(2)(B) would be given two. Defendants' single added sentence supplies the missing one. It does not add a victim-state-of-mind element; it gives effect to Congress's express requirement that the fear be "reasonable." 18 U.S.C. § 2261A. The authorities defendants add on this element — United States v. Yung, 37 F.4th 70, 77 (3d Cir. 2022), and United States v. Jubert, 139 F.4th 484, 494 (5th Cir. 2025) — support the definition both parties propose, not an objection to it.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 42

**GOVERNMENT PROPOSED INSTRUCTION**

The defendants are charged in Count Three of the indictment with stalking, in violation of Sections 2261A(2)(A), (B) and 2261(b)(1) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant possessed the intent to kill, injure, harass, or intimidate another person;

*or*

First, the defendant placed under surveillance with intent to kill, injure, harass, or intimidate that person;

Second, the defendant pursued that intention through a course of conduct that made use of any facility of interstate or foreign commerce, namely airplanes, cars, cell phones, or the internet; and

Third, defendant's course of conduct placed that person in reasonable fear of death or serious bodily injury;

*or*

Third, defendant's course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person.

The person alleged to be stalked in Count Three is Saviay'a Robinson.

An airplane, a car, a cell phone, and the internet are each facilities of interstate commerce or foreign commerce.

A "course of conduct" is a pattern of conduct composed of two or more acts, evidencing a continuity of purpose. You are not required to agree unanimously on which two or more acts constitute the course of conduct. Not all acts that constitute part of a course of conduct must involve the use of a facility of interstate or foreign commerce.

"Substantial emotional distress" means serious and significant mental distress, mental suffering, or mental anguish. It is more than mere annoyance or transient distress.

When considering whether the intended course of conduct "would be reasonably expected to cause" substantial emotional distress to Saviay'a Robinson, you must consider whether, in light of the evidence presented in this case, a reasonable person in the same or similar circumstances as the victim would suffer substantial emotional distress as a result of the intended course of conduct, as defined in these instructions.

18 U.S.C. § 2261A(2)(B); 18 U.S.C. § 2266(2) (defining "course of conduct"); United States v. Lipman, 2:23-491-FLA (similar instruction on § 2261A(2)(B) count); United States v. Pantchev, 2:21-CR-50-JFW (similar instruction on § 2261A(2)(B) count); United States v. Osinger, 753 F.3d 939, 945 (9th Cir. 2014) (definition of "substantial emotional distress"); Fifth Circuit Pattern Jury Instruction (Criminal Cases) No. 2.86B (2019 ed.); United States v. Oliver, 60 F.3d 547, 550 (9th Cir. 1995) ("[C]ars are themselves instrumentalities of commerce, which Congress may protect."); Fejes v. Fed. Aviation Admin., 98 F.4th 1156, 1160 (9th Cir. 2024) ("Aircraft are also instrumentalities of interstate commerce."); United States v. Stackhouse, 105 F.4th 1193, 1199 (9th Cir. 2024 (cleaned up) ("Telephones are instrumentalities of interstate commerce . . . [and] [w]e have applied this principle equally to landlines and cellphones."); United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) (cleaned up) ("[A]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce.").

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 42

**DEFENSE PROPOSED INSTRUCTION**

The defendants are charged in Count Three of the indictment with stalking, in violation of Sections 2261A(2)(A), (B) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant possessed the intent to kill, injure, harass, or intimidate Saviay'a Robinson;

or

First, the defendant placed under surveillance with intent to kill, injure, harass, or intimidate Saviay'a Robinson;

Second, when the defendant possessed that intent, he used the mail, any interactive computer service, any electronic communication service, any electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct; and

Third, defendant’s course of conduct placed Saviay’a Robinson in reasonable fear of death or serious bodily injury;

or

Third, defendant’s course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to Saviay’a Robinson.

The government must prove the required intent and the required effect as to Saviay’a Robinson. Proof of intent directed toward, or fear or emotional distress experienced by, another person does not by itself establish an element of Count Three.

To satisfy the interstate-commerce element, the government must prove beyond a reasonable doubt that the defendant used the mail, any interactive computer service, any electronic communication service, any electronic communication system of interstate commerce, or another facility of interstate or foreign commerce to engage in the alleged course of conduct. The government is not required to prove that every act constituting the alleged course of conduct involved the use of a facility of interstate or foreign commerce. The government must prove, however, that the defendant’s use of the facility was a means of engaging in the alleged course of conduct and that when he used the facility, he possessed the intent

described above. Use of a facility unrelated to the alleged course of conduct does not satisfy this requirement.

A "course of conduct" is a pattern of conduct composed of two or more acts, evidencing a continuity of purpose. Each of the acts that you rely upon must have been directed at Saviay'a Robinson; conduct or intent directed at any other person is not part of the course of conduct charged in Count Three. You must unanimously agree on which two or more acts constitute the course of conduct: each of you must agree to the same particular acts. Not all acts that constitute part of a course of conduct must involve the use of a facility of interstate or foreign commerce. In deciding whether the government proved a course of conduct, you must consider the alleged acts as a whole. The government must prove that the alleged course of conduct evidenced a continuity of purpose and was undertaken with the intent required for the count you are considering.

To satisfy the reasonable-fear alternative, the government must prove that the alleged course of conduct placed Saviay'a Robinson in fear of death or serious bodily injury. The fear must have been reasonable under the circumstances known to Saviay'a Robinson at the time.

"Substantial emotional distress" means serious and significant mental distress, mental suffering, or mental anguish. It is more than mere annoyance or transient distress.

When considering whether the intended course of conduct "would be reasonably expected to cause" substantial emotional distress to Saviay'a Robinson, you must consider whether, in light of the evidence presented in this case, a reasonable person in the same or similar circumstances as the victim would suffer substantial emotional distress as a result of the intended course of conduct, as defined in these instructions.

If you find a defendant guilty of Count Three, you will then be asked to determine, as a separate finding, whether the government proved beyond a reasonable doubt that the death of Saviay'a Robinson resulted from that offense.

18 U.S.C. § 2261A(2)(B); 18 U.S.C. § 2261A(2)(B); 18 U.S.C. § 2266(2) (defining "course of conduct"); United States v. Shrader, 675 F.3d 300, 313 (4th Cir. 2012) (holding that § 2261A(2) "unambiguously makes the victim, rather than the course of conduct, the unit of prosecution"); accord United States v. Conlan, 786 F.3d 380, 387 (5th Cir. 2015) (agreeing that the statute "unambiguously contemplate[s] that the unit of prosecution is the targeted

individual, requiring that the defendant act with intent towards a particular 'person,' . . . ."); United States v. Shea, No. 2:20-cr-00032-JCC, ECF No. 248 (W.D. Wash. Sept. 29, 2021) (Final Instruction No. 18, requiring proof that the defendant used a qualifying facility of interstate commerce "to engage in a course of conduct"); United States v. Yung, 37 F.4th 70, 77 (3d Cir. 2022) (holding that "[s]ubstantial" emotional distress must be "fairly large," more than mere annoyance); accord United States v. Jubert, 139 F.4th 484, 494 (5th Cir. 2025) (explaining that the substantial-emotional-distress element "excludes imagined fear, idiosyncratic sensitivities, and emotional overreaction," ensuring that "only serious, foreseeable harm qualifies").

**GOVERNMENT POSITION**

The government's proposed instruction is identical to the proposed stalking instruction above for Count Two, and thus the government incorporates that reasoning again here.

**DEFENSE POSITION**

Defendants incorporate their position on Disputed Instruction No. 40. One point is specific to Count Three, and it is the reason the victim-specific language cannot be treated as surplusage here.

The government's disclosed theory and proffered evidence identify the object of the charged agreement as Tyquian Bowman. Saviay'a Robinson is alleged in Count Three to have been stalked and to have died. Those are distinct propositions. Section § 2261A(2) requires proof of the former before § 2261(b)(1)'s death-result enhancement may apply. The resulting-death allegation may elevate the penalty for a stalking offense proved as to Robinson; it cannot supply the predicate § 2261A intent, course of conduct, or statutory effect as to Robinson.

The statute requires that the defendant act "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person," and that the course of conduct produce the statutory effect in the person identified by the charged statutory theory. The victim is the unit of prosecution, and it is an element that the defendant intended harm to a particular victim. Shrader, 675 F.3d at 313-14; Conlan, 786 F.3d at 387. Count Three names Saviay'a Robinson. The government must therefore prove intent directed at Saviay'a Robinson and an effect experienced by Saviay'a Robinson under the theory alleged in Count Three.

The government's instruction does not say so. It states the first element as to "another person" and the third as to "that person," and then adds, after the elements, that "[t]he person alleged to be stalked in Count Three is Saviay'a Robinson." Read as a whole by a jury that has just been given a materially identical instruction naming Tyquian Bowman, that construction creates a concrete risk of a  verdict on Count Three resting on intent directed at Bowman and fear or distress experienced by Bowman. That is not the offense Count Three charges.

The point is not academic in this trial. The evidence the government has described places the intent, the surveillance, and the pursuit on Bowman throughout. If the jury may satisfy Count Three's intent element with intent as to Bowman, then Count Three adds nothing to Count Two except a second conviction and, through Disputed Instruction No. 43, an exposure of life imprisonment. The instruction should require the jury to find what the statute requires.

Defendants' proposed instruction states each element as to Saviay'a Robinson and adds one sentence making the limitation explicit: proof of intent directed toward, or fear or emotional distress experienced by, another person does not by itself establish an element of Count Three. That sentence is a correct statement of § 2261A(2) and is necessary here in a way it would not be in a single-victim case.

The government's response to Instruction No. 42 is a single sentence incorporating its position on No. 40. It does not address victim-specificity at all.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 43

**GOVERNMENT PROPOSED INSTRUCTION**

If you find the defendant guilty of stalking Saviay'a Robinson as charged in Count Three of the indictment, you are then to determine whether the government proved beyond a reasonable doubt that the death of Saviay'a Robinson resulted from the offense.

Whether the death of Saviay'a Robinson "resulted from" the stalking charged in Count Three means that the stalking was the cause in fact of his death. That is, the government must prove beyond a reasonable doubt that but for the stalking as charged in Count Three, Saviay'a Robinson would not have died.

Burrage v. United States, 571 U.S. 204, 214, 218-19 term "results from" imposes a requirement of actual causality, which requires proof that the harm was a but-for cause); United States v. Houston, 406 F.3d 1121, 1124-5 (9th Cir. 2005) ("The plain language of § 841(b)(1)(C) demonstrates that proximate cause is not a required element. Congress specified that the heightened sentence would apply "if death ... results" from the distribution of a controlled substance. This passive language unambiguously eliminates any statutory requirement that the death have been foreseeable").

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 43

**DEFENSE PROPOSED INSTRUCTION**

If you find the defendant guilty of stalking Saviay'a Robinson as charged in Count Three of the indictment, you are then to determine whether the government proved beyond a reasonable doubt that the death of Saviay'a Robinson resulted from the offense.

The death of Saviay'a Robinson "resulted from" the offense only if the government proves beyond a reasonable doubt both of the following: first, that but for the defendant's course of conduct directed at Saviay'a Robinson, Saviay'a Robinson would not have died; and second, that Saviay'a Robinson's death was a direct and foreseeable result of that course of conduct.

It is not enough that Saviay'a Robinson's death was connected to, or occurred around the same time as, the events described in the evidence. If you do not unanimously find that the government has proved both of these things beyond a reasonable doubt, you must answer "No" to the special question on the verdict form.

18 U.S.C. § 2261(b)(1); <u>Burrage v. United States</u>, 571 U.S. 204, 211 (2014) (holding that "results from" "imposes . . . a requirement of actual causality" and that this "requires proof 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct") <u>accord United States v. Gonzalez</u>, 905 F.3d 165, 189 (3d Cir. 2018) (holding that a defendant convicted under

the § 2261(b)(1) death-results enhancement "generally may not be convicted unless his conduct is 'both (1) the actual cause, and (2) the "legal" cause (often called the "proximate cause") of the result,'" and that proximate cause "forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence is more akin to mere fortuity").

**GOVERNMENT POSITION**

Defendants' proposed instruction contains an inaccurate statement of the law by (1) including a foreseeability requirement, and (2) limiting the jury's inquiry to a single defendant's conduct ("Saviay'a Robinson 'resulted from' the offense only if … the defendant's course of conduct directed at Saviay'a Robinson" caused the death). The government's proposed instruction is clear and fully requires the government to meet its burden under the law.

Under 18 U.S.C. § 2261(b)(1), the statutory maximum is "life or any term of years" "if death of the victim results." In United States v. Houston, 406 F.3d 1121, (9th Cir. 2005), the Ninth Circuit address similar language and found, "[t]he plain language of § 841(b)(1)(C) demonstrates that proximate cause is not a required element." Id. at 1124-25. Rather, "Congress specified that the heightened sentence would apply 'if death ... results' from the distribution of a controlled substance. This passive language unambiguously eliminates any statutory requirement that the death have been foreseeable". Id. The similar language contained in Section 2261(b)(1) justifies a similar obstruction here.

If the Court is inclined to include a foreseeability requirement in light of the out-of-circuit case cited by defendants (United States v. Gonzalez, 905 F.3d 165, 189 (3d Cir. 2018)), the government requests that the Court give the following instruction:

"Whether the death of Saviay'a Robinson "resulted from" the stalking charged in Count Three means that the stalking was the

cause in fact of his death, and that his death was a reasonably foreseeable consequence of the stalking. To prove that the stalking was the cause in fact of his death, the government must prove beyond a reasonable doubt that but for the stalking as charged in Count Three, Saviay'a Robinson would not have died."

Defendants' proposed instruction is also misleading, as it requires the jury to find that the victim's death resulted as a "direct and foreseeable" result from an individual defendant's course of conduct, rather than the stalking conduct of all co-conspirators. Even defendant's own case law does not support their instructions, as the district court in Gonzalez instructed the jury using language that the "death was a reasonably foreseeable result" and "natural consequence" of "the particular offense." Gonzalez, 905 F.3d at 190.

**DEFENSE POSITION**

The parties agree that the Government must prove but-for causation. Burrage v. United States, 571 U.S. 204, 210-11 (2014). The remaining dispute is whether § 2261(b)(1) also requires the Government to prove that death was a direct and foreseeable result of the offense. It does.

The Government relies on United States v. Houston, 406 F.3d 1121 (9th Cir. 2005), but Houston construed the death-result provision of 21 U.S.C. § 841(b)(1)(C), a drug-distribution statute. It does not construe § 2261(b)(1), which applies when "death of the victim results" from the victim-specific stalking offense charged under § 2261A. 18 U.S.C. § 2261. . "[A] basic tenet of criminal law is that, when a criminal statute requires that the defendant's conduct has resulted in an injury, the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury. . ." *United States v. Rodriguez*, 766 F.3d 970, 980 (9th Cir. 2014) (citation and internal quotation marks omitted).")Section 2261(b)(1) has not been construed by the Ninth Circuit. It makes a life maximum available "if death of the victim results" from a victim-specific stalking offense under § 2261A. 18 U.S.C. § 2261 Nothing in the text displaces the ordinary requirement that the death be a direct and foreseeable result of the offense. Defendants therefore request an instruction requiring both but-for causation and proximate causation.

The government objects that defendants improperly limit the inquiry “to a single defendant's conduct.” Defendants do not contend the government is barred from reaching this finding through a recognized theory of vicarious liability. They ask only that the jury be told whose finding it is making. Nothing in defendants’ proposed instruction precludes the Government from proving that a defendant is legally responsible for the charged stalking through a properly instructed theory of aiding and abetting, willful causation, or co-conspirator liability. The point is instead that the special finding increases the statutory maximum as to an individual defendant, and the jury must therefore make that finding as to the defendant against whom the enhanced maximum is sought.

The Government’s response itself recognizes that a defendant-specific finding can be made even where liability rests on another person’s conduct.The instruction approved in Gonzalez phrased the death finding as to the defendant, asking whether the death was attributable to that defendant under the governing conspiracy-liability principles.. United States v. Gonzalez, 905 F.3d 165, 190 (3d Cir. 2018). Defendants cite Gonzalez not for its causation standard, which arises outside this Circuit, to show that a death finding can be put to a jury defendant by defendant. The government's instruction asks only whether “the stalking” caused the death, and its alternative language does not cure this — offered only “[i]f the Court is inclined to include a foreseeability

requirement," it again asks whether "the stalking was the cause in fact." Neither formulation identifies the defendant as to whom the jury is making the finding, the stalking offense for which that defendant is legally responsible, or the charged victim-specific offense from which the alleged death resulted. If the Court is inclined to give it, defendants ask that it identify the defendant against whom the finding is made. That requirement does not demand proof that the defendant personally inflicted the fatal injury. It requires a defendant-specific finding as to whether the charged stalking offense for which that defendant is legally responsible caused Robinson's death.

Defendants request three additions the government omits: that mere connection in time to the events in evidence is not enough; that a finding not reached unanimously and beyond a reasonable doubt requires answering "No" on the special question; and that the finding follow from the stalking of Saviay'a Robinson charged in Count Three, rather than from conduct directed at a different person. Section 2261A makes the targeted victim — not an undifferentiated course of conduct — the unit of prosecution.. United States v. Shrader, 675 F.3d 300, 313-14 (4th Cir. 2012).

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 44

A defendant may be found guilty of stalking Tyquian Bowman or Saviay'a Robinson, as alleged in Counts Two and Three, respectively, even if the defendant personally did not commit the act or acts constituting the crime or crimes but aided and abetted in its or their commission.

To "aid and abet" means intentionally to help someone else commit a crime. To prove a defendant guilty of the crime or crimes charged in Count Two and Count Three, by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

First, someone else committed the crime or crimes of stalking Tyquian Bowman or stalking Saviay'a Robinson;

Second, the defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of the crime or crimes;

Third, the defendant acted with the intent to facilitate the crime or crimes; and

Fourth, the defendant acted before the crime or crimes were completed.

It is not enough that the defendant merely associated with the person committing the crime or crimes, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime or crimes. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the crime or crimes.

A defendant acts with the intent to facilitate the crime or crimes when the defendant actively participates in a criminal venture with advance knowledge of the crime or crimes and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime or crimes. The advance knowledge required is knowledge of the specific crime charged in the count you are considering—for Count Two, the stalking of Tyquian Bowman; for Count Three, the stalking of Saviay'a Robinson. Advance knowledge of some other crime, or of conduct directed at some other person, is not sufficient.

The government is not required to prove precisely which defendant actually committed the crime or crimes and which defendant aided and abetted.

Ninth Circuit Model Criminal Jury Instructions, No. 4.1 (2022 ed., revised Nov. 2024) [Aiding and Abetting (18 U.S.C. § 2(a))]

**GOVERNMENT POSITION**

Defendants' proposal to split the Aiding and Abetting (18 U.S.C. § 2(a)) instruction for Counts Two (Bowman) and Three (Robinson) is cumulative and unnecessary, as the legal concept and instruction is identical for both substantive counts.

**DEFENSE PROPOSED INSTRUCTION**

The defense proposes adding the following language to each separate aiding and abetting instruction:

In order to find a defendant guilty of aiding and abetting the stalking of [T.B./S.R.] you must find that the defendant possessed the following intent:

[for Count Two]

the intent to kill, injure, harass, or intimidate T.B.;

OR

The intent to place under surveillance with intent to kill, injure, harass, or intimidate T.B;

[for Count Three]

the intent to kill, injure, harass, or intimidate S.R.;

OR

The intent to place under surveillance with intent to kill, injure, harass, or intimidate S.R.

**DEFENSE POSITION**

The defense proposes that Count Two (the stalking of T.B.) should receive one aiding and abetting instruction, and Count Three (the stalking of S.R.) should receive a separate instruction, identical except for the name of the victim. The Government's assertion that separate instructions are cumulative overlooks that the underlying substantive offense—and its required victim-specific intent—differs by count.

A jury instruction undermines the constitutional and statutory requirement of a unanimous verdict when it is sufficiently ambiguous to permit different jurors to convict a defendant based on a different set of facts or distinct criminal acts, rather than agreeing on the elements of the charged offense. *See United States v. Echeverry*, 698 F.2d 375, 376-77 (9th Cir. 1983). Unanimity is guaranteed by the Sixth Amendment and by Federal Rule of Criminal Procedure 31(a). As the government drafts this instruction, some jurors could be convinced that a defendant willfully caused conduct constituting an indispensable element of the stalking of T.B., and some could find that he willfully caused conduct constituting an indispensable element of of S.R., and they could unanimously find that he is liable under § 2(b).

Further,

Section 2(b) is distinct from aiding and abetting under § 2(a). A defendant may be liable under § 2(b) if he knowingly and willfully puts in motion or causes the commission of an indispensable element

of an offense, including through an innocent agent or instrumentality. United States v. Ubaldo, 859 F.3d 690 (9th Cir. 2017) But § 2(b) does not dispense with the Government's obligation to prove the elements of the particular substantive offense charged. Thus, the Government must tie its alleged willful-causation theory to stalking with the intent required by § 2261A as to T.B. on Count Two and as to S.R. on Count Three. 18 U.S.C. § 2261A

The requested instructions serve that limited but necessary function. They require the jury to determine, count by count, whether the defendant possessed the requisite intent toward the victim named in that count and whether he willfully caused conduct constituting an indispensable element of that particular offense. The Government's combined formulation is not merely repetitive; it risks treating the two victim-specific stalking offenses as interchangeable.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 45

A defendant may be found guilty of the crime or crimes of stalking Tyquian Bowman, as alleged in Count Two, or stalking Saviay'a Robinson, as alleged in Count Three, even if the defendant did not personally commit the acts constituting the crime or crimes if the defendant willfully caused an act to be done that if directly performed by him would be an offense against the United States. A defendant who puts in motion or causes the commission of an indispensable element of the offense may be found guilty as if he had committed this element himself.

Ninth Circuit Model Criminal Jury Instructions, No. 4.2 (2022 ed., revised June 2025) [Aiding and Abetting (18 U.S.C. § 2(b))]

**GOVERNMENT POSITION**

Defendants' proposal to split the Aiding and Abetting (18 U.S.C. § 2(b)) instruction for Counts Two (Bowman) and Three (Robinson) is cumulative and unnecessary, as the legal concept and instruction is identical for both substantive counts.

**DEFENSE PROPOSED ADDITION**

The defense proposes adding the following language to each separate aiding and abetting instruction:

In order to find a defendant guilty of aiding and abetting the stalking of [T.B./S.R.] you must find that the defendant possessed the following intent:

[for Count Two]

the intent to kill, injure, harass, or intimidate T.B.;

OR

The intent to place under surveillance with intent to kill, injure, harass, or intimidate T.B;

AND

The intent to facilitate the stalking of T.B. by another.

[for Count Three]

the intent to kill, injure, harass, or intimidate S.R.;

OR

The intent to place under surveillance with intent to kill, injure, harass, or intimidate S.R.

AND

The intent to facilitate the stalking of S.R. by another.

**DEFENSE POSITION**

The defense relies upon the identical position as set forth above.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 46

**GOVERNMENT PROPOSED INSTRUCTION**

The defendants are charged in Count Four of the indictment with conspiring to use interstate commerce facilities in the commission of a murder-for-hire in violation of Section 1958(a) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant conspired to use any facility of interstate or foreign commerce, namely airplanes, cars, cell phones, or the internet;

Second, the defendant did so with the intent that murder be committed; and

Third, the defendant intended that the murder be committed in exchange for anything of pecuniary value, namely money or other economic benefits, such as lucrative music opportunities with OTF or placement in defendant DURK BANKS' and OTF's music videos.

A "facility in interstate or foreign commerce" includes means of transportation and communication. An airplane, a car, a cell

phone, and the internet are each facilities of interstate commerce or foreign commerce.

As to the third element, the term "pecuniary value" broadly applies to currency, drugs, weapons, or anything else that has a quantifiable monetary value. Money to cover incidental expenses rather than as compensation for carrying out the murder-for-hire does not meet the statute's "pecuniary value" requirement.

Ninth Circuit Model Jury Instructions, No. 16.7 (2022 ed., revised Mar. 2023) [Murder for Hire]; 18 U.S.C. § 1958(b)(2); United States v. Phillips, 929 F.3d 1120, 1124 (9th Cir. 2019); United States v. Oliver, 60 F.3d 547, 550 (9th Cir. 1995) ("[C]ars are themselves instrumentalities of commerce, which Congress may protect."); Fejes v. Fed. Aviation Admin., 98 F.4th 1156, 1160 (9th Cir. 2024) ("Aircraft are also instrumentalities of interstate commerce."); United States v. Stackhouse, 105 F.4th 1193, 1199 (9th Cir. 2024 (cleaned up) ("Telephones are instrumentalities of interstate commerce . . . [and] [w]e have applied this principle equally to landlines and cellphones."); United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) (cleaned up) ("[A]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce.").

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 46

**DEFENSE PROPOSED INSTRUCTION**

The defendants are charged in Count Four of the indictment with conspiring to use interstate commerce facilities in the commission of a murder-for-hire in violation of Section 1958(a) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant conspired to use any facility of interstate or foreign commerce;

Second, the defendant did so with the intent that murder be committed; and

Third, the defendant intended that the murder be committed in exchange for anything of pecuniary value that was either given or expressly promised.

The murder must have been intended as consideration for the payment or express promise of something of pecuniary value — that is, as one side of an agreed exchange. A benefit that a person merely hoped or expected to receive, without an agreement to exchange it for the murder, is not sufficient.

A “facility in interstate or foreign commerce” includes means of transportation and communication.

To “conspire” means to agree. For this Count, the government must prove that there was an agreement between two or more persons to commit murder-for-hire as defined in this instruction, and that the defendant you are considering became a member of that agreement knowing of its object and intending to help accomplish it.

As to the third element, the term “pecuniary value” means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage.

Money to cover incidental expenses rather than as compensation for carrying out the murder-for-hire does not meet the statute's "pecuniary value" requirement.

**GOVERNMENT POSITION**

The government objects to two paragraphs in defendants' proposed instruction: (i) paragraph 5 ("The murder must have been intended . . "); and (ii) paragraph 7 ("To 'conspire' means to agree). Paragraph 5 is unnecessary and cumulative, as it is repetitive of the third element of the crime. Paragraph 7 is unnecessary and cumulative to the model instructions on conspiracy, which the parties agree should be given to the jury.

Additionally, the government objects to removing the specific economic benefits charged in the FSI (money and lucrative music opportunities with OTF or placement in defendant DURK BANKS' and OTF's music videos), which provides the jury with legally accurate and non-prejudicial information that the government is required to prove, and which is contained in the indictment.

**DEFENSE POSITION**

The defendants' proposed instructions are correct statements of the law. *United States v. Chong*, 419 F.3d 1076, 1081 (9th Cir. 2005)("[T]he government must further prove that [defendant] gave or promised something of pecuniary value in exchange for seeking [victim's] murder.); *United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993)("The intent to pay someone to commit murder is . . . a critical element of 'murder-for-hire.'"). *Chong*, 419 F. 3d at 1083 ("Money to cover incidental expenses rather than as compensation for carrying out the murder-for-hire does not meet the statute's 'pecuniary value' requirement."); *Ritter*, 989 F.2d at 321-22 (same).

The government includes a list of specific instrumentalities of interstate commerce. It is for the jury to determine which methods were used in furtherance of the charged.

The government also includes a list of the alleged specific economic benefits contained in the indictment. It is for the jury to decide whether those items (music opportunities, placement in OTF music videos) meet the statutory definition of items of "pecuniary value." Including them in the instruction implies that they are, as a matter of law, items of pecuniary value. It thus invades the province of the jury to decide an essential element of the offense. It is the finder of fact who should decide whether these alleged means satisfy the element, not the Court, as the government's proposed instruction would suggest. In addition, including them in the jury instruction is unnecessary, as they are a means of meeting

an element, not an element itself. And finally, including the items turns the jury instruction into a piece of advocacy for the government.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 47

**GOVERNMENT PROPOSED INSTRUCTION**

If you find the defendant guilty of conspiring to use interstate commerce facilities in the commission of a murder-for-hire as charged in Count Four of the indictment, you are then to determine whether the government proved beyond a reasonable doubt that S.R. died as a result of the offense.

Whether Saviay'a Robinson died as a result of the offense charged in Count Four means that the conspiracy was the cause in fact of his death. That is, the government must prove beyond a reasonable doubt that but for the defendants' conspiracy as charged in Count Four, Saviay'a Robinson would not have died.

Burrage v. United States, 571 U.S. 204, 214, 218-19 (term "results from" imposes a requirement of actual causality, which requires proof that the harm was a but-for cause); United States v. Houston, 406 F.3d 1121, 1124-5 (9th Cir. 2005) ("The plain language of § 841(b)(1)(C) demonstrates that proximate cause is not a required element. Congress specified that the heightened sentence would apply "if death ... results" from the distribution of a controlled substance. This passive language unambiguously eliminates any statutory requirement that the death have been foreseeable").

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 47

**DEFENSE PROPOSED INSTRUCTION**

If you find the defendant guilty of conspiring to use interstate commerce facilities in the commission of a murder-for-hire as charged in Count Four of the indictment, you are then to determine whether the government proved beyond a reasonable doubt that Saviay'a Robinson died as a result of that offense.

Saviay'a Robinson "died as a result of" that offense only if the government proves beyond a reasonable doubt both of the following: first, that but for the offense charged in Count Four, Saviay'a Robinson would not have died; and second, that his death was a direct and foreseeable result of that offense.

It is not enough that Saviay'a Robinson's death was connected to, or occurred around the same time as, the events described in the evidence.

You must make this determination separately as to each defendant, and your determination as to each defendant must be unanimous. If you do not unanimously find, as to a particular defendant, that the government has proved both of these things beyond a reasonable doubt, you must answer "No" as to that defendant on the special question on the verdict form.

18 U.S.C. § 1958(a); Burrage v. United States, 571 U.S. 204, 211 (2014) (holding that "results from" "imposes . . . a requirement of

actual causality" and that this "requires proof 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct") accord United States v. Gonzalez, 905 F.3d 165, 189 (3d Cir. 2018) (holding that a defendant convicted under the § 2261(b)(1) death-results enhancement "generally may not be convicted unless his conduct is 'both (1) the actual cause, and (2) the "legal" cause (often called the "proximate cause") of the result,'" and that proximate cause "forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence is more akin to mere fortuity").

**GOVERNMENT POSITION**

The government objects to the inclusion of the foreseeability requirement, and incorporates its reasoning and, in the alternative, proposed language, from its position on Disputed Instruction 43.

**DEFENSE POSITION**

Defendants incorporate their position on Disputed Instruction No. 43, as the government incorporates its own.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 48

**GOVERNMENT PROPOSED INSTRUCTION**

The defendants are charged in Count Five of the indictment with using interstate commerce facilities in the commission of a murder-for-hire in violation of Section 1958(a) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant used any facility of interstate or foreign commerce, namely airplanes, cars, cell phones, or the internet;

Second, the defendant did so with the intent that murder be committed; and

Third, the defendant intended that the murder be committed in exchange for anything of pecuniary value, namely money or other economic benefits, such as lucrative music opportunities with OTF or placement in defendant DURK BANKS' and OTF's music videos.

A "facility in interstate or foreign commerce" includes means of transportation and communication. An airplane, a car, a cell phone, and the internet are each facilities of interstate commerce or foreign commerce.

As to the third element, the term "pecuniary value" broadly applies to currency, drugs, weapons, or anything else that has a quantifiable monetary value. Money to cover incidental expenses rather than as compensation for carrying out the murder-for-hire does not meet the statute's "pecuniary value" requirement.

Ninth Circuit Model Jury Instructions, No. 16.7 (2022 ed., revised Mar. 2023) [Murder for Hire]; 18 U.S.C. § 1958(b)(2); United States v. Phillips, 929 F.3d 1120, 1124 (9th Cir. 2019); United States v. Oliver, 60 F.3d 547, 550 (9th Cir. 1995) ("[C]ars are themselves instrumentalities of commerce, which Congress may protect."); Fejes v. Fed. Aviation Admin., 98 F.4th 1156, 1160 (9th Cir. 2024) ("Aircraft are also instrumentalities of interstate commerce."); United States v. Stackhouse, 105 F.4th 1193, 1199 (9th Cir. 2024 (cleaned up) ("Telephones are instrumentalities of interstate commerce . . . [and] [w]e have applied this principle equally to landlines and cellphones."); United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) (cleaned up) ("[A]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce.").

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 48

**DEFENSE PROPOSED INSTRUCTION**

The defendants are charged in Count Five of the indictment with using interstate commerce facilities in the commission of a murder-for-hire in violation of Section 1958(a) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant used or caused another to use any facility of interstate or foreign commerce;

Second, the defendant did so with the intent that murder be committed;

Third, the defendant intended that the murder be committed in exchange for anything of pecuniary value that was either given or expressly promised.

The murder must have been intended as consideration for the payment or express promise of something of pecuniary value — that is, as one side of an agreed exchange. A benefit that a person merely hoped or expected to receive, without an agreement to exchange it for the murder, is not sufficient.

A “facility in interstate or foreign commerce” includes means of transportation and communication.

As to the third element, the term “pecuniary value” means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage.

Money to cover incidental expenses rather than as compensation for carrying out the murder-for-hire does not meet the statute's "pecuniary value" requirement.

**GOVERNMENT POSITION**

The government objects to the same language as described in its position on Disputed Instruction 46, and incorporates its reasoning.

**DEFENSE POSITION**

The defense incorporates the rationale spelled out with respect to disputed instruction number 46.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 49

**GOVERNMENT PROPOSED INSTRUCTION**

If you find the defendant guilty of using interstate commerce facilities in the commission of a murder-for-hire as charged in Count Five of the indictment, you are then to determine whether the government proved beyond a reasonable doubt that S.R. died as a result of the offense.

Whether Saviay'a Robinson died as a result of the offense charged in Count Five means that the offense was the cause in fact of his death. That is, the government must prove beyond a reasonable doubt that but for the defendants' conduct as charged in Count Five, Saviay'a Robinson would not have died.

Burrage v. United States, 571 U.S. 204, 214, 218-19 term "results from" imposes a requirement of actual causality, which requires proof that the harm was a but-for cause); United States v. Houston, 406 F.3d 1121, 1124-5 (9th Cir. 2005) ("The plain language of § 841(b)(1)(C) demonstrates that proximate cause is not a required element. Congress specified that the heightened sentence would apply "if death ... results" from the distribution of a controlled substance. This passive language unambiguously eliminates any statutory requirement that the death have been foreseeable").

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 49

**DEFENSE PROPOSED INSTRUCTION**

If you find the defendant guilty of using interstate commerce facilities in the commission of a murder-for-hire as charged in Count Five of the indictment, you are then to determine whether the government proved beyond a reasonable doubt that Saviay'a Robinson died as a result of that offense.

Saviay'a Robinson "died as a result of" that offense only if the government proves beyond a reasonable doubt both of the following: first, that but for the offense charged in Count Five, Saviay'a Robinson would not have died; and second, that his death was a direct and foreseeable result of that offense.

It is not enough that Saviay'a Robinson's death was connected to, or occurred around the same time as, the events described in the evidence.

You must make this determination separately as to each defendant, and your determination as to each defendant must be unanimous. If you do not unanimously find, as to a particular defendant, that the government has proved both of these things beyond a reasonable doubt, you must answer "No" as to that defendant on the special question on the verdict form.

18 U.S.C. § 1958(a); Burrage v. United States, 571 U.S. 204, 211 (2014) (holding that "results from" "imposes . . . a requirement of

actual causality" and that this "requires proof 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct") accord United States v. Gonzalez, 905 F.3d 165, 189 (3d Cir. 2018) (holding that a defendant convicted under the § 2261(b)(1) death-results enhancement "generally may not be convicted unless his conduct is 'both (1) the actual cause, and (2) the "legal" cause (often called the "proximate cause") of the result,'" and that proximate cause "forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence is more akin to mere fortuity").

**GOVERNMENT POSITION**

The government objects to the inclusion of the foreseeability requirement, and incorporates its reasoning and, in the alternative, proposed language, from its position on Disputed Instruction 43. Additionally, the government notes that defendants' objection to the inclusion of the term "conspiracy" in the instruction is moot, as the term was inadvertently included in the proposed instruction and has since been removed. The current proposed instruction accurately reflects the Apprendi finding for a substantive murder for hire charge.

**DEFENSE POSITION**

Defendants incorporate their positions on Disputed Instructions Nos. 43 and 47. One point is specific to this instruction, and it appears on the face of the government's own proposal.

The government's proposed Instruction No. 49 accompanies the substantive murder-for-hire count. Its causation paragraph nevertheless asks the jury to determine whether "the conspiracy was the cause in fact of his death," and whether "but for the defendants' conspiracy … Saviay'a Robinson would not have died." The substantive count charges no conspiracy. That sentence is identical, word for word, to the one in the government's proposed Instruction No. 47, which accompanies the conspiracy count. Compounding the confusion, both instructions label their count "Count Five" — No. 47 apparently using the numbering of the operative indictment and No. 49 the renumbering used in the instructions — so the same count number is attached to two different offenses in adjacent instructions, with the same causal sentence under each.

The consequence is not stylistic. As drafted, the instruction permits the jury to attach a life-exposure finding on the substantive count by finding that the conspiracy caused the death — without ever deciding that the offense charged in Count Five, committed by the defendant against whom the finding is entered, caused anything. That compounds the defect identified in Instruction No. 43 rather than repeating it: there the subject of the causal

finding was the offense rather than the defendant; here it is a different count altogether.

Because the finding raises the maximum from ten years to life under 18 U.S.C. § 1958(a), it is an element governed by Apprendi and Alleyne, and the jury must be told both whose conduct and which offense it is evaluating.

Defendants therefore request that Instruction No. 49 be conformed to the count it accompanies. The jury should be asked whether the offense charged in that count was the cause in fact of the death; it should be told what cause in fact means, as both parties' instructions already do; and the finding should be made as to each defendant separately. Defendants also request the unanimity direction described in their position on Instruction No. 43, and preserve — without pressing — their objection to the omission of foreseeability.

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 51

**GOVERNMENT PROPOSED INSTRUCTION**

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find the defendant guilty of stalking Tyquian Bowman, as alleged in Count Two, stalking Saviay'a Robinson, as alleged in Count Three, or using interstate commerce facilities in the commission of a murder-for-hire resulting in death, as alleged in Count Five, if the government has proved each of the following elements beyond a reasonable doubt:

First, a person named in Counts Two, Three, or Five of the indictment committed the crime or crimes of stalking Tyquian Bowman (Count Two), stalking Saviay'a Robinson (Count Three), or using interstate commerce facilities in the commission of a murder-for-hire (Count Five) as alleged in those counts, respectively;

Second, the person was a member of the conspiracy charged in Count One of the indictment;

Third, the person committed the crime or crimes alleged in Count Two, Count Three, or Count Five in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offense charged in Count Two, Count Three, or Count Five was committed; and

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

Ninth Circuit Model Criminal Jury Instructions, No. 11.6 (2022 ed.) [Conspiracy—Liability for Substantive Offense Committed by Co-Conspirator] (modified to reflect multiple charges)

COURT'S INSTRUCTION NO. _____

DISPUTED INSTRUCTION NO. 51

**DEFENSE PROPOSED INSTRUCTION**

[Defendants OBJECT to this instruction in its entirety. The edits below are offered IN THE ALTERNATIVE and WITHOUT WAIVER of that objection, in the event the Court decides to give the instruction.]

The defense suggests the following language be added to the above instruction:

However, even if you find all of the above, a defendant cannot be held responsible for the crimes of other conspirators unless he has the intent necessary to commit that crime.

In other words, to find a defendant liable for the actions of others in committing the crime charged in Count Two (stalking of T.B.), you must find that the defendant possessed the following intent:

the intent to kill, injure, harass, or intimidate T.B.;

OR

The intent to place under surveillance with intent to kill, injure, harass, or intimidate T.B;

To find a defendant liable for the actions of others in committing the crime charged in Count Three (stalking of S.R.), you must find that the defendant possessed the following intent:

the intent to kill, injure, harass, or intimidate Saviay'a Robinson;

OR

The intent to place under surveillance with intent to kill, injure, harass, or intimidate Saviay'a Robinson;

To find a defendant liable for the actions of others in committing the crime charged in Count Five (murder-for-hire), you must find that the defendant possessed the intent that the murder be committed in exchange for anything of pecuniary value that was either given or expressly promised.

**GOVERNMENT POSITION**

Defendants' objection to instructing the jury on black letter conspiracy law and Pinkerton liability is without merit. See, e.g., United States v. Matta-Ballesteros, 71 F.3d 754, 772 (9th Cir. 1995), opinion amended on denial of reh'g, 98 F.3d 1100 (9th Cir. 1996) ("Matta-Ballesteros's contention that he would be subject to a lesser sentence if the jury convicted him of conspiracy under 18 U.S.C. § 371 ignores the holding in Pinkerton, 328 U.S. at 646-47, 66 S.Ct. at 1183-84, which makes conspirators liable for every substantive offense committed in furtherance of the conspiracy."); see also United States v. Gonzalez, 905 F.3d 165, 190 (3d Cir. 2018) (district court properly instructed jury on Pinkerton liability for § 371 count with stalking predicate).

The Court should give the model instruction in full. Defendants' proposed additions and unnecessary, cumulative to the instruction itself and other instructions, and confusing.

**DEFENSE POSITION**

There can be no vicarious liability under *Pinkerton* for specific intent crimes, unless the specific intent crime was the object of the conspiracy. This restriction is based on the rationale that specific intent requirements (such as the premeditation required for first-degree murder under 18 U.S.C. § 1111) are far more stringent than mere foreseeability. *See*, e.*g.*, *United States v. Cherry*, 217 F.3d 811, 818 (10th Cir. 2000). In *Cherry*, the Court reasoned:

> [w]e have never extended the doctrine to hold co-conspirators liable for first-degree murder that was not the original object of the conspiracy. Although intimidation and violence may or may not be foreseeable results of a particular drug conspiracy, first-degree murder liability incorporates a specific intent requirement far more stringent than foreseeability. To extend substantive *Pinkerton* liability in the manner urged by the government would apparent render every minor drug distribution co-conspirator, regardless of knowledge, the extent of the conspiracy, its history of violence, and like factors, liable for first-degree murder. Such a result appears incompatible with the due process limitations inherent in *Pinkerton*.

*Id.* Stalking under 18 USC 2261 is a specific intent crime—that is, the defendant must act with the intent to target a particular individual. *See United States v. Bell*, 303 F.3d 1187, 1191 (9th Cir. 2002) (jury instruction adequately captured specific intent because

it required the defendant to act with the intent to harass a particular person); *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012) (victim is the unit of prosecution; intent must run to "a particular individual"); *United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015) (statute requires intent toward 'a particular person' producing the effect 'in that person'). So is murder-for-hire under 18 U.S.C. § 1958. *See United States v. Chong*, 419 F.3d 1076, 1081 (9th Cir. 2005) ("[t]he intent to pay someone to commit murder is . . . a critical element of 'murder-for-hire'") (citing *United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993)). The *Pinkerton* doctrine is therefore inappropriate unless the jury finds that a defendant acted with the requisite intent towards a particular person.

Further, it is the defense's position that *Pinkerton* should be overruled. It is a bedrock principle in this country that "it is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States v. Wiltberger*, 18 U.S. (5 Wheat) 76, 95 (1820) (Marshall, C.J.). *United States v. Hudson*, 11 U.S. (7 Cranch) at 34 ("all exercise of criminal jurisdiction in common law cases" is beyond the scope of the federal courts under the Constitution"). This principle reflects that "hand[ing] responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges[] erod[es] the people's ability to oversee the creation of the laws they are expected to abide. *United States v. Davis*, 588 U.S. 445, 451 (2019). *Pinkerton* is a stark

departure from that foundational rule. As such, it should be overruled.