BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, National Security Division
MICHAEL J. MORSE (Cal. Bar No. 291763)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
1400/1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3667/0813/7367
Facsimile: (213) 894-0142
E-mail: ian.yanniello@usdoj.gov
michael.morse@usdoj.gov
daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DURK BANKS, et al.,<br><br>Defendants. | No. CR 2:24-621(D)-MWF<br><br>GOVERNMENT'S TRIAL MEMORANDUM |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Michael J. Morse, and Daniel H. Weiner, hereby submits its Trial Memorandum.

//

//

//

This Trial Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 17, 2026

Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

*/s/*
IAN V. YANNIELLO
MICHAEL J. MORSE
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TRIAL MEMORANDUM**

Defendants Durk Banks, Deandre Wilson, and David Lindsey will proceed to trial on Counts Two through Six of the Fourth Superseding Indictment ("FSI") on August 20, 2026.[1] The charges stem from a gang-related murder that occurred in Los Angeles on August 19, 2022. The charges allege that defendant Banks and other OTF members conspired to kill those believed to be responsible for the death of Dayvon Bennett aka "King Von" --- an OTF member and fellow Black Disciples gang member --- including a rival rapper, T.B.

**I. STATEMENT OF CHARGES AND ELEMENTS**

The parties have submitted jointly proposed jury instructions and disputed jury instructions that set forth the parties' respective positions on the elements. (See Dkts. 563 [Jointly Proposed Jury Instructions]; 566 [Disputed Jury Instructions].)

**II. GOVERNMENT WITNESSES**

On August 14, 2026, the government filed under seal a list of anticipated government witnesses. The government anticipates that the government's case-in-chief will take approximately 11 to 13 court days, inclusive of cross examination.

The parties are continuing to meet and confer regarding possible stipulations that may alleviate the need for certain government witnesses. To streamline its case and avoid testimony on noncontroversial topics, the government has proposed potential

---

[1] The Court severed trial on the VICAR Counts (Counts One and Seven of the FSI). In its order severing the trial, the Court instructed the parties to meet and confer about a trial date for the VICAR charges. On July 28, 2026, the government sent an email to defense counsel requesting a proposed date for the VICAR trial that works for all defense counsel. On August 5, 2026, the government sent a follow-up email to defense counsel requesting a proposed date. The government has not received a response from defense counsel.

stipulations to defense counsel regarding: (1) foundational issues concerning seizure and extractions of digital devices; (2) seizure of surveillance footage; and (3) records from the Bureau of Prisons and the Illinois Department of Corrections. The government estimates that these stipulations would reduce its case-in-chief by approximately 8-10 witnesses.

## III. ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

### A. The Charged Conspiracy to Kill T.B. and Others Responsible for King Von's Death Continued After the Los Angeles Murder

Count Two of the FSI alleges the defendants engaged in a conspiracy to stalk and kill individuals whom the co-conspirators believed were responsible for the death of King Von, including T.B. (FSI, at 12.) The FSI alleges the conspiracy began "on a date unknown, but no later than on or around November 6, 2020" and "continu[ed] to at least in or around August 2023." (Id.)

At trial, the government expects the evidence will show that the co-conspirators pursued their conspiracy to stalk and kill T.B. as follows: (1) on May 2, 2021, certain co-conspirators attempted to kill T.B. in Blackshear, Georgia; (2) on August 18 and 19, 2022, the co-conspirators stalked and attempted to kill T.B. in Los Angeles, resulting in S.R.'s murder; and (3) the conspiracy continued after S.R.'s murder. Specially, following the murder of S.R., the co-conspirators (1) took step to conceal their role in S.R.'s death and (2) continued to seek to murder T.B. as revenge for the death of King Von. Defendant Banks' and other co-conspirators' actions after S.R.'s murder are not only direct evidence to prove the continuation of the conspiracy, but the evidence is also critical to show the

defendants did, in fact, *participate in S.R.'s murder.*[2]

Proof that the conspiracy continued following S.R.'s murder will be presented through anticipated cooperator testimony and exhibits. For example, the government will seek to admit **Exhibit 125**[3] which is a text thread between a burner phone used by defendant Banks and multiple co-conspirators, including defendant Wilson, Co-Conspirator 4, and Co-Conspirator 5. Specifically, on December 25, 2022, defendant Banks sent a text message and voice recording, telling his co-conspirators that an affiliate of T.B.'s reached out to "squash" the rivalry and ask for "peace." Defendant Banks told his co-conspirators he rejected the peace offering, stating "I'm not hopping on the phone to squash" a rivalry because "this for thang ***and von***." (Ex. 125 (emphasis added).) He continued, "call me [a]bout peace[,] take the peace of the switch," referencing a machinegun like the one used by the conspirators to kill S.R. on August 19, 2022. A voice message defendant Banks sent to his co-conspirators immediately after

---

[2] Indeed, the Ninth Circuit has affirmed statements about past events that further a conspiracy, United States v. Alahmedalabdaloklah, 94 F.4th 782, 833-34 (9th Cir. 2024), particularly where the statements are made to (i) "keep coconspirators abreast of an ongoing conspiracy's activities," (ii) "prompt further action on the part of conspirators," (iii) "further the common objectives of the conspiracy," (iv) "further participation in the group's activities," (v) "'reassure' members of a conspiracy's continued existence," (vi) "allay a coconspirator's fears;" and (vii) enhance the power of the conspiracy, United States v. Yarbrough, 852 F.2d 1522, 1535-36 (9th Cir. 1988). For example, in United States v. Martinez, 657 F.3d 811, 817 (9th Cir. 2011), the Court affirmed admission of an incarcerated Mexican Mafia member's statement that "the job was done," referring to murder, because the statement "enhance[d] the power of the conspiring."

[3] **Exhibit 125** was recently identified by the government, and thus it has not yet been submitted to the Court. The government has concurrently lodging **Exhibit 125** with the Court to provide the Court with a copy before the scheduled pretrial conference on August 18 to address the defendants' various motions to exclude evidence.

this text message crystalized his intent: defendant Banks reiterated he rejected the peace offering and made clear he still wanted T.B. dead ("and your homie [T.B.'s rap name] can die").[4]

Defendants Banks and Wilson, and other co-conspirators, also discussed the conspiracy in a text thread titled "The Family." For example, on August 23, 2023, the co-conspirators discussed their suspicions that PW-1 was "ready to snitch" on them. (See **Trial Ex. 215** at 2, 4, 7.) Using the same "The Family" chat, defendant Banks and Wilson also made statements that the government will argue are direct admissions of their participation in S.R.'s murder. In the thread, defendant Banks admitted that "Crazy blood niggas don't slide or hurt mfr leaving it all ***up to us***." (emphasis added), in discussing members of King Von's O-block set of Black Disciples. (**Trial Ex. 219** at 11.) Specifically, defendant Banks stated that "Oblock[5] hopped in some nyc shit and they playing with Von name now," and that "***we staying*** out other niggas wars niggas don't hop ***in ours***." (Id. at 9, 11.)

Evidence showing the defendants continued to stalk T.B. after S.R.'s murder is material to prove multiple disputed issues, including to show defendant Banks' involvement in the conspiracy, his

---

[4] As set forth in the parties proposed jury instructions, the defense has requested a "mere presence" jury instruction. The government anticipates that defendants Banks and Wilson will assert that they were not involved in the murder, but were merely present or merely had knowledge of the murder. In addition to proving the defendants' participation in the murder, **Exhibit 125** also rebuts the defendants' claim that they were not involved in the Los Angeles murder.

[5] Multiple witnesses will testify at trial that King Von was a prominent member of the Oblock gang and OTF. Witnesses will also testify about defendant Banks' frustration with O-Block's failure to "slide for Von."

leadership over the co-conspirators (i.e., he decides if there will be peace with T.B. and his associates), his motive to avenge King Von's death, and to rebut any suggestion that defendants Banks and Wilson were passive observers of the Los Angeles murder.

**B. Use of Exhibits During Opening Statement**

Exhibits may be used by the government in the opening statement, and so long as the opening statement "avoids references to matters that cannot be proved or would be inadmissible, there can be no error, much less prejudicial error." United States v. De Peri, 77826 F.2d 963, 979 (3d Cir. 1985); see also United States v. Rubino, 43127 F.2d 284, 290 (6th Cir. 1970). The government intends to meet and confer with defense counsel and identify the exhibits and/or demonstratives that it will seek to use in its opening statement prior to trial.

**C. Truthful Testimony Provisions of Plea Agreements**

The government intends to call witnesses who have entered into plea agreements in which they agreed to cooperate with the government. The plea agreements each contain a provision that requires the witness to fully cooperate with the government, including by testifying as a witness if called upon to do so. The plea agreements also include provisions requiring the cooperating witnesses to be honest and forthcoming, and to render truthful testimony.

"Eliciting testimony on direct examination that a witness entered into a plea agreement that requires truthful testimony may constitute vouching." United States v. Dorsey, 677 F.3d 944, 953 (9th Cir. 2012). However, "referring to a plea agreement's mandate

to be truthful does not constitute vouching for a witness if such references are 'made in response to an attack on the witness's credibility because of his plea bargain,' including an attack in defense counsel's opening statement." Id. (quoting United States v. Monroe, 943 F.2d 1007, 1013-14 (9th Cir. 1991)).

Here, the government anticipates that defense counsel will attack one or more of the cooperating witnesses' credibility, perhaps as early as opening statement. If the defense does so, the government should be permitted to elicit testimony regarding the truthful testimony provisions of the respective plea agreement during direct examination as appropriate.

**D. Duplicity**

Defendant Banks recently filed a motion to dismiss Count Two of the FSI as duplicitous, which the Court denied as untimely.

"In reviewing an indictment for duplicity," the court is "to assess whether the indictment itself can be read to charge only one violation in each count." United States v. Martin, 4 F.3d 757, 759 (9th Cir. 1993). "Duplicity is the joining in a single count of two or more distinct and separate offenses. One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense." United States v. UCO Oil Co., 546 F.2d 833, 835 (9th Cir. 1976).

Count Two is not duplicitous. An indictment may allege several substantive offenses in a conspiracy count because a conspiracy can have more than one object. "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its

objects.'" Braverman v. United States, 317 U.S. 49, 54 (1942) (cleaned up); see United States v. Bradford, 148 F.4th 699, 706 (9th Cir. 2025) ("[W]here conspiracy is the charge, the established rule is that a charge of conspiracy to commit more than one offense may be included in a single count without violating the general rule against duplicity."); United States v. Begay, 42 F.3d 486, 501 (9th Cir. 1994) (rejecting duplicity challenge to count charging conspiracy to commit assault, in violation of 18 U.S.C. § 113(b), (c), and (f), and kidnapping, in violation of 18 U.S.C.§ 1201(a), because "[a]n indictment charging conspiracy to commit more than one offense is not duplicitous"); United States v. Bauer, 84 F.3d 1549, 1560 (9th Cir. 1996) ("An indictment is not duplicitous merely because it charges a conspiracy to commit more than one offense."); United States v. Bryan, 868 F.2d 1032, 1037-38 (9th Cir. 1989) (rejecting argument that "a single count alleging that the defendant schemed to defraud a variety of victims is necessarily duplicitous").

Consistent with black-letter law, Count Two of the FSI alleges a conspiracy to commit more than one offense, namely, conspiracy to stalk T.B. and S.R., the substantive offenses of which are alleged in Counts Three and Four, respectively.

Nonetheless, even if Count Two were duplicitous, the Court may provide an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed. See United States v. Ramirez-Martinez, 273 F.3d 903, 915 (9th Cir. 2001). While the government does not believe that Count Two is duplicitous, it does not oppose such an instruction or a special verdict form for Count Two.